IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| XPED LLC, | ) |
|     Plaintiff, | ) Case No. 21-6237 <br> ) <br> ) Judge: |
| vs. | ) <br> ) Magistrate: |
| THE ENTITIES listed on EXHIBIT 1, | ) <br> ) |
|     Defendants. | ) |

## COMPLAINT

Plaintiff hereby files this Complaint for, *inter alia*, trademark infringement, counterfeiting, and related claims against Defendants, on personal knowledge as to Plaintiff's own activities and on information and belief as to the activities of others:

### The Parties

1. Plaintiff is a Nevada limited liability company with a principal place of business in Chicago, Illinois.

2. Defendants identified on Exhibit 1, a copy of which will be filed with the Court contemporaneously with the Complaint and under seal, are all believed to be individuals, unincorporated business associations, and business entities who, upon information and belief, reside in the United States and foreign jurisdictions. The true names, identities and addresses of many of the Defendants are currently unknown.

3. Many of the Defendants conduct their illegal operations through fully interactive commercial websites hosted independently and/or on various e-commerce sites, such as Amazon, eBay, Wish, Alibaba, Ali Express, etc. ("Infringing Websites" or "Infringing Webstores"). Each Defendant targets consumers in the United States, including the State of Illinois, and has offered

1

to sell and, on information and belief, has sold and continues to sell counterfeit products that violate Plaintiff's intellectual property rights ("Counterfeit Products") to consumers within the United States, including the State of Illinois and Northern District of Illinois. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

4. Through their operation of the Infringing Webstores, Defendants are directly contributing to, inducing and engaging in the sale of Counterfeit Products as alleged, often times as partners, co-conspirators and/or suppliers. Defendants intentionally conceal their identities and the full scope of their counterfeiting operations in an effort to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' illegal counterfeiting operations. The identities of many of the Defendants are presently unknown. If their identities become known, Plaintiff will promptly amend this Complaint to identify them.

## Jurisdiction and Venue

5. This is an action for trademark counterfeiting and trademark infringement, and unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§1051, et seq., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), and for unlawful and deceptive acts and practices under the laws of the State of Illinois.

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§1116 and 1121. This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. §1367, over Plaintiff's claims for unlawful and deceptive acts and practices under the laws of the State of Illinois.

2

7. This Court has personal jurisdiction over Defendants in that they transact business in the State of Illinois and in the Northern District of Illinois.

8. Venue is proper in this District pursuant to 28 U.S.C. §§1391 in that the Defendants are entities or individuals subject to personal jurisdiction in this District. Venue is also proper in the District because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants directly target business activities towards consumers in the State of Illinois.

**Background**

9. Plaintiff is engaged in the business of manufacturing, distributing and retailing flags and banners, including within the Northern District of Illinois (collectively, the "Products") under the Federally registered trademark identified in a sealed document as Exhibit 2, filed with the Court contemporaneously with this Complaint. Defendants' sales of the Products in violation of Plaintiff's intellectual property rights are irreparably damaging Plaintiff.

10. Plaintiff is the owner of all rights, title and interest in and to the trademark (the "Mark"). The registrations are valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. §1065. The registration for the Mark constitutes prima facie evidence of validity and of Plaintiff's exclusive right to use the Mark pursuant to 15 U.S.C. §1057(b).

11. Plaintiff's brand, symbolized by the Mark, is a recognized symbol of high-quality garden and home decorations. As detailed below, Plaintiff has been using the Mark for many years in connection with the advertising and sale of Plaintiff's products in interstate and foreign commerce, including commerce in the State of Illinois and the Northern District of Illinois.

12. The Mark has been widely promoted, both in the United States and throughout the world. Consumers, potential consumers and other members of the public not only associate

Plaintiff's Products with exceptional materials, style and workmanship, but also recognize the Plaintiff's Products sold in the United States originate exclusively with Plaintiff.

13. As of the date of this filing, Plaintiff's Products are sold online and in retail establishments throughout the world.

14. Plaintiff maintains quality control standards for all Products.

15. Genuine Products are distributed through a worldwide network of distributors and retailers, as well as Plaintiff's online sales, via webstores such as Amazon.com. Sales of Products via the web and legitimate Webstores represent a significant portion of Plaintiff's business.

16. The Mark is a highly visible and distinctive worldwide symbol of excellence in quality and uniquely associated with Plaintiff.

17. The Mark has never been assigned or licensed to any of the Defendants in this matter.

18. The Mark is a symbol of Plaintiff's quality, reputation and goodwill and has never been abandoned.

19. Further, Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the Mark.

20. Upon information and belief, at all times relevant hereto, Defendants in this action have had full knowledge of Plaintiff's ownership of the Mark, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

21. In or around November 2021, Plaintiff identified the Mark on the Infringing Webstores and Counterfeit Products designed to resemble authorized retail Internet stores selling genuine Products that Defendants had reproduced, displayed and distributed without authorization or license from Plaintiff in violation of the Mark.

22. Defendants' use of the Mark on or in connection with the advertising, marketing, distribution, offering for sale and sale of the Counterfeit Products is likely to cause and has caused confusion, mistake and deception by and among consumers and is irreparably harming Plaintiff.

26. Defendants have manufactured, imported, distributed, offered for sale and sold Counterfeit Products using the Mark and continue to do so.

27. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the Mark in connection with the advertisement, offer for sale and sale of the Counterfeit Products, through, inter alia, the Internet. The Counterfeit Products are not genuine Products. The Plaintiff did not manufacture, inspect or package the Counterfeit Products and did not approve the Counterfeit Products for sale or distribution. Each Infringing Webstore offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Products into the United States, including Illinois.

28. Defendants falsely advertise the sale of authentic Products through the Infringing webstores, often by stealing and copying Plaintiff's copyrighted images and photographs of Plaintiff's genuine products in violation of the Plaintiff's copyrights. Defendants' Infringing Webstore listings appear to unknowing consumers to be legitimate web stores and listings, authorized to sell genuine Products.

29. Defendants also deceive unknowing consumers by using the Mark without authorization within the content, text, and/or meta tags of the listings on Infringing Webstores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Products and in consumer product searches within the Webstores.

30. Defendants go to great lengths to conceal their true identities and often use

multiple fictitious names and addresses to register and operate the Infringing Webstores. Upon information and belief, Defendants regularly create new Websites and Webstores on various platforms using the identities listed in Exhibit 1, as well as other unknown fictitious names and addresses. Such registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their illegal counterfeiting operations, and to prevent the Infringing Webstores from being disabled.

31. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling Counterfeit Goods that infringe upon the Marks unless preliminarily and permanently enjoined.

32. Plaintiff has no adequate remedy at law.

## COUNT ONE

### FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
### (15 U.S.C. §1114)

33. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

34. The Plaintiff's Mark and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value. The Mark is highly distinctive and has become universally associated in the public mind with Plaintiff's Products and related services. Consumers associate the Mark with the Plaintiff as the source of the very highest quality products.

35. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Mark and the fact that Defendants' Counterfeit Products are sold using marks which is identical or confusingly similar to the Mark, the Defendants have manufactured, distributed, offered for sale and/or sold the Counterfeit Products

6

to the consuming public in direct competition with Plaintiff's sale of genuine Plaintiff products, in or affecting interstate commerce.

36. Defendants' use of copies or approximations of the Plaintiff's mark in conjunction with Defendants' Counterfeit Products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive the public into believing the Counterfeit Products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill and sales.

37. The Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT TWO

### UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. §1125(a))

38. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

39. The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

40. By misappropriating and using the Mark, genuine product images and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

41. Defendants' unlawful, unauthorized and unlicensed manufacture, distribution,

7

offer for sale and/or sale of the Counterfeit Products creates express and implied misrepresentations that the Counterfeit Products were created, authorized or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

42. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), in that Defendants' use of the Plaintiff's mark, genuine product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

48. The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT THREE

### ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS 510)

49. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

50. The Counterfeit Products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use is likely to cause confusion to the general purchasing public.

51. By misappropriating and using the Mark, genuine product images and tradenames, Defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Products and create a likelihood of confusion by consumers as to the source of such merchandise.

52. Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of the Counterfeit Products creates express and implied

misrepresentations that the Counterfeit Products were created, authorized or approved by the Plaintiff, all to the Defendants' profit and to the Plaintiff's great damage and injury.

53. Defendants' aforesaid acts are in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq*., in that Defendants' use of the Mark, genuine product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

54. Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

**Prayer for Relief**

WHEREFORE, the Plaintiff prays for judgment against Defendants in favor of the Plaintiff on all counts as follows:

1. That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

 (i) using the Mark or any reproduction, counterfeit, copy or colorable imitation of the Mark in connection with the distribution, advertising, offer forsale and/or sale of merchandise not the genuine products of the Plaintiff; and

 (ii) passing off, inducing or enabling others to sell or pass off any Counterfeit Products as genuine products made and/or sold by the Plaintiff; and

 (iii) committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with

Plaintiff;

(iv) further infringing the Mark and damaging Plaintiff's goodwill and competing unfairly with Plaintiff in any manner;

(v) shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and that bear the Mark or any reproductions, counterfeit copies, or colorable imitations thereof;

(vi) using, linking to, transferring, selling, exercising control over, or otherwise owning or operating the Infringing Webstores, listings, or any other domain name that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products;

(vii) operating and/or hosting websites at the Infringing Webstores and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiff's mark or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Mark; and,

(viii) registering any additional domain names that use or incorporate any of the Plaintiff's Mark;

2. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    (i)  displaying images protected by the Plaintiff's Copyright in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a genuine Plaintiff Product or is not authorized by Plaintiff to be sold in connection with thePlaintiff's Copyright; and

    (ii)  shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner products or inventory not manufactured byor for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and protected by the Plaintiff's copyright or any reproductions, counterfeit copies, or colorable imitations thereof;

  3.  That Defendants, within ten (10) days after service of judgment with notice of entry thereofupon them, be required to file with the Court and serve upon the Plaintiff's a written report under oath setting forth in detail the manner in which Defendants have complied with any and all injunctive relief ordered by this Court;

  4.  Entry of an order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any internet search engines, Webstore hosts or their administrators that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of Counterfeit Products using the Mark;

  5.  That Defendants account for and pay over to Plaintiff any and all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Mark be increased by a sum not exceeding three times the amount thereof as provided by law as provided by 15 U.S.C. §1117;

  6.  In the alternative, that Plaintiff be awarded statutory damages of Two Million

Dollars (U.S.) and No Cents ($2,000,000.00) for each and every use of the Plaintiff's Mark counterfeitedby each Defendant;

       7.       That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

       8.       Grant Plaintiff such other and further legal relief as may be just and proper under the circumstances.

                                                    Respectfully submitted,

                                                   By: /s/ Patrick M. Jones
                                                          Patrick M. Jones
                                                          Counsel for the Plaintiff

Patrick M. Jones (IL #6271256)
Sarah M. Beaujour
PMJ PLLC
The National Building
125 South Clark Street, 17th Floor
Chicago, Illinois 60603
Tel: (312) 255-7976
Email: pmj@pmjpllc.com
Email: sb@pmjpllc.com