**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **EXPEDITEE LLC,** | ) | |
| | ) | **Case No. 21-6237** |
| **Plaintiff,** | ) | |
| | ) | **Hon. Andrea R. Wood** |
| **vs.** | ) | |
| | ) | |
| **THE ENTITIES listed on EXHIBIT 1,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR ENTRY OF A PRELIMINARY INJUNCTION**

Plaintiff Expeditee LLC submits this Memorandum of Law in support of its Motion for Entry of a Preliminary Injunction.

**INTRODUCTION**

Plaintiff brings this action against the Entities Listed on Exhibit 1 (the "Defendants") for federal trademark infringement and counterfeiting (Count I), unfair competition and false designation of origin (Count II) and violation of the Illinois Uniform Deceptive Trade Practices Act (Count IV). As alleged in the Complaint, the Defendants are promoting, advertising, marketing, distributing, offering for sale and selling counterfeit products, bearing counterfeit versions of Plaintiff's Mark,[1] through various websites and online stores designed to mislead consumers that the products sold are genuine Plaintiff products.

The Defendants create web stores and product listings for goods designed and manufactured by Plaintiff, all the while actually selling low-quality, unlicensed counterfeits to unknowing consumers. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope of their criminal counterfeiting operation. Plaintiff is forced to file these

---

[1] Capitalized terms used herein but not defined herein shall have the meanings given them in the Complaint [Dkt #1].

actions to combat Defendants' illegal counterfeiting of the Plaintiff's goods and the registered Mark, as well as to protect unknowing consumers from purchasing low-quality counterfeits over the Internet.

## STATEMENT OF FACTS

On December 21, 2021, this Court granted Plaintiff's Sealed *Ex Parte* Motion for Entry of a Temporary Restraining Order, including (1) A Temporary Injunction; (2) A Temporary Asset Restraint; (3) Expedited Discovery; and (4) Service of Process by Email (the "TRO") [Dkt. #19]. The TRO authorized Plaintiff to provide notice of these proceedings to Defendants by sending an e-mail to e-mail addresses provided for Defendants via the third party payment providers (e.g., Amazon.com, eBay.com, Paypal, Stripe, etc.) (the "Platforms"). On December 23, 2021, the Court entered an order extending the TRO to January 3, 2022 [Dkt. #24]. Each of the Defendants listed on Schedule A have been served pursuant to the terms of the TRO with a copy of the summons, Complaint (with Exhibits), and the TRO.

Plaintiff respectfully requests that this Court convert the TRO to a preliminary injunction against Defendants, so that they remain enjoined from the manufacture, importation, distribution, offering for sale, and sale of Counterfeit Products during the pendency of this action. As part of the Proposed Preliminary Injunction Order, a copy of which is attached hereto, Plaintiff requests that the Infringing Webstores financial accounts remain frozen until these proceedings have concluded.

## ARGUMENT

**A.      Preliminary Injunction Extending Relief Already Granted in the TRO is Appropriate Under the Circumstances.**

Plaintiff respectfully requests that this Court convert the TRO to a preliminary injunction to prevent further illegal conduct by Defendants. Courts addressing similar allegations of Internet-based counterfeiting have also issued preliminary injunctions following a temporary restraining order. *See, e.g.*, *True Religion Apparel, Inc., et al. v. Does 1- 100*, No. 1:12-cv-9894 (N.D. Ill. Jan.

15, 2013) (unpublished) (Docket No. 32); *Oakley, Inc. v. Does 1-100*, No. 1:12-cv-9864 (N.D. Ill. Dec. 27, 2012) (unpublished) (Docket No. 23); *Coach, Inc., et al. v. Lin Feng, etal.*, No. 1:12-cv-08963 (N.D. Ill. Nov. 29, 2012) (unpublished) (DocketNo. 36).

Since the standard for granting a TRO and the standard for granting a preliminary injunction are identical in this Circuit, the requirements for entry of a preliminary injunction extending the TRO have been satisfied. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citations omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it willsuffer irreparable harm if the injunction is not granted. *See TY, Inc. v. The Jones Group, Inc*., 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id*. Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id*. The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id*. (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id*. The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id*. at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc*., 233 F.3d 456, 461 (7th Cir. 2000).

By virtue of this Court's entry of the TRO, the above requirements for entry of a preliminary

injunction have been satisfied. The record establishes that through their illegal operations, Defendants have infringed upon Plaintiff's federally registered trademark. Thus, plaintiff is entitled to preliminary injunctive relief.

**B.    The Equitable Relief Sought by Plaintiff Remains Appropriate.**

In addition to this Court's inherent authority to issue injunctive relief pursuant to Fed. R. Civ. P. 65, the Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark…." 15 U.S.C. § 1116(a).

Plaintiff also seeks to convert the TRO to a preliminary injunction so that Defendants' accounts in U.S.-based financial institutions remain frozen. Since entry of the TRO, Plaintiff has served the TRO upon third party payment providers that have assisted with identifying and freezing a number of financial accounts linked to the Infringing Websites that are offering for sale and/or selling Counterfeit Products. In the absence of a preliminary injunction, Defendants will attempt to move any assets from any accounts in U.S.-based financial institutions to offshore accounts. Therefore, a preliminary injunction order that requires Defendants' assets to remain frozen for the remainder of the proceedings will preserve the status quo.

Furthermore, as explained in Plaintiff's Memorandum of Law in Support of TRO [Dkt. #7], many federal courts, including the Northern District of Illinois, have granted orders preventing the fraudulent transfer of assets. *See e.g.*, *Monster Energy Co. v. The Partnerships, et al.*, No. 1:15-cv-09142, at p.5 (N.D. Ill. Oct. 22, 2015) (*unpublished*) (granting plaintiff's request for a prejudgment asset freeze in an action arising under the Lanham Act and stating "[t]o the extent that the restraint might be too broad, the defendants may file challenges to the scope of the TRO by submitting evidence that some or all of the money has other sources."); *see also The Counterfeit Website Cases, supra; Levi Strauss & Co. v. Sunrise Int'l Trading Inc*., 51 F.3d 982, 987 (11th Cir. 1995) ("A request

4

for equitable relief [under the Lanham Act] invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief."); *Playboy Enter., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir. 1982) (stating that because "it is essentialthat the trial courts carefully fashion remedies which will take all the economic incentive out oftrademark infringement, . . . courts must implement fully the requirement of § 1117(a)(1) [allowing plaintiff] to recover (1) defendant's profits . . ."). Thus, an order continuing to freeze the Defendants' assets pending the conclusion of thisaction should be granted.

## CONCLUSION

In view of the foregoing and consistent with established precedent from previous similar cases, Plaintiff respectfully requests that this Court enter a Preliminary Injunction consistent withthe terms of the TRO.

Dated January 10, 2022                    Respectfully submitted by:


By:  /s/ Patrick M. Jones
     Patrick M. Jones
     Counsel for the Plaintiff

Patrick M. Jones (IL #6271256)
John A. Wiberg
Sarah M. Beaujour
PMJ PLLC
The National Building
125 South Clark Street, 17th Floor
Chicago, Illinois 60603
Tel: (312) 255-7976
Email: pmj@pmjpllc.com
Email: jw@pmjpllc.com
Email: sb@pmjpllc.com