**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Expeditee LLC., | |
| *Plaintiff*, | |
| v. | |
| THE ENTITIES listed on EXHIBIT 1, | |
| *Defendants*, | Case No.: 1:21-cv-6237 |
| | Judge Andrea R. Wood |
| RJITSCT LLC d/b/a Respect The Look, | <u>Jury Trial Demanded</u> |
| *Counterclaim-Plaintiff*, | |
| v. | |
| Expeditee LLC, | |
| *Counterclaim-Defendant.* | |

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF EXPEDITEE, LLC'S MOTION FOR A PRELIMINARY INJUNCTION,
AND IN SUPPORT OF DEFENDANT RESPECT THE LOOK'S
<u>MOTION TO DISSOLVE THE TRO AND FOR SANCTIONS.</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 3

      A.  Respect The Look's business is damaged by this Court's secret TRO ........................ 3

      B.  Plaintiff obtains an *ex parte* TRO based on fraudulent misrepresentations to the
          Court. ..................................................................................................................... 4

ARGUMENT ...................................................................................................................... 10

I.  Plaintiff is not entitled to any preliminary injunction, because it has no trademark
    infringement claim. ...................................................................................................... 10

      A.  Plaintiff has failed to demonstrate any likelihood of success on the merits
          whatsoever. ........................................................................................................... 11

      B.  The remaining preliminary injunction factors weigh heavily against an injunction. . 13

      C.  The TRO should be immediately dissolved as to Respect The Look. ........................ 15

II.  Plaintiff and Plaintiff's attorneys should be severely sanctioned for violating Rule 11, Illinois
    Rules of Professional Conduct 3.1, 3.3(a) and (d), possibly committing perjury, and generally
    abusing this Court's procedures. .................................................................................... 16

CONCLUSION .................................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Cases**

*Abbott Labs. v. Mead Johnson & Co.*,
   971 F.2d 6 (7th Cir. 1992) ...................................................... 10

*Barbecue Marx, Inc. v. 551 Ogden, Inc.*,
   235 F.3d 1041 (7th Cir. 2000) ................................................. 10

*Brookfield Comms., Inc. v. West Coast Ent. Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ................................................. 11

*Carroll v. President and Com'rs of Princess Anne*,
   393 U.S. 175 (1968) ................................................................. 1

*Cavelle v. Chicago Transit Authority*,
   No. 17-cv-5409, 2020 WL 133277 (N. D. Ill. Jan. 13, 2020) ........ 18

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ................................................................. 17

*Desmond v. Chicago Boxed Beef Distributors, Inc.*,
   921 F. Supp. 2d 872 (N.D. Ill. 2013) ........................................ 12

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
   189 S. Ct. 881 (2019) ............................................................. 12

*Fuery v. City of Chicago*,
   900 F.3d 450 (7th Cir. 2018) .................................................. 18

*Girl Scouts of Manitou Council Inc. v. Girl Scouts of the United States of America Inc.*,
   549 F.3d 1079 (7th Cir. 2008) ................................................. 10

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of
   Alameda Cty.*,
   415 U.S. 423 (1974) .......................................................... 15, 16

*Jimenez v. Madison Area Technical College*,
   321 F.3d 652 (7th Cir. 2003) .................................................. 17

*Kastanis v. Eggstacy LLC*,
   752 F.Supp.2d 842 (N.D. Ill. 2010) ......................................... 10

*PrimeSource Building Prods., Inc. v. Felten*,
   No. 16-cv-11468, 2018 WL 10425921 (N.D. Ill. Mar. 8, 2018) ...... 14

*Raskin, S.A. v. Datasonic Corp.*,
   No. 86-cv-7594, 1986 WL 12598 (N.D. Ill. Nov. 5, 1986) ........... 17

*Redbox Automated Retail, LLC v. Xpress Retail LLC*,
   310 F. Supp. 3d 949 (N.D. Ill. 2018) ........................................ 10

*Specht v. Google, Inc.*,
   805 F. Supp. 2d 551 (N.D. Ill. 2011) ........................................ 13

*Triune Star, Inc. v. Walt Disney Co.*,
    No. 07-cv-1256, 2008 WL 5068943 (C.D. Ill. Nov. 25, 2008) .................................................. 17

*Tucker v. Williams*,
    682 F.3d 654 (7th Cir. 2012) ................................................................................................ 18

*UBS Financial Servs., Inc. v. Hergert*,
    No. C13-1825, 2013 WL 5775667 (W.D. Wash. Oct. 25, 2013) ........................................... 17

**Statutes**

15 U.S.C. § 1116 ........................................................................................................................... 12

17 U.S.C. § 411 ............................................................................................................................. 12

**Rules**

ABA Model Rule of Professional Conduct 3.3 ............................................................................. 16

Fed. R. Civ. P. 11 ............................................................................................................. 1, 12, 17

Fed. R. Civ. P. 65 ......................................................................................................................... 15

Ill. Rule of Professional Conduct 3.1 ........................................................................................... 17

Ill. Rule of Professional Conduct 3.3 ...................................................................................... 1, 17

## INTRODUCTION

Plaintiff Expeditee LLC ("Plaintiff" or "Expeditee") has filed a complaint alleging infringement of a trademark in the word "FLAGWIX" against at least one Defendant, RJITSCT LLC d/b/a Respect The Look ("Respect The Look"), who has never used the word "FLAGWIX" on any website or product. Somehow, even though Plaintiff offered no evidence to the Court that Respect The Look ever used the word "FLAGWIX" on any product or website, Plaintiff obtained an *ex parte* temporary restraining order ("TRO") against Respect The Look based on "trademark counterfeiting." Through its misrepresentations to the Court, Plaintiff convinced the Court to enter a TRO freezing Respect The Look's PayPal account, effectively shutting down its business, without any notice to Respect The Look and without any opportunity for Respect The Look to respond. By raising the fearsome specter of Chinese counterfeiters, Plaintiff hoodwinked the Court into shutting down its competitors' businesses during the holiday season, inflicting tens of thousands of dollars of damage on Respect The Look and an unknown amount of damage against the hundreds of other defendants.

To paraphrase the Supreme Court, there is no place within the area of basic freedoms guaranteed by the Fifth Amendment for an *ex parte* issuance of a temporary restraining order where no showing is made that it is impossible to serve or to notify the opposing parties and to give them an opportunity to participate. *See Carroll v. President and Com'rs of Princess Anne*, 393 U.S. 175, 180 (1968). And when a plaintiff seeks an *ex parte* temporary restraining order, because the defendant is not present, the plaintiff has a heightened duty under Federal Rule of Civil Procedure 11 and Illinois Rule of Professional Conduct 3.3(d) to be unfailingly honest and forthcoming with the Court about "all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse." Instead, Plaintiff has misrepresented to the Court the scope of its trademark, the evidence of the alleged

1

infringement, its ability to determine the identity of Respect The Look, and the need for an *ex parte* order freezing Respect The Look's financial accounts. Respect The Look is filing simultaneously with this motion a counterclaim for malicious abuse of process, unfair and deceptive trade practices, and tortious interference with prospective business advantage to recover the damage it has already suffered, but it also continues to suffer irreparable harm every day the TRO continues to prevent it from doing business.

Plaintiff's allegations of trademark infringements not only have no likelihood of success on the merits against Respect The Look, they fail to even state a claim for trademark infringement and counterfeiting. Plaintiff can demonstrate no irreparable harm sufficient to justify the extremely broad scope of the already-entered TRO or its requested preliminary injunction, which would shut down Respect The Look's entire business (irreparably harming Respect The Look) over a frivolous allegation of a single act of infringement that is refuted by the very evidence Plaintiff has filed with the Court. And it cannot be in the public's interest to allow a business to shut down hundreds[1] of its competitors based on papers copied nearly verbatim from dozens of other similar filings in this Court, prepared apparently without any pre-suit investigation. The Court should accordingly not only dissolve the TRO against Respect The Look and deny Plaintiff's motion for a preliminary injunction against Respect The Look, but it should also order Plaintiff and its attorney to show cause why they should not be sanctioned for filing papers with the Court containing material misrepresentations of fact in order to obtain an *ex parte* TRO.

---

[1] Respect The Look cannot determine the exact number of defendants at this time, because the documents listing the defendants remains sealed. Respect The Look can state, however, that there are at least 197 defendants, because the page that Plaintiff's counsel provided with its purported evidence of infringement identifies Respect The Look as "Row # 197." Beck Decl., Ex. 14.

## STATEMENT OF FACTS

### A.    Respect The Look's Business Is Damaged By This Court's Secret TRO.

Respect The Look is a Connecticut-based company that sells apparel, flags, and similar products with designs that it creates in-house. Declaration of Reginald Jennings ("Jennings Decl.") at ¶ 3. Respect The Look's webpage explains that it prides itself on its high-quality products and original designs. Jennings Decl. at ¶ 3.

On December 28, 2021, Respect The Look's owner, Reginald Jennings, returned from holiday vacation to discover that his PayPal account was frozen, and he was unable to access the funds in it or process sales on Respect The Look's website through it. Jennings Decl. at ¶ 5. Jennings uses the PayPal account not just for Respect The Look, but also for processing payments to the other business activities he performs for RJITSCT LLC, such as IT services. Jennings Decl. at ¶ 6. Because he was unable to access the PayPal account, he had to go into credit card debt to pay his workers' salaries. Jennings Decl. at ¶ 7. Respect The Look loses thousands of dollars in sales each day the TRO remains active, and estimates that it has lost about $100,000 in sales as of the filing of this opposition. Jennings Decl. at ¶ 8.

When he reached out to PayPal, he was told on December 30 that the account was frozen due to a court order, but that PayPal could not tell him what the court order was about. Jennings Decl. at ¶ 9, Ex. 3. After several communications from Jennings's attorney Domonique Price, PayPal eventually, on January 7, 2022, provided the name of Plaintiff's law firm and case number "216237," but was still unable to offer any other details—not even the identity of this District. Jennings Decl., Exs. 4-5. At this point, Jennings had no idea what the order was about, what the underlying lawsuit was about, and was extremely fearful that whatever party had frozen his account would go after him or his other assets. Jennings Decl. at ¶ 12.

**B.    Plaintiff obtains an *ex parte* TRO based on fraudulent misrepresentations to the Court.**

In the last week, Jennings has learned that his business Respect The Look is a defendant in this lawsuit, and has now learned that there was no factual or legal basis for Respect The Look to be named as a defendant in this lawsuit. Plaintiff is one of many parties who have pursued these "Does" or "unnamed entities" trademark counterfeiting lawsuits in the Northern District of Illinois, in which a trademark owner files a sealed complaint against a sealed list of e-commerce defendants, seeks an *ex parte* TRO against the defendants by raising the specter of fly-by-night Chinese counterfeiters, and then uses the leverage from these frozen accounts to extort lucrative settlements from the alleged counterfeiters. A comparison with other filings demonstrates that Plaintiff copied its papers, including notably its Memorandum in Support of its Motion for a Temporary Injunction, almost verbatim from similar filings by other attorneys in this Court, merely changing the names of the parties and attorneys involved. *Compare* Dkt. No. 11 (attached as Ex. 6 to the Declaration of Brian J. Beck ("Beck Decl.") with *Choon's Design, LLC, v. Does 1-122, as Identified in Exhibit 2*, No. 1:19-cv-00544, Dkt. No. 16 (N.D. Ill. Feb. 5, 2019) (Beck Decl., Ex. 7); *General Tools & Instruments, LLC v. Does 1-2092, as Identified in Exhibit 2*, No. 1:19-cv-02519, Dkt. No. 12 (Apr. 17, 2019) (Beck Decl., Ex. 8); and *Incredibowl Industries, LLC v. Does 1-36*, No. 1:18-cv-07367, Dkt. No. 11 (Nov. 13, 2018) (Beck Decl., Ex. 9). But copying another attorney's filings does not relieve a party or its attorney of the obligation under Rule 11(b)(2) and (b)(3) to verify that the factual allegations in a paper have a legal basis and evidentiary support, and at least as to Respect The Look, Plaintiff utterly failed to do so.

First, Respect The Look's counsel was able to obtain from Plaintiff's counsel an identification of the alleged trademark purportedly owned by Plaintiff and allegedly infringed by Respect The Look. Beck Decl. at ¶ 6, Ex. 10. Plaintiff's publicly available Complaint does not

identify its trademark with any detail, referring to it only as the "Mark." *See* Dkt. No. 1 at ¶¶ 10-32. Plaintiff filed its trademark registration certificate under seal, even though trademark registrations are inherently a matter of publicly record, and can easily be retrieved from the United States Patent and Trademark Office's ("USPTO's") website. Dkt. No. 2. Plaintiff's trademark registration certificate is for the standard character word mark "FLAGWIX," "without claim to any particular font style, size or color." Beck Decl., Ex. 10.

On its own, Plaintiff's trademark registration already indicates at least two questionable representations to the Court. The first is Plaintiff's allegation in the Complaint, undoubtedly made for the purpose of seeking venue, that Plaintiff's principal place of business is in Chicago, Illinois. Plaintiff's trademark registration certificate identifies its address not as being in Chicago, but in Las Vegas, Nevada. Beck Decl., Ex. 10. And Plaintiff's trademark of "FLAGWIX" indicates that its e-commerce platform is http://www.flagwix.com, which identifies a business location in Dallas, Texas. Beck Decl., Ex. 11. A search of the Illinois Secretary of State's website lists no registered LLC with either the name "XPed" or "Expeditee." Beck Decl., Ex. 12. If Plaintiff, a Nevada LLC, maintains a principal place of business in Illinois, it is apparently doing so in violation of Illinois law requiring foreign limited liability companies to register with the Secretary of State. *See* 805 ILCS 180/45-5(a).

The second question raised by Plaintiff's trademark registration is the allegation in Plaintiff's initial complaint that its name was XPed LLC, and that it owned the mark in question. The FLAGWIX Mark, per its registration certificate, is owned by "Expeditee LLC," the name that Plaintiff only changed on the docket on January 5, 2022, after the Court extended the TRO. A search of the USPTO trademark database shows no registered trademarks owned by XPed LLC. Beck Decl., Ex. 13. By misstating Plaintiff's name on its complaint—a misstatement for

which Plaintiff and its counsel can have no excuse—Plaintiff effectively prevented defendants from determining the trademark they were accused of infringing through a USPTO search.

But those misrepresentations pale in comparison to the misrepresentations Plaintiff's motion for a TRO made regarding the substance of its motion. Plaintiff filed the purported "evidence" of each defendant's alleged infringement under seal, and that "evidence" remains sealed to this day[2]. Plaintiff's counsel provided the sole piece of evidence offered to show infringement to Respect The Look's counsel, and it simply does not show infringement of Plaintiff's FLAGWIX Mark because the word "FLAGWIX" does not appear on it. Beck Decl., Ex. 14. The allegedly infringing product is Respect The Look's "One Nation Under God" flag, which portrays a picture of Jesus next to an American flag with the words "One Nation Under God," as shown below:



Beck Decl., Ex. 15.[3] Plaintiff appears to sell a similar flag in which a Puerto Rican flag replaces the American flag. Beck Decl., Ex. 16. But Plaintiff has not claimed ownership of any trademark

---

[2] Respect The Look respectfully submits that the Court should consider the Fifth Amendment due process implications and the First Amendment public access implications of *ex parte* orders seizing a person's financial accounts that are not only entered without notice to the alleged infringer, but are entered based on secret evidence unavailable to either the alleged infringer or the general public.

[3] Respect The Look provides here an image taken directly from its website for clarity. The image filed by Plaintiff and provided to Respect The Look's counsel is so blurry as to be incomprehensible. Beck Decl., Ex. 14.

in Jesus or the phrase "One Nation Under God" (because of course, it couldn't), nor has it alleged copyright infringement of any kind or that it owns a copyright in this image.[4] *See* Dkt. No. 1 and Dkt. No. 11. And in fact, Respect The Look believes that Plaintiff likely the copied the image from it, as Plaintiff has often copied images from Respect The Look's website with small modifications to create its own flags. Jennings Decl. at ¶¶ 15-17. More generally, the word "FLAGWIX" appears nowhere on Respect The Look's website—because Respect The Look has no interest in associating itself with Plaintiff's inferior products. Jennings Decl. at ¶ 14.

As for Plaintiff's allegations of irreparable harm and its need for an *ex parte* temporary restraining order, those too have no basis in fact or law. Plaintiff's motion for a temporary restraining order is filled with allegations that defendants "go[] to great lengths to conceal both their identities and the full scope of their criminal counterfeiting operation." Dkt. No. 11 at 1. At least as to Respect The Look, this is plainly false. Respect The Look operates its own website, and places its New Britain, Connecticut address, its email address of respectthelook@gmail.com, and it's support phone number on its homepage. Jennings Decl., Ex. 2. Plaintiff's motion proceeds to state rote and conclusory allegations that trademark counterfeiting damages its goodwill, without offering any evidence that Respect The Look is even using Plaintiff's Mark or any other protectible common law mark belonging to Plaintiff. *See generally* Dkt. No. 11. Plaintiff then argues that Defendants "can and likely will modify content, change hosts, and

---

[4] Plaintiff does suggest, on page 10 of its motion for a TRO, that "many of [Plaintiff's images] are protected by copyright." Dkt. No. 11 at 10. But Plaintiff has not offered into evidence any copyright registration, which it must have as a prerequisite to filing a copyright infringement lawsuit, nor has it alleged copyright infringement in its Complaint. And at least as to the "One Nation Under God" flag, any copyright registration by Plaintiff would be fraudulent, because Respect The Look is the creator and Plaintiff is the infringer. Jennings Decl. at ¶ 17.

move any assets from U.S.-based bank accounts," with no evidence whatsoever specific to the Connecticut-based American company Respect The Look. Dkt. No. 11 at 13.

Plaintiff, not satisfied with preventing the alleged infringement (those allegations based on a single piece of evidence that does not at all show infringement), then sought an even broader TRO freezing the defendants' assets. Plaintiff's motion justifies the need to freeze the defendants assets using an allegation, based on no cited evidence whatsoever, that Defendants generally—including Respect The Look specifically—are companies that "hold most of their assets in China, making it easy to hide or dispose of assets." Dkt. No. 11 at 25. Plaintiff makes this allegation "upon information and belief," but the words "upon information and belief" do permit Plaintiff to make up facts out of whole cloth. Plaintiff accessed Respect The Look's website, because it listed Respect The Look's URL, http://respectthelook.com, on its filed exhibit. Beck Decl., Ex. 14. Plaintiff knew full well, or should have known, that Respect The Look's webpage listed a Connecticut address. Jennings Decl., Ex. 2. Plaintiff had no basis whatsoever for alleging that Respect The Look was a Chinese company requiring the unusual, extraordinary, and dubiously constitutional remedy of a secret *ex parte* TRO to protect Plaintiff's interests.

Based on this plethora of misrepresentations—no doubt copied verbatim from the motions of other trademark owners who, one hopes, performed a proper pre-suit investigation before filing—the Court granted Plaintiff's motion for an *ex parte* TRO on December 21, 2021. Dkt. No. 19. Despite the lack of evidence offered by Plaintiff to support its application and the extensive amount of damage being done to defendants who are unable to conduct business as a result of the TRO, the Court only order Plaintiff to post a $5,000 bond. Dkt. No. 19. The TRO

was set to expire after 14 days, on January 4, 2022, as required by Fed. R. Civ. P. 65(b)(2). Dkt. No. 19.

Plaintiff then sought an extension of the TRO on January 3, 2022, on the basis that the Plaintiff had "served the third parties with expedited document requests, but has not received all requested information or served all potential defendants." Dkt. No. 22. Unbelievably, the Court accepted Plaintiff's failure to effect service on the defendants as "good cause" to extend a TRO that was doing irreparable harm to every defendant, and in particular Respect The Look, each day. Dkt. No. 24. The Court extended the TRO for another two weeks, through January 18, 2022. Dkt. No. 24. Plaintiff then filed a motion for preliminary injunction on January 10, 2022, again copied and pasted from other plaintiffs' motions for preliminary injunctions, based entirely on the frivolous copied-and-pasted allegations of Plaintiff's motion for a TRO. Dkt. Nos. 26-27.

To cap off Plaintiff's misconduct, Plaintiff's attorney filed a Certificate of Service on January 10, 2022, representing to the Court under penalty of perjury that he had served copies of the summons, complaint, TRO, and motion for a preliminary injunction on all defendants by email. Dkt. No. 28. As of today, Respect The Look has never received an email from Plaintiff's counsel with any of these documents at any email account attached to its website or PayPal account. Jennings Decl. at ¶ 19. On January 12, 2022, when Respect The Look's counsel was first retained, he emailed Plaintiff's counsel to request a copy of the purported service email. Beck Decl., Ex. 17. The following day, after Plaintiff's counsel responded with copies of Plaintiff's trademark registration and purported "evidence" of "infringement" but no service email, Respect The Look's counsel again asked for a copy of the service email. Beck Decl., Ex. 18. As of the filing of this motion, Plaintiff's counsel has not produced a copy of the purported service email. Beck Decl. at ¶ 15.

## ARGUMENT

**I.     Plaintiff is not entitled to any preliminary injunction, because it has no trademark infringement claim.**

"A preliminary injunction is a very serious remedy, 'never to be indulged in except in a case clearly demanding it.'" *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000). To obtain a preliminary injunction, a plaintiff "must demonstrate that: (1) it has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted." *Kastanis v. Eggstacy LLC*, 752 F.Supp.2d 842, 847 (N.D. Ill. 2010) (citing *Girl Scouts of Manitou Council Inc. v. Girl Scouts of the United States of America Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008)). It is the moving party's burden to demonstrate each of these elements; if it cannot, "a court's inquiry is over and the injunction must be denied." *Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F. Supp. 3d 949 (N.D. Ill. 2018) (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). If the moving party overcomes this threshold, the Court must also consider "the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Abbott*, 971 F.2d at 11.

Here, Plaintiff has no likelihood of success on the merits against Respect The Look; indeed, it has failed to even state a claim. Plaintiff can demonstrate no irreparable harm; even if it could, that harm would be limited to sale of the single (frivolously alleged) infringing product, and could not justify the freezing of Respect The Look's e-commerce accounts and destruction of Respect The Look's entire business. Respect The Look and its employees will suffer far greater irreparable harm from the entry of a preliminary injunction, which would effectively shut

down Respect The Look's business and force Respect The Look to terminate its employees as it would be unable to pay them.

### A.     Plaintiff has failed to demonstrate any likelihood of success on the merits whatsoever.

Plaintiff's trademark infringement and counterfeiting claims fail at the outset because Plaintiff has failed to offer evidence that Respect The Look has ever used Plaintiff's registered FLAGWIX Mark. Plaintiff's only trademark registration asserted in this lawsuit is its mark for the standard character mark FLAGWIX, Registration No. 6,265,462. Beck Decl., Ex. 10. Plaintiff has not asserted or described any other common law trademark. *See generally* Dkt. Nos. 1 and 11. To state a claim for trademark infringement at all, Plaintiff must offer evidence that Respect The Look offers some product that is confusingly similar **to its FLAGWIX mark**, not that some image on Respect The Look's website is similar to some unregistered image on Plaintiff's website. 15 U.S.C. § 1114(1) (infringement is limited to reproduction or copying "of a registered mark."). Plaintiff has not done so by its proffer of Respect The Look's "One Nation Under God" flag, which does not use the word FLAGWIX. Beck Decl., Exs. 14-15. Plaintiff has not offered any other evidence of infringement, nor could it, because Respect The Look does not use the word FLAGWIX anywhere on its website or on any of its products. Jennings Decl. at ¶ 14. "Where the two marks are entirely dissimilar, there is no likelihood of confusion." *Brookfield Comms., Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

Plaintiff's purported evidence of infringement in the "One Nation Under God" flag cannot support a claim for infringement under any other theory. Plaintiff has no trademark rights in the phrase "One Nation Under God," which long predates the existence of either party in this case, nor does it have any trademark rights in images of the American flag or of Jesus. Plaintiff has not alleged any copyright in the allegedly similar images, nor has it offered into any evidence

a copyright registration, as would be required to state a copyright infringement claim. 17 U.S.C.

§ 411(a); *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 189 S. Ct. 881, 888

(2019). And even Plaintiff were to allege some form of intellectual property right in the "One

Nation Under God" image, it would have to offer some evidence that it created and therefore

owned the image, which, unlike Respect The Look, it has not done. *Compare* Dkt. No. 11 to

Jennings Decl. at ¶ 17. Plaintiff's claim is as facially absurd as it would be for K-Mart to sue

Target for infringing its registered trademark in the word "K-MART" because both K-Mart's and

Target's logos are red. To state Plaintiff's claim of infringement is to refute it.

Plaintiff's counterfeiting allegations, which are the basis for the extreme equitable

remedies it sought and obtained its TRO and now seeks to extend through a preliminary

injunction, are even more patently frivolous. A "counterfeit mark" is defined as "a counterfeit of

a mark that is registered on the principal register in the United States Patent and Trademark

Office for such goods or services sold, offered for sale, or distributed and that it is in use,

whether or not the person against whom relief is sought knew such mark was so registered." 15

U.S.C. § 1116(d)(1)(B)(I). In other words, a counterfeit mark is "a spurious mark which is

identical with, or substantially indistinguishable from, a registered mark." *Desmond v. Chicago

Boxed Beef Distributors, Inc.*, 921 F. Supp. 2d 872, 880 (N.D. Ill. 2013). Without evidence that a

mark identical to Plaintiff's registered FLAGWIX mark appeared somewhere on a Respect The

Look product, Plaintiff has no factual basis for an allegation of counterfeiting. This Court has

found a claim of counterfeiting to be in violation of Rule 11[5] when the allegedly infringing mark

---

[5] Due to the inherent emergency nature of TRO and preliminary injunction practice, Respect The
Look has not had time to carry out the safe-harbor procedures required for it to file a motion
under Fed. R. Civ. P. 11(c)(2). However, the Court may still order Plaintiff and its attorney to
show cause why they should not be sanctioned under Fed. R. Civ. P. 11(c)(3).

was merely similar and not identical to the plaintiff's mark. *See Specht v. Google, Inc.*, 805 F. Supp. 2d 551, 558 (N.D. Ill. 2011) ("Plaintiffs . . . seem to admit that Murphy violated Rule 11(b) with this counterfeit charge.").[6] Plaintiff's claims here are even more baseless than the claim in *Specht*, as: (1) there is no similarity whatsoever between Plaintiff's FLAGWIX mark and Respect The Look's allegedly infringing product, and (2) Plaintiff here obtained an *ex parte* TRO based on its frivolous counterfeiting claim, because Respect The Look had no opportunity to demonstrate that it was frivolous.

**B.      The remaining preliminary injunction factors weigh heavily against an injunction.**

Plaintiff has offered no evidence that it has been or will be irreparably harmed by Respect The Look's actions. The only evidence Plaintiff has offered of irreparable harm are rote conclusory allegations that irreparable injury is presumed from trademark infringement. Dkt. No. 11 at 20-21. But if there is no trademark infringement, there is no irreparable harm. There is no plausible allegation that Respect The Look's "One Nation Under God" would ever be confused with Plaintiff's FLAGWIX mark so as to damage Plaintiff's reputation or good will.

But Plaintiff's application for a preliminary injunction errs in an even more significant way: the alleged irreparable harm of damage to good will from trademark infringement can only support an injunction against continued infringement; it cannot support the extreme and unusual remedy of freezing Respect The Look's third party accounts. "[P]reliminary injunctive relief should be narrowly tailored to forestall irreparable harm in the interim between the injunction and the resolution of the case on the merits while minimizing the costs of mistakes."

---

[6] The Court in *Specht* did not impose sanctions under Rule 11 because the plaintiff still had a colorable trademark infringement claim that Google's ANDROID mark infringed its ANDROID DATA mark. 805 F. Supp. 2d at 558. Here, Plaintiff has no colorable infringement claim whatsoever.

*PrimeSource Building Prods., Inc. v. Felten*, No. 16-cv-11468, 2018 WL 10425921, at *5 (N.D. Ill. Mar. 8, 2018). Plaintiff has not offered any evidence whatsoever that Respect The Look—a Connecticut business owned and operated by its owner, an Connecticut resident and American citizen (Jennings Decl. at ¶ 2)—will "disregard [its] responsibilities and fraudulently transfer financial assets to overseas accounts." *Cf.* Dkt. No. 11 at 25. Respect The Look's appearance in this Court and filing of a counterclaim should dispel any hint that a continued freezing of Respect The Look's assets is warranted. Plaintiff has offered no evidence or argument to support a claim of irreparable harm warranting a continuing injunction against Respect The Look's financial accounts. At most, any continued injunction must be limited to enjoining Respect The Look from doing something it has never done: using the FLAGWIX mark as a designation on any of its products.

Respect The Look and the public interest, on the other hand, will be irreparably harmed by a continued injunction. Respect The Look is unable to conduct business because its customers cannot pay for items, including hundreds of items facing no allegation of infringement whatsoever. Jennings Decl. at ¶ 18. Respect The Look has nine independent contractor workers, whom it pays out of its PayPal account; if the freezing of Respect The Look's account continues, Respect The Look will be unable to pay its workers and be forced to terminate them. Jennings Decl. at ¶ 7. Jennings's other business activities, which also process payments through the PayPal account, are also frozen as a result of the TRO. Jennings Decl. at ¶ 6. The balance of harms in this case indisputably requires that the Court immediately lift the freeze on Respect The Look's PayPal account.

**C.     The TRO should be immediately dissolved as to Respect The Look.**

Federal Rule of Civil Procedure 65(b)(4) allows a party subject to an *ex parte* TRO to move to dissolve or modify the order, at which point "[t]he Court must then hear and decide the motion as promptly as justice requires."

First, for the reasons stated above as to Plaintiff's motion for a preliminary injunction, Plaintiff has never demonstrated an entitlement to a TRO as to Respect The Look. As Plaintiff admits in its motion, "the standard for granting a TRO and the standard for granting a preliminary injunction are identical in this Circuit." Dkt. No. 27 at 3. Plaintiff has never demonstrated even the slightest likelihood of success on the merits because **it has never offered evidence that Respect The Look ever used Plaintiff's FLAGWIX mark**. The Court failed to scrutinize Plaintiff's purported evidence of trademark infringement or counterfeiting when it granted Plaintiff's motion for a TRO. Now that Respect The Look has brought Plaintiff's complete lack of evidence to the Court's attention, the Court should dissolve the TRO.

Second, the Court should dissolve the TRO because the time for the TRO has expired, and Plaintiff has never demonstrated good cause under Rule 65(b)(2) to extend it. Plaintiff's basis for extending the TRO was that it failed to serve all potential defendants  by January 3, 2022. Dkt. No. 22. The time limit of Rule 65 was enacted "to cure a serious problem of 'ill-considered injunctions without notice.'" *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 438 (1974). Plaintiff's failure to carry out its obligation to serve defendants with notice of the claims against them is not good cause for extending a TRO; it is good cause for dissolving a TRO and ordering Plaintiff to show cause why it should not be sanctioned for failing to serve defendants.

Third, the Court should dissolve the TRO because Plaintiff obtained the TRO in violation of Rule 65(b)(1) requiring that: "(A) specific facts in an affidavit or a verified complaint clearly

show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Plaintiff's attorney never offered specific facts **as to Respect The Look** justifying an *ex parte* TRO, nor did Plaintiff's attorney certify that he made any attempt to notify Respect The Look before filing its motion. That Plaintiff filed its lawsuit against hundreds of defendants does not exculpate Plaintiff for its failure to individually investigate each defendant; it inculpates Plaintiff and Plaintiff's attorney. Every individual defendant has a Fifth Amendment right to not be deprived of property without due process of law, and the Plaintiff has an obligation to prove its entitlement to an *ex parte* TRO against each individual defendant. "Our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard had been granted both sides of a dispute." *Granny Goose*, 415 U.S. at 439. Plaintiff's deficient application for a TRO runs counter to the basic principles of due process and justice. And as detailed in the following section, Plaintiff's actions in this case warrant this Court's most severe sanctions.

## II.  Plaintiff and Plaintiff's attorneys should be severely sanctioned for violating Rule 11, Illinois Rules of Professional Conduct 3.1, 3.3(a) and (d), possibly committing perjury, and generally abusing this Court's procedures.

The nature of the *ex parte* proceedings in case requires holding Plaintiff and its attorneys to absolute honesty and candor in their dealings with the Court. In an *ex parte* proceeding, defendants have no opportunity to be heard, and no opportunity to alert the Court to the movant's errors. ABA Model Rule of Professional Conduct 3.3(d), which was adopted by Illinois, obligates a lawyer in an *ex parte* proceeding to "inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse." Sanctions under Rule 3.3(d) are exceedingly rare because the vast majority of lawyers take their professional obligations seriously. But when an attorney makes

misrepresentations to a Court or omits relevant facts to obtain a TRO on an *ex parte* basis, that attorney's actions are "utterly unacceptable," warranting severe and punitive sanctions to alert other attorneys that the justice system does not permit an attorney to engage in that misconduct. *UBS Financial Servs., Inc. v. Hergert*, No. C13-1825, 2013 WL 5775667, at *3 (W.D. Wash. Oct. 25, 2013); *see also Raskin, S.A. v. Datasonic Corp.*, No. 86-cv-7594, 1986 WL 12598, at *2-*3 (N.D. Ill. Nov. 5, 1986) (imposing Rule 11 sanctions and awarding attorney's fees and costs where plaintiff obtained an *ex parte* TRO based on inaccurate representations to the Court). In addition, Illinois Rule of Professional Conduct 3.1 prohibits attorneys from filing frivolous lawsuits without a basis in law and fact, and Illinois Rule of Professional Conduct 3.3(a) prohibits attorneys from making false statements of fact or law to a court.

An attorney in federal court is also bound by Rule 11 to "certify to the best of his 'knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,' that any pleading presented to the court is not presented for an improper purpose, that the claims therein have a legally sufficient basis, and that the allegations and other factual contentions have evidentiary support. *Jimenez v. Madison Area Technical College*, 321 F.3d 652, 656 (7th Cir. 2003). A plaintiff who files a complaint for infringement of intellectual property without an adequate investigation into whether the defendant has actually committed infringement violates Rule 11, and is subject to sanctions including but not limited to payment of the defendant's attorney's fees and costs. *See Triune Star, Inc. v. Walt Disney Co.*, No. 07-cv-1256, 2008 WL 5068943, at *9 (C.D. Ill. Nov. 25, 2008).

The Court also has inherent authority to sanction parties and attorneys for the "full range of litigation abuses." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). This Court has imposed severe sanctions on parties and attorneys who make misrepresentations to the Court under its

inherent authority. *See Cavelle v. Chicago Transit Authority*, No. 17-cv-5409, 2020 WL 133277, at *4 (N. D. Ill. Jan. 13, 2020); *see also Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018). "A district court may impose sanctions under its inherent authority 'where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Fuery*, 900 F.3d at 463 (quoting *Tucker v. Williams*, 682 F.3d 654, 661-62 (7th Cir. 2012)). The Court may "assess[] the total effect of the misconduct on the integrity of the proceedings" and issue a sanction which will "maintain . . . the integrity of the trial process." *Id.* at 469.

Plaintiff's abuse of the Court's procedures here are so numerous and extreme that the Court should impose the most severe sanctions available to it. Plaintiff's misconduct, as described in detail in the Statement of Facts above, includes the following sanction-worthy actions:

1.  Filing a Complaint for infringement of a trademark without any apparent reasonable pre-suit investigation to confirm that defendants actually infringed or counterfeited the mark.

2.  Filing a Complaint apparently misrepresenting the location of Plaintiff's principal place of business in order to obtain venue in this District.

3.  Filing a Complaint incorrectly identifying Plaintiff's corporate name while filing Plaintiff's trademark registration certificate under seal, preventing defendants from determining what trademark Plaintiff alleged to have been infringed.

4.  Filing a frivolous motion to seal inherently public documents such as Plaintiff's trademark registration certificate.

5.  Filing a motion for an *ex parte* TRO without making any attempt to determine if any of the individual defendants could be notified before a hearing, as required by Rule 65(b)(1).

6.  Misrepresenting to the Court, in an application for an *ex parte* TRO, that all defendants were engaged in the counterfeiting of Plaintiff's mark.

7.  Misrepresenting to the Court, in an application for an *ex parte* TRO, that Respect The Look's "One Nation Under God" flag infringed and counterfeited Plaintiff's FLAGWIX mark when the word FLAGWIX appears nowhere on Respect The Look's products or website.

8.  Misrepresenting to the Court, in an application for an *ex parte* TRO, that all defendants "hold most of their assets in China, making it easy to hide or dispose of assets," (Dkt. No. 11 at 25), when Plaintiff had visited Respect The Look's website identifying its location in Connecticut.

9.  Misrepresenting to the Court, in an application for an *ex parte* TRO, that all defendants "have gone to great lengths to conceal their true identities and/or move outside of this Court's reach by, among other things, excluding any identifiable information from Defendants' Webstores and Webstores [sic]," (Dkt. No. 11 at 27), when Plaintiff had visited Respect The Look's website, which provides its mailing address, email address, and phone number.

10. After obtaining the TRO, failing to promptly notify defendants of the TRO and the claims against them so that they would have an opportunity to respond.

11. Filing a frivolous motion to extend the TRO on the basis that Plaintiff's failure to timely serve defendants with the TRO was "good cause" for an extension.

12. Filing an apparently fraudulent Certificate of Service stating that Plaintiff served each defendant with the complaint, summons, TRO, and motion for a preliminary injunction on January 10, 2022, when Plaintiff had at a minimum failed to serve Respect The Look.[7]

Plaintiff's misconduct was not harmless. It caused at least $100,000 in damage directly to Respect The Look, forcing it to incur substantial attorney fees to appear, move to dissolve the TRO, and oppose Plaintiff's frivolous application for a TRO. Jennings Decl. at ¶ 8. Respect The Look has filed a counterclaim seeking damages for malicious abuse of process, but that does not deny the Court of its power to sanction Plaintiff and its attorney under the Illinois Rules of Professional Conduct, Rule 11, and the Court's inherent power.

Plaintiff's misconduct challenges the legitimacy of this District's trademark counterfeiting bar. Dozens of trademark owners have filed trademark counterfeiting complaints essentially identical to Plaintiff's, seeking the exact same *ex parte* relief Plaintiff did here, and using this Court's orders freezing asserts to extort lucrative settlements from defendants. These

---

[7] Respect The Look will withdraw this allegation if Plaintiff can offer proof that it attempted to serve Respect The Look by email on January 10, 2022. If Plaintiff cannot offer such proof, this is potentially the most egregious of Plaintiff's many misdeeds, as the Certificate of Service is a sworn statement under penalty of perjury. Dkt. No. 28.

actions can only be justified when the trademark owners and their attorneys are meticulously honest, performing thorough pre-suit investigations to ensure that all defendants are truly counterfeiting the plaintiff's trademark and that all defendants are the type of foreign fly-by-night operation that can only be stopped through the use of the sort of extreme and unusual *ex parte* TRO imposed here. Plaintiff's failure here to perform that pre-suit investigation as to each defendant converted this Court from an instrument of justice into an instrument of tyranny.

At a minimum, the Court should sanction Plaintiff by dismissing all claims against Respect The Look with prejudice, awarding Respect The Look all attorney's fees and costs incurred in responding, forfeiting Plaintiff's bond, and ordering Plaintiff to pay all damages incurred as a result of the wrongful restraint. No lesser sanction would be adequate to remedy the pervasive litigation misconduct Plaintiff has committed here.

## **CONCLUSION**

Plaintiff has offered no evidence whatsoever that Respect The Look ever infringed, let alone counterfeited, its registered FLAGWIX Mark. Plaintiff has engaged in severe litigation misconduct possible, wrongfully causing the Court to enjoin at least Respect The Look, if not the hundreds of other defendants in this case, based on blatant misrepresentations and legally baseless assertions in an *ex parte* proceeding. For the foregoing reasons, Respect The Look therefore respectfully requests that the Court dissolve the TRO, deny Plaintiff's motion for a preliminary injunction, and order Plaintiff and Plaintiff's attorneys to show cause why they should not be sanctioned.

Respectfully submitted,

RJITSCT LLC d/b/a Respect The Look

Dated: January 14, 2022      By: _/s/ Brian J. Beck_____

Brian J. Beck
ZUBER LAWLER LLP
135 S. LaSalle St., Suite 4250
Chicago, Illinois 60603
(312) 346-1100
(213) 596-5621 (fax)
bbeck@zuberlawler.com

Counsel for Defendant and
Counterclaim-Plaintiff
RJITSCT LLC d/b/a Respect The Look

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 14, 2022, a copy of the foregoing was served on counsel of record by electronic means pursuant to the court's Electronic Case Filing (ECF) system.


*/s/ Brian J. Beck*