1              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3    XPED LLC,                    )
                                  )
4              Plaintiff,         )
                                  )
5          vs.                    )  No. 21 C 6237
                                  )
6    THE ENTITIES LISTED ON       )  Chicago, Illinois
     EXHIBIT 1,                   )  January 20, 2022
7                                 )  2:01 p.m.
               Defendants.        )
8

9      TRANSCRIPT OF PROCEEDINGS - TELEPHONIC STATUS AND MOTION
                              HEARING
10
                  BEFORE THE HONORABLE ANDREA R. WOOD
11

12   APPEARANCES:

13   For the Plaintiff:     PMJ PLLC
                            BY:  MR. PATRICK M. JONES
14                               MS. SARAH BEAUJOUR
                            900 South Clark Street, Suite 2101
15                          Chicago, Illinois 60606
                            (312) 255-7976
16                          Pmj@patjonesPLLC.com

17   For the Defendant
     RJITSCT d/b/a
18   Respect the Look:      ZUBER LAWLER LLP
                            BY:  MR. BRIAN J. BECK
19                          135 South LaSalle Street, Suite 4250
                            Chicago, Illinois 60603
20                          (312) 767-6060
                            Bbeck@zuberlawler.com
21
     Also Present:  Mr. Reginald Jennings
22
     Court Reporter:        Brenda S. Tannehill, CSR, RPR, CRR
23                          Official Court Reporter
                            219 South Dearborn Street, Suite 1928
24                          Chicago, Illinois 60604
                            (312) 554-8931
25                          *brenda_tannehill@ilnd.uscourts.gov*

1        (Proceedings held remotely, via telephone:)

2             THE COURT:  Good morning.  Or good afternoon, rather.

3        This is Judge Wood joining the line.  I believe we're

4    ready to call the case, so I will have my courtroom deputy to

5    do that, and then I'll get appearances starting with

6    plaintiff's counsel first.

7             Go ahead, David.

8             THE CLERK:  21 C 6237, Xped LLC v. The Entities

9    Listed on Exhibit 1, for status and motion hearing.

10            MR. JONES:  And good morning, Your Honor.  This is

11   Patrick Jones appearing on behalf of the plaintiff, Expeditee,

12   LLC.  Also on the line with us is my associate,

13   Sarah Beaujour.

14            MR. BECK:  Good afternoon, Your Honor.  This is

15   Brian Beck representing defendant RJITSCT, LLC, doing business

16   as Respect the Look.  And also on the line with me is the

17   owner of RJITSCT, Reginald Jennings.

18            THE COURT:  Thank you.

19            Okay.  So the parties, no doubt, saw that this

20   morning, I did grant the request by Respect the Look to

21   dissolve the TRO as it relates to that defendant only.  I did

22   that after reviewing the materials that were submitted by the

23   parties to supplement the record with any additional authority

24   regarding the applicability of the federal trademark case law

25   to the circumstance of this case.

1            I will briefly, just to flesh out the record a little

2   bit, indicate that I granted the motion based on two aspects

3   of the TRO analysis that I now understand to be different than

4   how I understood it at the time that the ex parte TRO was

5   entered.

6            First, the likelihood of success on the merits based

7   on submissions by Respect the Look and their argument and

8   testimony at the hearing a couple of days ago as well as the

9   responses to my questions from plaintiff's counsel, it is

10   clear to me that the theory and the facts upon which the

11   ex parte relief was originally granted as to this defendant

12   are not borne out at least not by the circumstances currently

13   known, the most significant fact being that Respect the Look

14   does not seem to have used the actual "FLAGWIX" trademark in

15   connection with the advertisement and seller that is the

16   subject of the claim against it.

17            I appreciate and understand why Mr. Jones' client

18   would be concerned if it actually is the case that Respect the

19   Look or any of the other defendants is taking a picture of

20   their product, taking off the trademark and then using that

21   picture as part of their advertisement, but, one, that's not

22   what was represented in the TRO papers; and two, that's not a

23   trademark claim as supported by any of the authority that the

24   plaintiff has submitted.  And that includes the supplemental

25   authority that was submitted on Tuesday evening.

4

1        To the contrary, the supplemental authority submitted

2 by defendant Respect the Look is much more persuasive with

3 respect to the fact that this sort of claim doesn't fall

4 under -- does not fall under the auspices of trademark law.

5 The *Personal Keepsakes, Inc. v. Personalizationmall.com* case,

6 I thought, was very helpful in that regard and I think makes

7 some good points.  More importantly would be the Supreme Court

8 case in *Dastar Corp. v. Twentieth Century Fox.*

9        In any case, I was not inclined to continue that

10 relief based on my current understanding of the record as it

11 stands which is that Respect the Look wasn't actually using

12 the registered mark.  The registered mark is the only one that

13 is referenced in the complaint as being the basis for this

14 lawsuit.  There is no copyright claim at all in the lawsuit.

15        And so that's the source of my concerns about the

16 likelihood of success on the merits and the representations

17 that were the basis of the original ex parte relief.

18        The other aspect of my decision to dissolve the TRO

19 as to this defendant has to do with the arguments regarding

20 irreparable harm and the balance of harms on the one hand with

21 respect to the plaintiff if the relief were not continued and

22 on the other hand to the defendant if the relief was

23 continued.

24        The irreparable harm here, at least as presented in

25 the original TRO motion, was based on the claims that this was

1    an overseas seller that was likely to take the proceeds from

2    their ill-gotten gains and disappear before any relief could

3    be rendered by the Court.  It appears that much of the factual

4    basis for that suggestion is not the case.

5          I had testimony from Mr. Jennings indicating that

6    he's in Connecticut, he's got physical locations in

7    Connecticut.  The information available in the record supports

8    that he's based in Connecticut.  He's hired counsel who showed

9    up in the case, filed counterclaims and motions for sanctions.

10   All of this indicates very strongly that this defendant is not

11   going to flee from the jurisdiction, so to speak, and so the

12   factual basis to support the claim of irreparable harm is

13   lacking.

14         With respect to the balance of harms, I do think the

15   harms that Mr. Jennings laid out under oath during the last

16   hearing indicate that continuing to keep the freeze in place

17   would do quite a bit of harm to his business and to him

18   personally as somebody who relies on the proceeds from that

19   business for his own livelihood.  And I won't go into the

20   details of his testimony about how it's affecting him

21   personally, but for those reasons, I felt that the balance of

22   harms weighed in favor of dissolving the TRO.

23         So the TRO has been dissolved as to Respect the Look.

24   It is still in place as to the other defendants who have not

25   appeared in front of me and have not asked to have the TRO

1    dissolved as to them.  And I do still have the pending

2    preliminary injunction motion that's been filed on behalf of

3    the plaintiff that we will discuss a bit today.

4          Before I leave the topic of the order that was

5    entered this morning, were there any specific questions or

6    issues with respect to the dissolving of the TRO that the

7    plaintiff would like to raise?  Mr. Jones?

8          MR. JONES:  Sorry.  I was on mute.

9          No, we have no questions.  Understood.

10         THE COURT:  Okay.  Mr. Beck?

11         MR. BECK:  We have no questions regarding the order

12   on the TRO.  Thank you, Your Honor.

13         THE COURT:  Okay.  So this leads to the issue of the

14   preliminary injunction request as to Respect the Look on the

15   one hand but as to the other defendants on the other hand.

16         With respect to Respect the Look, the fact that the

17   TRO has been dissolved does not necessarily resolve the issue

18   of whether a preliminary injunction should be entered;

19   however, again, the papers in front of me base the request for

20   a preliminary injunction only on this theory of trademark

21   infringement that does not appear to be supportable by the

22   record or by the case law.  So there are a couple of different

23   options here.

24         Mr. Jones, you may seek to file a new motion for

25   preliminary injunction if you feel that there is an argument

1  that needs to be made here that just wasn't included in the

2  record that's in front of me.  And a schedule could be set for

3  discovery leading to a preliminary injunction hearing and a

4  ruling on that with respect to Respect the Look, or you can

5  stand on your current motion directed towards Respect the

6  Look.  I'll issue a ruling on it.  Again, based on my review

7  of the case law and the record I currently have, I don't see

8  how it would be supportable.

9        So I suppose I will ask Mr. Jones how you would like

10  to proceed.  Do you want to stand on your current preliminary

11  injunction submission as to Respect the Look?

12        MR. JONES:  I think we still have a very strong case

13  against Respect the Look, but I think without the fact that

14  they or may have -- I guess it's a question of fact whether

15  they air brushed off the logo or not, as Your Honor said, does

16  undercut our claim with respect to the TRO and the injunction.

17        So I would be fine if the Court denied the injunction

18  with respect to Respect the Look, we move forward with the

19  other defendants, and we move forward with Respect the Look

20  because they're still a defendant and we still have strong

21  claims against them.

22        THE COURT:  Yeah.  So to be clear, the denial of the

23  TRO or a preliminary injunction doesn't end the case as to the

24  defendants.  And certainly in Respect the Look's case, there

25  are now counterclaims pending.

1       So as it stands, I'm going to deny the motion for

2   preliminary injunction as to Respect the Look.  If subsequent

3   proceedings, including discovery in the matter, reveal a basis

4   for the plaintiff to file a renewed motion for a preliminary

5   injunction, you can certainly do that and make an argument

6   based on the specifics of Respect the Look's conduct.

7       MR. JONES:  Thank you.

8       THE COURT:  As to Respect the Look's motion for

9   sanctions, that portion of their motion has not yet been

10   resolved.  I would propose to set a briefing schedule, and

11   then once I've reviewed the briefing, I can make a

12   determination as to whether an evidentiary hearing might be

13   needed.  Of course, one side or the other could also request

14   an evidentiary hearing, but I think, as it stands now, it

15   would appear that the issues can at least be fleshed out on

16   paper.

17       Mr. Jones, how much time would you like in order to

18   file a written response to the request for sanctions?

19       MR. JONES:  Twenty-one days, please.

20       THE COURT:  That's fine.  That will take us until

21   February 10th.

22       And then Mr. Beck, would you be able to file any

23   reply 14 days thereafter?

24       MR. BECK:  That would be fine, Your Honor.

25       So that would be the 24th, right?

1      THE COURT:  Correct.

2      And I believe at the last hearing, we worked out the

3  answer and -- well, the answer date for both the complaint and

4  the counterclaims.  So the parties also have that on your

5  respective plates.

6      MR. JONES:  And that was -- check my notes --

7      THE COURT:  Yes, it appears the plaintiff is going to

8  respond to the counterclaim by February 4th.

9      MR. JONES:  Right.

10      THE COURT:  And the defendant is going to respond to

11  the complaint by February 7th.

12      MR. JONES:  Right.  That's what I have, yep.

13      THE COURT:  Okay.  And we have a briefing schedule.

14      Now, as to the other defendants who have not

15  appeared, Mr. Jones, I do have concerns related to the fact

16  that you indicated on Tuesday that 50 percent approximately of

17  the defendants do not actually use the word "FLAGWIX" which is

18  the trademark in the postings advertising their products.

19      Given that the 50 percent that don't use the word

20  "FLAGWIX" are in the same boat as Respect the Look, why should

21  I proceed and enter a preliminary injunction against them?

22      MR. JONES:  Sorry, Your Honor.  I was just trying to

23  look at the Exhibit 1 that we attached to the complaint that

24  showed the images.

25      Well, for one reason, they haven't appeared.  We sent

1   notice of the TRO and notice of this hearing to each one of

2   these defendants.

3          In some cases, it's a difficult question.  I think we

4   sent you an image -- or I know we sent you an image of the

5   "One Nation Under God" flag which is the subject of the

6   dispute with Respect the Look, and in some cases, the logo is

7   pretty small and hard to identify on these defendants'

8   websites, and in other cases, it's been Photoshopped out.  But

9   we still have -- they use the identical images cloned from the

10  plaintiff's website, so I think we still have a very strong

11  likelihood of success on the merits.

12         On the unfair competition claims and the other claims

13  that we have in the complaint with respect to the TM, I would

14  have to go through slide by slide -- and we can certainly do

15  that -- to determine which defendants used the stolen image

16  with the logo and which did not.

17         THE COURT:  Do you have information sufficient to

18  provide an accounting of the total amount of funds that have

19  been frozen pursuant to the existing TRO, not including the

20  ones, of course, that were unfrozen this morning?

21         MR. JONES:  Right, and we've unfrozen dozens of

22  accounts from defendants who have admitted that they were

23  infringing the trademark.  So we've settled those cases and

24  unfrozen those funds.

25         As respect to the ones that are still frozen, I think

1   they may average -- and I'm just, you know, taking a guess

2   here based on the spreadsheets that we have that show their

3   balances.  And we have those balances for, I believe, all the

4   defendants except maybe Alibaba who just recently produced

5   contact information and whose defendants were only recently

6   served two days ago, I believe.  So yeah, I believe, on

7   average, I'd be confident to say it's about $1,500 per case,

8   per defendant.

9           THE COURT:  And how many defendants remain in the

10  case?

11          MR. JONES:  When we first filed the complaint, we

12  authorized the platforms, the PayPals and the Alibabas and the

13  Amazons, we authorized them immediately to share our contact

14  information so they were aware of why their accounts were

15  frozen.  And they had my firm's contact information to

16  respond, and, you know, some have and some haven't.

17          I think we've probably settled with about 30 of the

18  defendants, and that would leave about 220.

19          So at this point, they all have notice of the

20  complaint, they all have notice of the TRO, they all have

21  notice of the -- they all received a summons, and they all had

22  notice of this hearing, and only Respect the Look has chosen

23  to appear.

24          THE COURT:  So at $1,500 per defendant, and with 220

25  defendants left in the case, that would lead to an estimate of

1     approximately $330,000 that's been frozen?

2              MR. JONES:  That sounds roughly accurate, yes.

3              THE COURT:  That strikes me as relative to the bond

4     perhaps a bit high, or perhaps a better way to say it is in

5     light of the amount that's frozen, the $5,000 amount that was

6     posted as bond strikes me as low.

7              Actually, the typical amount that plaintiffs ask to

8     post or propose to post in these cases in this district is

9     actually 10,000, so that was likely an oversight on my part in

10    not asking why the proposed amount was only 5,000 from the

11    initial order, given that, typically, plaintiffs do ask to

12    post ten.

13             Knowing that the total amount that's been frozen is

14    330,000, I'm inclined -- or approximately -- I'm inclined to

15    increase the amount of the bond that's posted, and I'm

16    inclined to increase it to 10 percent of the funds that have

17    been frozen which would be 33,000 to be posted as the bond in

18    connection with the preliminary injunction order.

19             Here's what I'm going to do, Mr. Jones.  I'm going to

20    extend the TRO further to give you an opportunity to

21    supplement the preliminary injunction record with two things.

22    One, I would like to have a listing of all of the remaining

23    defendants that actually used the FLAGWIX trademark which

24    means the word as reflected on the registration.

25             Having a list of the ones that actually used it, I

1    can filter out and figure out that the remaining ones are the

2    ones that didn't actually use it or for which you just don't

3    know.

4          And I would like to have confirmation of the amount

5    of funds that have been frozen overall and the amount of funds

6    that have been frozen for those defendants that used the

7    trademark.  That last piece, I imagine, might take a little

8    bit of extra work, but it is something that you can pull

9    together.

10         MR. JONES:  Yes, we can.  Yeah, it will take a little

11   bit of work, but we can pull it together.

12         THE COURT:  How much time do you expect that it would

13   take you to make that submission?

14         MR. JONES:  Fourteen days.

15         Most of them, I'm sure we can just look on Exhibit 1

16   that we submitted, but then if there are others who didn't use

17   it, we might have to do a little bit of online investigation.

18         THE COURT:  Sorry.  I'm just taking a moment.

19         Okay.  So here's what I'll do.  I will give you until

20   February 3rd, which is two weeks, to -- actually, I'm going to

21   try to simplify things a little bit.

22         Within one week, by the 27th of January, I would like

23   the listing of the sites or defendants, sellers and/or sites,

24   that you believe actually used the FLAGWIX trademark, meaning

25   the word "FLAGWIX," in connection with their product, meaning

14

1    it appears on the product or it appears in the advertisement

2    for their product.  So that by January 27th.

3         By February 3rd, I would like an accounting of how

4    much has been frozen in any of the accounts or other assets

5    that have been frozen for all of the defendants and then a

6    separate accounting of how much has been frozen for the

7    defendants that actually used the FLAGWIX trademark.

8         So you'll provide the list by the 27th and the

9    accounting by the 3rd.

10        In the meantime, I am going to grant the -- actually,

11   for now, I'm going to hold off on granting the preliminary

12   injunction motion until I get the list on the 27th because I'd

13   like to take a look at the websites to determine the propriety

14   of doing so, but I will extend the TRO through that date.

15        Based on the representations today, I'm going to

16   increase the bond amount to $33,000, which is 10 percent of

17   the $330,000 estimate of how much has been frozen, which I

18   think better represents an amount that is reasonable to

19   protect against improper restraint.  And that number may be

20   reduced if it turns out that the -- if the amount that's

21   actually been restrained is less or if, once I review the

22   information provided on the 27th, it appears that a fewer

23   number of defendants will actually be subject to the

24   preliminary injunction.

25        So those submissions will be on the 27th and the 3rd.

1    I have answers to claims and counterclaims that will be made

2    the following week or by the following week in February, on

3    the 4th and the 7th.

4           And then I'd like to set another status hearing for

5    after the defendants that have been served are due to answer

6    so that I would be able to see if anybody is going to appear

7    to defend the case.  And if not, we can go forward on a

8    default track as to any defendants who remain who are properly

9    subject to the orders.

10          Of course, Respect the Look be will on a different

11   track, and so at that time, at that hearing, we will need to

12   discuss a discovery schedule on the merits as well as an

13   overall schedule for resolving the case.

14          So let me check with my deputy, David, to see if he

15   can suggest a status date for us perhaps during the week of

16   February 14th or the week of February 21st.

17          THE CLERK:  Judge, February 15th at 1:30.

18          THE COURT:  Are Counsel available for a telephone

19   hearing at that time?  Mr. Jones?

20          MR. JONES:  Was that a 15th or a 16th?

21          THE CLERK:  15th.

22          THE COURT:  I believe it was the 15th, one, five,

23   Tuesday.

24          MR. JONES:  Great.  Yes, that's fine.

25          THE COURT:  Okay.  Mr. Beck, are you available at

1   that time?

2          MR. BECK:  Yes, February 15th at 1:30 p.m. works for

3   us.

4          THE COURT:  Okay.  Looking through my agenda for

5   today, I believe those are all the outstanding issues that I

6   have.

7          Mr. Jones, did you have anything else to raise on

8   behalf of the plaintiff?

9          MR. JONES:  Just to inform the Court that all

10  defendants did receive notice of this hearing, including the

11  Alibaba defendants who were very slow to produce identifying

12  information about their shops, and all defendants have been

13  served in this case.

14         THE COURT:  Okay.  Thank you for that update.

15         Mr. Beck, do you have anything to add?

16         MR. BECK:  Just two things.  One is with respect to

17  the answer to the counterclaim complaint, I just wanted to

18  make sure it was clear that's the deadline to answer or

19  otherwise respond to the complaint because I can tell you

20  candidly right now that we are planning to file a motion to

21  dismiss rather than an answer on that date.

22         THE COURT:  Understood.  So that is the 7th.

23         If you would like to meet and confer with Mr. Jones

24  and propose a briefing schedule for your motion, you may

25  submit that by email to my chambers by sending it to Mr. Lynn.

1   Otherwise, given that the status hearing is just the following

2   week, I will set a briefing schedule at the hearing.

3          MR. BECK:  Certainly.  I'll discuss that with

4   Mr. Jones.

5          And then the second thing, I don't represent any of

6   the other defendants, but I just wanted to make sure the

7   footnote in our notice of supplemental authority was brought

8   to the Court's attention regarding the way that Mr. Jones

9   served defendants in the other case before Judge Kocoras.

10         I know Mr. Jones just represented that all the other

11  defendants were provided with notice of the hearing, but I

12  don't know -- but we certainly have no way of knowing how that

13  service was effected or how he notified them or what manner

14  they were notified and if it was in a form such as what he did

15  in the case in front of Judge Kocoras, by sending out

16  invoices, for example.

17         So I don't know if the Court is interested in

18  inquiring further into that, but I just wanted to bring that

19  to the Court's attention.

20         THE COURT:  I did see the footnote.

21         You wanted to respond to that, Mr. Jones?

22         MR. JONES:  Yeah.

23         We didn't just send out invoices.  We served a copy

24  of the complaint, the summons, the TRO, the preliminary

25  injunction, and notice of this hearing.  So it's not as if we

1    just sent out invoices.

2          THE COURT:  What is an invoice?  I don't understand

3    in this context.  What is the invoice for?

4          MR. JONES:  I'm not sure.  Mr. Beck?

5          MR. BECK:  If you look at the papers that were filed

6    in the parallel case -- let me just pull up my -- the docket

7    number quickly.  One moment.

8          MR. JONES:  21-6440.

9          MR. BECK:  Yes.

10          So if you look at Docket Number 37 and I think the

11   exhibits that were filed by the defendants in that case, there

12   was an example of the invoice that was sent to those

13   defendants who appeared in that case where rather than a

14   service -- rather than the email serving with the complaint

15   and summons, Mr. Jones' client sent -- Mr. Jones or his

16   client -- it wasn't quite clear which -- sent something that

17   was phrased as an invoice for $15,000 to have the count

18   lifted.

19          And I haven't submitted that in this court.  I just

20   submitted the citation to the other docket, but the Court can

21   certainly look up the filings in that case.

22          MR. JONES:  That wasn't done in this case.

23          THE COURT:  Just a minute, Mr. Jones.

24          Mr. Beck, do you have reason to believe that similar

25   invoices were sent to the defendants in this matter?

1          MR. BECK:  I have no specific information to suggest

2    that other than Mr. Jones' general conduct first in playing

3    games with the service email, the contents of the service

4    emails with what was sent to Respect the Look specifically in

5    this case, and then in seeing what Mr. Jones' client did in

6    the other case.

7          So I don't know that he has submitted a certificate

8    of service stating that he served the other defendants, but

9    the certificate of service didn't include as an attachment an

10   example of the emails that were sent.

11         So we have no specific knowledge, we have no way of

12   getting that specific knowledge other than trusting Mr. Jones'

13   words.  And frankly, Your Honor, I don't believe Mr. Jones'

14   word is trustworthy as to the content of service emails at

15   this point, given what he has done in this case and in the

16   parallel case.

17         THE COURT:  So I'm not going to go so far as to agree

18   with you on that point, Mr. Jones -- Mr. Beck; however, I know

19   that previously, Mr. Jones did file an example of the service

20   package that was sent to the defendants, and, in particular, I

21   think it might have been Respect the Look's service package

22   with the cover email.

23         In order to confirm that appropriate notice has been

24   given consistent with Rule 65(a) which does require that

25   notice be given in order for preliminary injunctive relief to

1   be entered in addition to the other items that I've asked the

2   plaintiff to file, I'd like by the 27th to also receive from

3   the plaintiff a supplemental proof of service that just shows

4   the form of notice that you provided to the defendants.

5       So I understand that you sent out by email notice of

6   this hearing and the motion.  I would like to see the form of

7   notice that you used.  You can attach it to a notice of filing

8   and include it on the docket as a supplement before just so

9   that I can confirm that notice consistent with Rule 65(a) has

10  been provided to all of the defendants who would be subject to

11  the preliminary injunction order.

12      Anything else you'd like --

13      MR. JONES:  That's okay.

14      THE COURT:  Good.

15      Anything else, Mr. Beck, that you'd like to raise

16  today?

17      MR. BECK:  No.  That's all, Your Honor.  Thank you.

18      THE COURT:  Okay.

19      MR. JONES:  For the record, I don't think Mr. Beck

20  has any credibility either.

21      That was a joke.  I'm sorry, Your Honor.  That was a

22  joke.

23      THE COURT:  The record will reflect that you

24  represented that as a joke because I don't know that it would

25  have come across as a joke otherwise, Mr. Jones.

1    Look, my interest in moving this case forward is to

2  ensure a degree of transparency to the proceedings.  Given the

3  nature of the allegations that have been raised on both sides,

4  I think that's in the interest of justice, so that's why I

5  want to have filings that actually show how much has been

6  frozen, what's being done with respect to service, et cetera.

7    So the parties should expect that I am going to be

8  asking for that sort of documentation.  As I said, it's in the

9  interest of transparency.

10    I haven't made any conclusions about anybody's

11  allegations of who's really at fault here with respect to

12  either counterfeiting or the request for sanctions at this

13  point other than what I've already indicated with respect to

14  my findings on the TRO and my concerns about moving forward

15  with the preliminary injunction until I get the additional

16  information that I've requested from the plaintiff.

17    MR. JONES:  That sounds good.  Thank you.

18    THE COURT:  The last thing I'll mention is this

19  order, the order that's going to be entered on the docket from

20  this hearing, is also going to indicate that any party who

21  seeks to have the restraint that's in place dissolved as to

22  them may do so and may file a request.  It will be heard on

23  two days' notice, again, consistent with Rule 65.

24    The way Rule 65 works, as interpreted in this

25  circuit, is that if a TRO is extended beyond that 28-day

1    period that consists of the initial ex parte TRO and an

2    extension for good cause, it becomes essentially a de facto

3    preliminary injunction, meaning it can be appealed or

4    challenged on appeal the same way that a preliminary

5    injunction can.

6            Now, here, the other parties haven't appeared.  If

7    they've received notice and they haven't appeared and they

8    haven't objected to the continuance of the emergency relief,

9    then I believe that they have waived their ability to

10   complain; however, if they do appear and file something and

11   say that they want to have the relief dissolved, they're

12   entitled to do so on an expedited basis and to get this

13   decided, and I will make sure that that happens.

14           So I am going to include a note on the docket to the

15   effect that anybody who has a concern about the continuation

16   of the restraint should file a motion to that effect, and I

17   will set a hearing on it on an emergency basis of not more

18   than two business days after it's filed.

19           MR. JONES:  Your Honor, one note on that.  Their

20   basis would be that they didn't use the FLAGWIX trademark, so

21   if we submit images of these defendants using the FLAGWIX

22   trademark on the cloned images, then they will not be excluded

23   from the TRO or the preliminary injunction if that's entered?

24           THE COURT:  So unless there is some other basis that

25   they raise that warrants different consideration, look, my

1   intent is to use the information that you provide next week to

2   take a closer look at these screen shots so that I can satisfy

3   myself that a preliminary injunction that may remain in place

4   for an extended period of time is warranted here.  So if they

5   don't appear and all the information I have is what's provided

6   next week as well as what's already in the record, then

7   certainly they wouldn't be able to challenge that.

8           Also, these defendants are not yet in default, but if

9   they don't answer by I believe it was February 7th for the

10  ones that have all been served, they'll be in default, and

11  their ability to protest will be much more severely limited.

12  They would have to cure their default first.

13          MR. JONES:  Understood.  Thank you, Your Honor.

14          THE COURT:  So we have a next status date.  We have a

15  schedule for a bunch of things.

16          I always ask the parties if they would like a

17  referral to the magistrate judge to discuss early settlement.

18  Is that something the parties might be interested in here, to

19  have a third party get involved in any settlement discussions?

20  Mr. Beck?

21          MR. JONES:  We haven't had any to this point, but I'm

22  not against it.

23          This is Patrick on behalf of plaintiff.

24          THE COURT:  Yes, Mr. Jones.

25          Mr. Beck, would your client be at all interested in

1    that?

2          MR. BECK:  I believe it might be productive once the

3    motion to dismiss on our side -- and I don't know if Mr. Jones

4    is planning to answer the counterclaim or file a motion to

5    dismiss himself, but I think it would be more productive once

6    the motion to dismiss is resolved.  Possibly once the motion

7    for sanctions is resolved, then I think the parties will have

8    a better idea of where this case stands and what the Court's

9    decisions regarding the law of this case is.

10         THE COURT:  Understood.  So I'll hold off on making

11   any such referral at this time.

12         Okay.  Thank you for your time this afternoon.  We

13   will speak again in a few weeks.

14         MR. JONES:  Okay.  Thank you, Your Honor.

15         MR. BECK:  Thank you, Your Honor.

16         THE CLERK:  Court stands adjourned.

17      (Proceedings adjourned at 2:47 p.m.)

18

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2

3

4             I, Brenda S. Tannehill, certify that the foregoing is

5     a complete, true, and accurate transcript from the record of

6     proceedings on January 20, 2022, before the HONORABLE

7     ANDREA R. WOOD in the above-entitled matter.

8

9

10    */s/Brenda S. Tannehill, CSR, RPR, CRR*          2/8/2022

11         Official Court Reporter                      Date
           United States District Court
12         Northern District of Illinois
           Eastern Division
13

14

15

16

17

18

19

20

21

22

23

24

25