**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Expeditee LLC., | |
| *Plaintiff*, | |
| v. | |
| THE ENTITIES listed on EXHIBIT 1, | |
| *Defendants*, | Case No.: 1:21-cv-6237 |
| | Judge Andrea R. Wood |
| RJITSCT LLC d/b/a Respect The Look, | Jury Trial Demanded |
| *Counterclaim-Plaintiff,* | |
| v. | |
| Expeditee LLC, | |
| *Counterclaim-Defendant.* | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RJITSCT LLC D/B/A
RESPECT THE LOOK'S RENEWED MOTION FOR SANCTIONS**

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 1

    A.      Plaintiff's false statements and baseless theories in its Complaint ............................... 1

    B.      Plaintiff's and Mr. Jones's false statements in their *ex parte* TRO application .......... 3

    C.      Mr. Jones's fraudulent certificate of service ................................................................ 6

ARGUMENT ............................................................................................................. 9

I.      The Court should order Plaintiff and Mr. Jones to pay Respect The Look's reasonable attorney fees and costs incurred in moving to dissolve the TRO and opposing the motion for preliminary injunction. ............................................................. 10

II.     The Court should impose the terminating sanction of dismissing Plaintiff's complaint against Respect The Look with prejudice. ...................................................... 13

CONCLUSION ......................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. Chicago Transit Authority*,
    317 F.3d 696 (7th Cir. 2003) ................................................................................ 14

*F&G Scrolling Mouse, L.L.C. v. Microsoft, Inc.*,
    56 F. Supp. 2d 1005 (N.D. Ill. 1999) ................................................................... 12

*Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Center Ltd.*,
    230 F. Supp. 3d 896 (N.D. Ill. 2017) ................................................................... 14

*Jorgenson v. Volusia Cty.*,
    625 F. Supp. 1543 (M.D. Fla. 1986) .................................................................... 11

*Maynard v. Nygren*,
    372 F.3d 890 (7th Cir. 2004) ................................................................................ 14

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996) ................................................................................ 14

*Methode Electronics, Inc. v. Adam Techs., Inc.*,
    371 F.3d 923 (7th Cir. 2004) ................................................................................ 11

*Mullins v. Hallmark Data Systems, LLC*,
    511 F. Supp. 2d 928 (N.D. Ill. 2007) ................................................................... 14

*Raskin, S.A. v. Datasonic Corp.*,
    No. 86 C 7594, 1986 WL 12598 (N.D. Ill. Nov. 5, 1986) .................................. 10

*Ridge Chrysler Jeep, LLC v. Daimler Chrysler Servs. N. Am.*,
    No. 03 C 760, 2006 WL 2808158 (N.D. Ill. Sept. 6, 2006) ................................ 13

*Secrease v. Western & Southern Life Ins. Co.*,
    800 F.3d 397 (7th Cir. 2015) ................................................................................ 15

**Statutes**

18 U.S.C. § 1621 ............................................................................................... 10, 12

**Rules**

Fed. R. Civ. P. 11 .................................................................................. 9, 11, 12, 15

Fed. R. Civ. P. 65 .................................................................................... 9, 10, 14

Ill. Rule of Professional Conduct 3.1 ........................................................................ 9

Ill. Rule of Professional Conduct 3.3 ........................................................................ 9

## INTRODUCTION

Plaintiff Expeditee, LLC ("Plaintiff" or "Expeditee") and its former attorney, Patrick Jones, ignored the Federal Rules of Civil Procedure, this Court's rules, the Illinois Rules of Professional Conduct, and federal law in order to extort defendants by obtaining an *ex parte* TRO freezing their assets based on false representations of trademark counterfeiting, and then demanding settlement payments in order to unfreeze their accounts. The Court, relying on Plaintiff and Mr. Jones's representations contained in sworn declarations under penalty of perjury, granted Plaintiff a secret *ex parte* TRO against Respect The Look and all other defendants. Mr. Jones then filed a fraudulent certificate of service, and only Respect The Look's independent investigation enabled it to appear in court and oppose Plaintiff's motion to convert the TRO into a preliminary injunction. At the preliminary injunction hearing, it became clear that Mr. Jones and Plaintiff's representative Taylor Vo knowingly submitted material and false statements in their supporting sworn declarations, and that Plaintiff had no factual or legal basis for its claims.

The minimal appropriate sanction for this misconduct is dismissal of Plaintiff's complaint with prejudice and an award of attorney fees to Respect The Look. Anything less would fail to protect the Court's integrity and reputation, fail to adequately compensate Respect The Look for the damage Plaintiff has done, and send a message to other trademark plaintiffs that Plaintiff's tactics here were acceptable.

## STATEMENT OF FACTS

### A. Plaintiff's false statements and baseless theories in its Complaint

The first substantive sentence filed in this case by Plaintiff was the first of many knowingly false representations Plaintiff made to the Court. On November 22, 2021, Plaintiff filed a Complaint in this Court for "trademark infringement, counterfeiting, and related claims"

against a group of defendants listed on a sealed Exhibit 1. Dkt. No. 1. The first page of the Complaint contains three false statements of fact about Plaintiff's business: (1) The caption identifies Plaintiff as "XPed LLC"; (2) the Complaint states that Plaintiff is a Nevada limited liability company; and (3) the Complaint states that Plaintiff's principal place of business is in Chicago, Illinois. More than a month after filing its complaint, and only after the Court granted an *ex parte* temporary restraining order against all defendants, Plaintiff changed its name on the electronic docket from Xped LLC to Expeditee LLC. Dkt. at Jan. 5, 2022. Plaintiff later, at a status hearing on February 15, 2022, admitted that Xped LLC was a pseudonym used to bring the case anonymously; however, the Complaint does not identify XPed LLC as a fictitious name. *Compare* Dkt. No. 1 to Dkt. No. 77. Plaintiff also did not provide its true name in its Corporate Disclosure Statement. Dkt. No. 6. Ironically, given that this is a case for trademark infringement, there is a real and unaffiliated company named XPed, a healthcare technology company based in the United Kingdom. *See* https://xped.com/.

Plaintiff also later revealed that it is neither a Nevada limited liability company nor is its principal place of business in Chicago, Illinois; it is a Delaware limited liability company with its principal place of business in Hanoi, Vietnam. Plaintiff did not reveal this information to the Court until it was caught in its deception. At the January 18, 2022 preliminary injunction hearing, the Court questioned Mr. Jones about Plaintiff's location. Dkt. No. 66 at 19:24-25. Mr. Jones responded initially that Plaintiff's principal place of business located at 125 South Clark Street in Chicago. Dkt. No. 66 at 20:1-2. After Respect The Look's counsel pointed out that 125 South Clark Street was the address of Mr. Jones's law firm, the Court inquired further, and Mr. Jones was forced to admit that Plaintiff has no employees in Chicago, or indeed anywhere in the United States, and used Mr. Jones's law firm's office as its address for registering intellectual

property. Dkt. No. 66 at 21:4-22:18. After losing its motion for a preliminary injunction, Plaintiff finally filed an amended corporate disclosure statement stating that it is a Delaware limited liability company with its principal place of business in Hanoi, Vietnam. Dkt. No. 53.

The Complaint centers around materially and knowingly false allegations of trademark counterfeiting central to Plaintiff's claims. The Complaint alleges that each Defendant, including Respect The Look, sold products bearing Plaintiff's federally registered trademark in the word "FLAGWIX" for "Cloth flags," the registration certificate for which was attached under seal as Exhibit 2 to the Complaint. Dkt. No. 1 at ¶¶ 9-10; Dkt. No. 2-1. The Complaint does not merely allege infringement, but alleges that each defendant actually used the FLAGWIX mark on its products. Dkt. No. 1 at ¶¶ 21-22, 26-27, 29, 35-36, 40, 42, 51, 53. It was not until the January 18, 2022 preliminary injunction hearing—after obtaining an *ex parte* TRO based on Plaintiff's representation that the Defendants all used the FLAGWIX Mark to sell counterfeit products (*see* Dkt. Nos. 11, 20)—that Plaintiff would admit that not only did Respect The Look not use the FLAGWIX Mark, but many other defendants did not as well. At the hearing, when questioned by the Court, Mr. Jones admitted that he was not aware of any evidence that Respect The Look has used the FLAGWIX Mark. Dkt. No. 66 at 9:3-24. Under further questioning, Mr. Jones told the Court that he believed about half the defendants did not use the FLAGWIX Mark on their products. Dkt. No. 66 at 12:12-17.

**B.** **Plaintiff's and Mr. Jones's false statements in their *ex parte* TRO application**

On November 30, 2021, Plaintiff filed a motion for a temporary restraining order seeking not only to restrain the Defendants from selling infringing products, but to restrain and freeze all financial accounts and funds at any third party institution connected to any of the Defendants. Dkt. No. 10. In support of that motion, Plaintiff filed a memorandum in support (Dkt. No. 11), with the evidential basis for its motion being a pair of sworn declarations from Mr. Jones and

Ms. Vo. with exhibits thereto (Dkt. Nos. 12-15). Based on the motion and evidence presented, the Court entered the TRO and asset freeze against all Defendants in a sealed order on December 21, 2021. Dkt. No. 20. That TRO would continue as to Respect The Look until January 20, 2022, when the Court granted Respect The Look's motion to dissolve the TRO. Dkt. No. 55.

Respect The Look and the Court later learned that the motion for a TRO was based on deliberate, or at least reckless, misrepresentations to the Court about at least Respect The Look's allegedly infringing product and its domicile. In support of Plaintiff's argument that it had a likelihood of success on the merits supporting a TRO, Plaintiff alleged throughout its motion that each of the Defendants used the Mark on its products and Internet sites. Dkt. No. 11 at 9-11, 18-19, 21-22, 24. In support of these allegations, both Ms. Vo and Mr. Jones submitted sworn declarations under penalty of perjury testifying that they had personally verified that each Defendant—necessarily including Respect The Look—used the FLAGWIX Mark on its products and websites. Ms. Vo's declaration stated that Plaintiff regularly investigates suspicious websites, and had established "that Defendants are using the various websites and webstores . . . to sell Counterfeit Products from foreign countries such as China to consumers in the United States and the State of Illinois, including the Northern District of Illinois." Dkt. No. 12 at ¶¶ 10-11. Ms. Vo's declaration went on to state that Plaintiff was irreparably harmed by the Defendants' use of the FLAGWIX Mark on their products. Dkt. No. 12 at ¶¶ 14-15, 18. Bizarrely, Ms. Vo's declaration alleges that some of Defendants' counterfeit products are "bicycle components," which makes no sense given that Plaintiff's registered mark is for cloth flags. *Compare* Dkt. No. 12 at ¶ 17 to Dkt. No. 2-1.

Mr. Jones's declaration in support of Plaintiff's motion for a TRO, also a sworn declaration under penalty of perjury, included the following statement:

5.      A listing of Defendants' unauthorized use of Mark [sic] on the Infringing Webstore listings to advertise the sale of Counterfeit Products was filed under seal as Exhibit 1 to the Complaint. This document was prepared by the Plaintiff and its employees or contractors under their direction and supervision and I have authenticated the listings myself. In this exhibit, selected screenshots of the listings from Defendants' Infringing Webstores appear with the Mark listed in the listing title, images associated with the listing, and/or within the description of the product itself.

Dkt. No. 13 at ¶ 5. This statement was false. Exhibit 1 to the Complaint does not contain screenshots of the listings from Defendants' Infringing Webstores; it only contains a listing of the names of the Defendants with their corresponding allegedly infringing product names. Dkt. No. 2. Perhaps Mr. Jones intended the declaration to refer to the additional screenshots he filed as exhibits to his declaration, rather than to the Complaint, but in that case the statement would still be false. The screenshot provided for Respect The Look does not contain the FLAGWIX Mark in the listing title, images associated with the listing, or within the description of the product itself. Dkt. No. 15-5 at 28. A broader look at all the screenshots provided at Docket Number 15-5 indicates that **none** of them show use of the FLAGWIX mark, even though Plaintiff represented in its most recent supplemental filing regarding this issue that defendants RodgerDecor, CustomCreations31326, BadMamaJamaJewelry, FlorenceFlag, TheEpicstyle, nagotee, Plangraphics, ST2POD Store, and Teashirts3d.net all used the FLAGWIX mark. *Compare* Dkt. No. 15-5 to Dkt. No. 58-1 at rows 208-216. Mr. Jones later admitted at the preliminary injunction hearing that this statement was false, admitting that the screenshot of Respect The Look's website, and the screenshots of about half of the other defendants' websites, did not show use of the FLAGWIX Mark. Dkt. No. 66 at 27:16-19.

In order to obtain the rare and extraordinary remedy of an asset freeze, Plaintiff and Ms. Vo misrepresented to the Court that Respect The Look, and all other Defendants, were Chinese companies that would move assets and avoid the Court's jurisdiction if the Court did not enter a

secret *ex parte* TRO freezing their assets first. Plaintiff's memorandum in support of its motion for a TRO alleges that "upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless," and "Plaintiff . . . has good cause to suspect that many of the Defendants are residents of China." Dkt. No. 11 at 25, 30. Ms. Vo's declaration stated that Plaintiff's investigations "have established that Defendants are using the various websites and webstores . . . to sell Counterfeit Products from foreign countries such as China to consumers in the United States and the State of Illinois, including the Northern District of Illinois." Dkt. No. 12 at ¶ 11. Respect The Look is in fact a Connecticut company, incorporated in Connecticut and with its principal place of business in Connecticut. Dkt. No. 35-1 at ¶ 2; Dkt. No. 35-2. Plaintiff filed its motion and made its representations to the Court that Respect The Look was a foreign company even though Respect The Look's website, which Mr. Jones must have visited to prepare the exhibit filed at Dkt. No. 15-5, lists Respect The Look's Connecticut address. *See* Dkt. No. 35-17. At the preliminary injunction hearing, Mr. Jones admitted to the Court that his only basis for alleging that Respect The Look was a foreign company was a stereotype: "that all these companies are overseas and they all use PO boxes." Dkt. No. 66 at 24:6-9. Mr. Jones did not admit this fact to the Court during the TRO proceedings.

Based on these misrepresentations, the Court granted Plaintiff's *ex parte* motion for a TRO on December 21, 2021. Dkt. No. 20. Shortly thereafter, PayPal implemented the asset freeze, and Respect The Look discovered that its account had been frozen. Dkt. No. 35-1 at ¶ 5.

### C.    Mr. Jones's fraudulent certificate of service

In his declaration in support of Plaintiff's motion for a temporary restraining order, Mr. Jones represented to the Court that upon entry of a TRO, he would "notify the Defendants by sending copies of Plaintiff's *Ex Parte* Motion for TRO and supporting papers via e-mail to the e-

mail addresses provided by the Defendants to the Websites responsible for hosting their respective Webstores." Dkt. No. 13 at ¶ 5. Mr. Jones did not file any certificate of service confirming that he had done so until January 10, 2022, nearly three weeks after the Court entered the TRO. Dkt. No. 28. And when he did, his certificate of service turned out to be fraudulent.

Mr. Jones's certificate of service filed on January 10, 2022 represented to the Court, again in a sworn declaration under penalty of perjury, that he had "caused to be served true and accurate copies of" the summons, complaint, *ex parte* TRO, motion for preliminary injunction, and supporting memorandum "via email on the Defendants listed on Schedule A to the proposed order granting preliminary injunction." Dkt. No. 28. This was false. Mr. Jones had not, in fact, caused any of these papers to be served on at least 102 defendants, the defendants whose accounts were through Alibaba and Paypal, on January 10, 2022, as he later admitted at the preliminary injunction hearing. Dkt. No. 66 at 3:23-4:14. Respect The Look was among these defendants who was not served; it only was able to discover the existence of the preliminary injunction hearing and the basis for the claims against it through an independent investigation. Dkt. No. 35-1 at ¶ 19; Dkt. No. 35-7 at ¶¶ 13-15. Even though Respect The Look alerted Plaintiff to the lack of service by email on January 12, 2022, and again on January 13, 2022, Plaintiff did not attempt to correct the service issue until after Respect The Look filed its opposition to the motion for preliminary injunction, and then attempted to do so the Sunday before the hearing. *Compare* Dkt. No. 35-19 and Dkt. No. 35-20 to Dkt. No. 38. Had Respect The Look not brought Plaintiff's failure to serve the defendants to the Court's attention, it is unlikely Mr. Jones would ever have remedied the false original certificate of service, and the Court would likely have granted Plaintiff's motion for preliminary injunction against all defendants *in absentia*.

Plaintiff filed an "Amended Certificate of Service" on January 16, 2022, stating that service had now been made by email on the PayPal Defendants, and attempting to excuse his conduct as an innocent miscommunication. Dkt. No. 38. As noted above, however, Mr. Jones was alerted to his failure to serve at least Respect The Look on January 12, 2022, when Respect The Look's counsel emailed him and requested a copy of the service email. Dkt. No. 35-19. The Amended Certificate of Service also did not explain why Mr. Jones believed it was his client's responsibility to serve the defendants by email, when he had represented to the Court previously that he would personally serve the defendants. *Compare* Dkt. No. 38 to Dkt. No. 13 at ¶ 4.

Plaintiff's service email, once it was finally sent, failed to provide any defendant notice of the preliminary injunction hearing that was scheduled, and in fact would have misled any unrepresented defendant into believing it had 21 days to respond to the lawsuit. The email attached copies of the complaint, Exhibit 1 to the Complaint, the summons, the TRO, and the preliminary injunction. Dkt. No. 42-1. It did not, however, include copies of the supporting papers for Plaintiff's motion for a TRO, despite Mr. Jones's earlier representation that he would serve each of the defendants with those supporting papers. *Compare* Dkt. No. 42-1 to Dkt. No. 13 at ¶ 4. More importantly, it informed the defendants that "Any answer or other response to the Complaint should be filed with the Clerk of the Court, United States District Court for the Northern District of Illinois, Eastern Division, Chicago, Illinois within twenty-one (21) days after service of this summons upon you." Dkt. No. 42-1 at 2. Even though Plaintiff was aware that a preliminary injunction hearing had been scheduled in two days, on January 18, 2022, Plaintiff did not inform the defendants of the preliminary injunction hearing. *Id.* Again, had Respect The Look not brought this failure of service to the Court's attention, the Court would likely have issued a preliminary injunction against the Defendants *in absentia*.

Plaintiff's service email included an admonition to each defendant, in bold text, that it could have the asset freeze removed by agreeing to a quick settlement payment to Plaintiff. Dkt. No. 42-1 at 1. This extortionate conduct is consistent with Plaintiff's even more egregious conduct in the currently pending case of *Expeditee LLC v. The Entities listed on Exhibit 1*, No. 1:21-cv-6440 (N.D. Ill.), in which Plaintiff "served" defendants by issuing invoices for $15,000 for "infringement" to defendants, using Mr. Jones's name. Declaration of Brian J. Beck in Support of Respect The Look's Motion for Sanctions ("Beck Decl"), Ex. 1.

Because Respect The Look conducted an independent investigation, Respect The Look was able to file a motion to dissolve the TRO and a response to Plaintiff's motion for a preliminary injunction despite not being served. Dkt. Nos. 33-35. After reviewing the parties' submissions, holding a preliminary injunction hearing on January 18, 2022, and reviewing the parties' supplemental submissions, the Court dissolved the TRO and denied Plaintiff's motion for preliminary injunction. Dkt. Nos. 52, 55. At a hearing on January 20, 2022, the Court stated its reasons for dissolving the TRO and denying the motion for preliminary injunction, finding that Plaintiff had misrepresented the facts and law on which both its claim for relief and its alleged need for an asset freeze were based. Dkt. No. 67 at 3:1-5:22.

## ARGUMENT

As the foregoing discussion of the facts demonstrates, Plaintiff and its attorney Mr. Jones filed a frivolous complaint including knowingly false statements of fact and baseless factual allegations in violation of Federal Rule of Civil Procedure 11. Then, Plaintiff and Mr. Jones filed an equally frivolous motion for an *ex parte* TRO supported by knowingly false sworn declarations under penalty of perjury, violating Federal Rules of Civil Procedure 11 and 65(b)(1), Illinois Rules of Professional Conduct 3.1, 3.3(a), and 3.3(d), and 18 U.S.C. § 1621(2). Then, Mr. Jones filed a fraudulent certificate of service that would have resulted in the Court

imposing a preliminary injunction including an asset freeze on hundreds of unserved defendants in violation of Federal Rule of Civil Procedure 65(a)(1) and 18 U.S.C. § 1621(2), had Respect The Look not investigated and brought Plaintiff's conduct to the Court's attention. At a minimum, the appropriate sanction for this misconduct is an award of attorney fees and costs incurred by Respect The Look against both Plaintiff and Mr. Jones, and a dismissal with prejudice of Plaintiff's complaint against Respect The Look.

I. **The Court should order Plaintiff and Mr. Jones to pay Respect The Look's reasonable attorney fees and costs incurred in moving to dissolve the TRO and opposing the motion for preliminary injunction.**

When a plaintiff obtains a TRO based on fraudulent misrepresentations and filings that violate Rule 11, the court should exercise its inherent power to sanction the plaintiff and its counsel by requiring them to pay the defendants' reasonable attorney fees and costs incurred in seeking dissolution of the TRO and opposing the related motion for a preliminary injunction. This Court has done so previously in *Raskin, S.A. v. Datasonic Corp.*, No. 86 C 7594, 1986 WL 12598, at *3 (N.D. Ill. Nov. 5, 1986), and it should do so here. In *Raskin*, the plaintiff filed an *ex parte* motion for a TRO in a breach of contract case, requesting that the defendant be restrained from selling machinery based upon plaintiff's representation that absent a TRO, the defendant would dispose of the machinery. *Id.* at *1. After the court granted plaintiff's motion for a TRO, the defendant moved to dissolve the TRO, explaining that the defendant had represented to the plaintiff that it was holding the machinery in trust. *Id.* The court dissolved the TRO, and then ordered the plaintiff to pay the defendant's attorney fees and costs incurred in moving to dissolve the TRO as a sanction. *Id.* at *2-*3. The court explained that the plaintiff had made a material misrepresentation to the Court in order to obtain the TRO without notice, and also failed to make a "reasonable inquiry" as required under Rule 11 in attempting to substantiate its allegations. *Id.* at *2-*3. In granting sanctions, the court explained that "[t]he very nature of an ex parte TRO

proceeding makes 'accurate representations of facts and law of crucial importance to the court.'"
*Id.* at *2 (quoting *Jorgenson v. Volusia Cty.*, 625 F. Supp. 1543, 1548 (M.D. Fla. 1986)).

An award of attorney fees awarded under the Court's inherent power to impose sanctions
is an appropriate sanction for a Rule 11 violation committed during requests for preliminary
relief, because the nature of preliminary relief proceedings prevents strict compliance with Rule
11(c)(1)'s safe harbor provision. In *Methode Electronics, Inc. v. Adam Techs., Inc.*, 371 F.3d
923, 924 (7th Cir. 2004), the plaintiff filed a complaint in this Court with a request for a TRO
alleging that venue was proper in the Northern District of Illinois. The defendant sought
sanctions because venue was improper in Illinois, and the case should have been brought in New
Jersey. *Id.* The District Court sanctioned the plaintiff and awarded attorney fees for the plaintiff's
deceptive allegations in an attempt to obtain venue. *Id.* at 925. On appeal, the Seventh Circuit
affirmed the sanctions despite the failure to strictly comply with the 21-day safe harbor provision
of Rule 11, explaining that "[a]s in many cases involving a request for preliminary relief, blind
adherence to the procedures in Rule 11 is not possible." *Id.* at 927. Accordingly, it was proper for
the court to sanction the plaintiff for its deceptive venue allegations under its inherent power,
even though the safe harbor provision of Rule 11 had not been followed. *Id.* at 928.

This case includes not only fraudulent venue allegations brought in a TRO proceeding as
in *Methode*, but fraudulent substantive allegations brought in a TRO proceeding. Regarding
venue, Plaintiff alleged in its complaint that its principal place of business was in Chicago,
Illinois, when its principal place of business is in fact in Hanoi, Vietnam. Respect The Look is a
Connecticut company with its principal place of business in Connecticut. In a venue analysis,
this Court has held that a plaintiff's choice of the Northern District of Illinois as its forum is not
entitled to any deference where the plaintiff has no ties to this District. *F&G Scrolling Mouse,*

*L.L.C. v. Microsoft, Inc.*, 56 F. Supp. 2d 1005, 1007 (N.D. Ill. 1999). Had Respect The Look not filed a counterclaim for malicious abuse of process based on Plaintiff's misconduct in this court, this case would properly belong in the District of Connecticut, at least as to Respect The Look.

But while *Methode* establishes that allegations relating to venue in violation of Rule 11 are sufficient to justify an award of attorney fees, Plaintiff's conduct here was far worse because its fraudulent misrepresentations went to the merits of its complaint and motion for a TRO. Plaintiff's complaint was for infringement of its registered trademark in the word FLAGWIX. To obtain a TRO, Plaintiff represented to the Court in sworn declarations under penalty of perjury that Respect The Look sold products bearing the word FLAGWIX. At the preliminary injunction hearing, Plaintiff's counsel admitted that it had no evidence that Respect The Look sold products bearing the word FLAGWIX. In ordering the dissolution of the TRO against Respect The Look, the Court recognized that Plaintiff had misled the Court about the nature and basis for its claim. Dkt. No. 67 at 3:6-5:22. There can be no question that Plaintiff violated Rule 11(b)(3) by representing to the Court that Respect The Look's products bore the FLAGWIX Mark when the products did not in fact bear the FLAGWIX Mark. There can be no question that Ms. Vo and Mr. Jones violated 18 U.S.C. § 1621(2) by submitting that they had personally verified that each Defendant's products bore the FLAGWIX Mark in sworn declarations under penalty of perjury when they had not in fact done so. Because of Plaintiff's misconduct, Respect The Look had to incur significant attorney fees to investigate the asset freeze, discover that a preliminary injunction hearing had been scheduled, and oppose Plaintiff's frivolous motion. It is therefore appropriate for the Court to award Respect The Look its reasonable attorney fees incurred in seeking dissolution of Plaintiff's wrongfully obtained TRO and in opposing Plaintiff's frivolous

motion for a preliminary injunction—and if the Court dismisses Plaintiff's complaint with

prejudice as a sanction, awarding all attorney fees incurred in defending this lawsuit.[1]

## II. The Court should impose the terminating sanction of dismissing Plaintiff's complaint against Respect The Look with prejudice.

When a plaintiff lies to the Court in order to obtain a TRO, as Plaintiff and Mr. Jones

have done here, dismissal of the underlying complaint with prejudice is the appropriate sanction

to punish the plaintiff for the harm done to the legal system. In *Ridge Chrysler Jeep, LLC v.*

*Daimler Chrysler Servs. N. Am.*, No. 03 C 760, 2006 WL 2808158, at \*9-\*10 (N.D. Ill. Sept. 6,

2006), issued terminating sanctions against a plaintiff who lied to the court in order to obtain a

TRO. The court in *Ridge* found that the plaintiff's president had lied about making a capital

investment into an auto dealership, and about its ability to obtain alternate financing, in order to

show irreparable harm requiring a TRO. *Id.* at \*9. The court explained that "[t]hese two

misrepresentations, as set forth and supported by the record, resulted in Plaintiffs obtaining

equitable relief to which they were not entitled and placed Defendant in an unfair financial

position by placing it at risk of financial erosion." *Id.* at \*10. The court held that whatever harm

was done to the plaintiffs in dismissing their complaint with prejudice "is more than outweighed

by the harm to [defendant] and to the legal system as a whole that would flow from any decision

to allow Plaintiffs to continue to prosecute their case under these circumstances." *Id.* at \*14.

Plaintiff's and Mr. Jones's repeated acts of perjury, especially in the circumstances raised

by this case, more generally warrant terminating sanctions. The Seventh Circuit has explained

that "[p]erjury committed in the course of legal proceedings is a fraud on the court, and it is

arguable that a litigant who defrauds the court should not be permitted to continue to press his

---

[1] If Plaintiff's complaint is dismissed in its entirety with prejudice, Respect The Look is entitled to all its attorney fees as a prevailing party in an exceptional case under the Lanham Act. 15 U.S.C. § 1117(a); *see* Dkt. No. 71 at 23-27.

case." *Allen v. Chicago Transit Authority*, 317 F.3d 696, 703 (7th Cir. 2003). While *Allen* allowed that dismissal for perjury may be excessive where the perjury is "harmless so far as affecting the course of litigation," (*id.*), that is not the case here, as it has not been the case in other lawsuits that this Court has dismissed with prejudice as a sanction for perjury. *See Mullins v. Hallmark Data Systems, LLC*, 511 F. Supp. 2d 928, 942-43 (N.D. Ill. 2007); *Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Center Ltd.*, 230 F. Supp. 3d 896, 914 (N.D. Ill. 2017). Plaintiff obtained an *ex parte* TRO, freezing the assets of hundreds of defendants including Respect The Look, based on perjured declarations from its CEO Assistant Taylor Vo and its attorney Mr. Jones that each defendant's website sold products bearing Plaintiff's FLAGWIX Mark. Plaintiff would have obtained a preliminary injunction against all defendants in violation of Federal Rule of Civil Procedure 65(a) based on Mr. Jones's perjured certificate of service, had Respect The Look not conducted its own investigation and intervened without having been served. Plaintiff's and Mr. Jones's acts of perjury here are inexcusable.

Terminating sanctions are also less severe here than they would be in a case where Plaintiff's claims had some merit, and are therefore more appropriate. As set forth in Respect The Look's motion to dismiss and for summary judgment, the undisputed fact that Respect The Look has not used the FLAGWIX Mark—admitted by Plaintiff at the January 18 preliminary injunction hearing—disposes of each claim set forth in Plaintiff's complaint. Dkt. No. 71 at 16-18. Where a plaintiff's claims have little merit, terminating sanctions are a less harsh sanction, and so are more appropriate to impose. *See Maynard v. Nygren*, 372 F.3d 890, 893 (7th Cir. 2004) (quoting *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996)). Plaintiff's only hope to continue this lawsuit against Respect The Look is to amend the complaint to add new claims, but that is precisely the type of conduct that terminating sanctions are appropriate to prevent.

Plaintiff should not be permitted to perpetuate a fraud on the Court, obtain an *ex parte* TRO based on that fraud, nearly obtain a preliminary injunction based on that fraud, and then change its entire theory of the case to continue a lawsuit it indisputably filed in violation of Rule 11.

Finally, terminating sanctions are appropriate to deter other plaintiffs and attorneys who may be tempted to follow in Plaintiff's and Mr. Jones's footsteps. "[C]ourts generally have an interest in both punishing a party's dishonesty and deterring others who might consider similar misconduct." *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015). A docket search for trademark cases against "The Partnerships and Unincorporated Associations Identified on Schedule 'A'" reveals that at least 1,912 such cases have been filed in this District. Beck Decl. at ¶ 3, Ex. 2. Each of these cases features the same general characteristics as the present lawsuit: a complaint filed under seal, the filing and granting of an *ex parte* motion for a TRO including an asset freeze, default judgement against the vast majority of defendants, voluntary dismissal of settled claims against many of the defendants, and ultimately seizure of frozen assets from the defaulting defendants. Because the Court typically does not scrutinize these plaintiffs' filings if a defendant does not appear, an unscrupulous party like Plaintiff here can use fraudulent filings in these trademark counterfeiting cases to operate an extortionate scheme. If the Court does not sanction Plaintiff and its counsel to the full extent of its power in this case, it will send a message to other plaintiffs and attorneys that they are free to use the Northern District of Illinois as an instrument of extortion.

## CONCLUSION

For the foregoing reasons, Respect The Look accordingly respectfully requests that the Court grant its motion for sanctions, order that Plaintiff and its counsel Mr. Jones pay the attorney fees and costs Respect The Look incurred in defending this lawsuit, and dismiss Plaintiff's complaint with prejudice.

Respectfully submitted,

RJITSCT LLC d/b/a Respect The Look

Dated: March 7, 2022

By: _/s/ Brian J. Beck_____

Brian J. Beck
ZUBER LAWLER & DEL DUCA LLP
135 S. LaSalle Street, Suite 4250
Chicago, Illinois 60603
(312) 346-1100
(213) 596-5621 (fax)


Counsel for Defendant and
Counterclaim-Plaintiff
RJITSCT LLC d/b/a Respect The Look

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2022, a copy of the foregoing was served on counsel of record by electronic means pursuant to the court's Electronic Case Filing (ECF) system.

*/s/ Brian J. Beck*