## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Expeditee LLC., | )    Case No.: 1:21-cv-06237 |
| | ) |
|      Plaintiff, | )    District Judge: Hon. Andrea R. Wood |
| | ) |
|      v. | ) |
| | ) |
| THE ENTITIES listed on EXHIBIT 1, | ) |
| | ) |
|      Defendants | ) |
| | ) |
| | ) |
| RJITSCT LLC d/b/a/ Respect The Look, | ) |
| | ) |
|      Counterclaim-Plaintiff | ) |
| | ) |
|      v. | ) |
| | ) |
| Expeditee LLC, | ) |
| | ) |
|      Counterclaim-Defendant. | ) |

## JOINT REPORT

Pursuant to the Court's March 8, 2022 Minute Order (Dkt. No. 80), Plaintiff Expeditee LLC ("Expeditee"), former Plaintiff's counsel, PMJ PLLC ("PMJ"), and Defendant RJITSCT LLC, dba Respect the Look ("RJITSCT"), (collectively, the "Parties"), respectfully submit the following Joint Report.

### I.     CONFERENCE OF COUNSEL

Counsel for the Parties have met and conferred regarding the discovery Expeditee and PMJ believe is necessary to respond to Defendant's Renewed Motion for Sanctions (Dkt. No. 78) (hereafter "Motion"), and the early discovery RJITSCT wishes to obtain from Expeditee and PMJ.

The Parties exchanged several written proposals on March 25 and 28 but were unable to reach agreement.

## II.        EXPEDITEE AND PMJ'S REQUESTED DISCOVERY

### A. Expeditee and PMJ's Statement

RJITSCT's Motion seeks attorneys' fees and terminating sanctions. (Dkt. No. 79 at 1.) Such drastic remedies support granting Expeditee's request for narrowly-tailored, early discovery on the topics listed below. During the parties' meet and confer efforts, RJITSCT agreed to provide early discovery on Topic #3. (II.C.3 below.) However, RJITSCT has refused to provide information on the other requested topics.

### B. RJITSCT's Statement

RJITSCT's Motion seeks sanctions for Plaintiff's and PMJ's false statements made in their Complaint, *ex parte* application for a TRO, sworn declarations under penalty of perjury supporting that *ex parte* application, and January 10, 2022 certificate of service. None of Plaintiff's requests for discovery are relevant to any issue raised by the sanctions motion, which concerns the evidence in Plaintiff's possession when it filed the above-listed papers. Rather, Plaintiff is seeking to conduct a fishing expedition hoping to find evidence of some theory of infringement other than what was set forth in its original complaint and TRO filing, in order to excuse or mitigate their demonstrable misconduct. RJITSCT has already incurred over $30,000 in attorney fees defending Plaintiff's frivolous lawsuit, when it only made 102 sales of the allegedly infringing flag for total revenue of under $5,000. It should not be forced to incur additional legal fees for discovery irrelevant to the sanctions motion until the sanctions motion is decided.

### C. Early Discovery Topics

**1. Documents sufficient to show the quantity and nature of shipments of products from RJITSCT to customers in Illinois from January 1, 2020 to November 22, 2021.**

#### a. Expeditee and PMJ's Request

This discovery is relevant to whether venue is appropriate in the N.D. Ill, which is a major focus of RJITSCT's Motion.   (Dkt. No. 79 at 12.)  The requested discovery seeks information regarding RJITSCT's shipments of products to this District, which is relevant to whether venue is appropriate here under 28 U.S.C. § 1391(b)(2).  Section 1391(b)(2) states that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…"  RJITSCT's shipments of infringing products to this District support Expeditee and PMJ's argument that venue is proper in this District.

#### b. RJITSCT's Objection

Part of RJITSCT's sanctions motion is about Plaintiff's false statement in its complaint that it is a Nevada LLC with a principal place of business in Chicago, Illinois, which Plaintiff's attorney Patrick Jones continued to defend at the preliminary injunction hearing with additional falsehoods until directly questioned by the court. Dkt. No. 79 at 1-3. Plaintiff has now admitted that those statements were false. The sanctionable conduct is the lie; whether venue is ultimately proper is not the issue. This is in any case a relatively minor part of RJITSCT's sanctions motion. The bulk of RJITSCT's sanctions motion concerns Plaintiff's false substantive allegations that RJITSCT used the FLAGWIX mark on its products, and that RJITSCT is a foreign or Chinese company, not Plaintiff's false statement about its domicile. *See* Dkt. No. 79 at 3-15. Plaintiff's request for discovery is irrelevant to the motion for sanctions and should be denied.

**2. Html code sufficient to show metatags, hidden text and metadata for website:  www.respectthelook.com for the period January 1, 2021 through November 22, 2021.**

**a.  Expeditee and PMJ's Request**

This discovery is relevant to rebut RJITSCT's argument that Expeditee and PMJ's Motion for a TRO was frivolous and brought in bad faith.  (Dkt. No. 79 at 12.)  Paragraph 29 of Expeditee's original complaint states that:  "Defendants also deceive unknowing consumers by using the Mark without authorization within the content, text, and/or meta tags of the listings on Infringing Webstores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Products and in consumer product searches within the Webstores." (Dkt. No. 1.)  This paragraph is incorporated by reference into Expeditee's trademark infringement claim.

RJITSCT removed its webpage for its infringing "One Nation Under God" flag after the original complaint was filed.  RJITSCT's webpage included an identical picture of the One Nation Under God Flag that was created by Expeditee and appears on its website.  RJITSCT copied not only Expeditee's flag design, but also took Expeditee's photograph featuring the flag.  Expeditee's original photograph includes the FLAGWIX trademark.  RJITSCT digitally removed or blurred the FLAGWIX mark from the photograph it posted on its website.  However, RJITSCT did not remove Expeditee's product name and, upon information and belief, included the FLAGWIX mark in meta tags and hidden text on its website in order to divert customers looking for FLAGWIX products to RJITSCT's website.  Such hidden text is relevant to finding trademark infringement under the Lanham Act.  *See, e.g., Promatek Indus., Ltd. v. Equitrac Corp.,* 300 F.3d 808, 812-813 (7th Cir. 2007) (finding plaintiff likely to prevail on the merits of its trademark infringement claim because "[u]sing another's trademark in one's metatags is much like posting a sign with another's trademark

in front of one's store."), quoting *Brookfield Comm., Inc. v. West Coast Ent. Corp.,* 174 F.3d 1036 (9th Cir. 1999).

Therefore, Expeditee and PMJ request a copy of RJITSCT's html code sufficient to show the hidden text, metatags and metadata RJITSCT used to initially confuse consumers and has since removed from its website.

**b. RJITSCT's Objection:**

Plaintiff's request for website metadata is irrelevant and an attempt to confuse the issues. First, Plaintiff did not present any theory of trademark infringement based on website metadata in support of its *ex parte* application for a TRO, which is the focus of RJITSCT's motion for sanctions; the word metadata does not appear in Plaintiff's memorandum, and the word "metatag" only appears in a parenthetical referring to a precedential case. Dkt. No. 11. When questioned on the basis for its TRO application and motion for preliminary injunction at the two preliminary injunction hearings, Plaintiff's counsel did not raise the issue of website metatags. Dkt. No. 66 at 8:13-13:13; Dkt. No. 67 at 7:12-21. Second, the sanctions motion concerns whether Plaintiff had an evidentiary basis for filing its complaint and TRO application; in order to comply with Fed. R. Civ. P. 11(b)(3), Plaintiff would have had to already have evidence of infringing use of metatags. If Plaintiff cannot show that it had an evidentiary basis for the allegations in its Complaint without taking discovery, it is admitting to violating Rule 11(b)(3), and should be accordingly sanctioned for it, not rewarded with an opportunity to go fishing for a cause of action. The Court should deny Plaintiff's request for website metadata.

**3. Documents detailing RJITSCT's overseas business operations, including: (a) identification of owners of RJITSCT LLC; (b) geographic locations of members, managers and employees; and (c) location(s) of business operations.**

RJITSCT has agreed to provide these documents if the Court agrees early discovery is appropriate.

**4. Information regarding diversion of funds out of PayPal accounts following lift of TRO.**

      **a. Expeditee and PMJ's Request**

This discovery is relevant to RJITSCT's argument that Expeditee acted in bad faith when it sought the TRO. The TRO is designed to prevent defendants from diverting funds that could be used to pay damages later if the account holder is found liable for infringement. Expeditee and PMJ have learned that RJITSCT has indeed diverted almost all funds from its PayPal account. Discovery regarding this issue is relevant to the reasonableness of Expeditee's request for the TRO, which is a major focus of the sanctions motion.

      **b. RJITSCT's Objection**

Plaintiff's and PMJ's request is irrelevant to RJITSCT's motion for sanctions. Once the TRO was lifted, RJITSCT was free to do as it wished with its PayPal account funds, which were needed to pay employees and maintain RJITSCT's business operations. *See* Dkt. No. 66 at 31:19-32:6, 32:21-34:10. As the Court explained in its decision to dissolve the TRO and deny the motion for preliminary injunction as to RJITSCT, Plaintiff claimed in its TRO application that RJITSCT was an overseas seller likely to disappear before relief could be rendered by the Court, and that claim was and remains false: RJITSCT is still appearing in this case, and is still subject to this Court's jurisdiction. *See* Dkt. No. 67 at 4:24-5:13. RJITSCT's motion for sanctions concerns in part Plaintiff's false claim that RJITSCT is a foreign company, which Mr. Jones admitted at the preliminary injunction hearing was not based on any evidence. Dkt. No. 79 at 5-6. Plaintiff's request for discovery is irrelevant to the motion for sanctions and should be denied.

**5. Documents supporting RJITSCT's claim that it designed the One Nation Under God flag design.**

### a. Expeditee and PMJ's Request

RJITSCT has previously argued that it designed the One Nation Under God flag. Expeditee and PMJ request RJITSCT produce documents to support its allegation. If, as Expeditee alleges, the evidence shows RJITSCT copied Expeditee's flag design, it would rebut RJITSCT's argument that Expeditee sought the TRO in bad faith.

### b. RJITSCT's Objection

The question of who created the flag and who copied it is not at issue on the motion for sanctions. Plaintiff did not assert a copyright claim in its original complaint, nor did it have a registered copyright in the One Nation Under God flag when it filed its original complaint, nor did it base its application for a TRO on a copyright claim. Dkt. No. 66 at 10:11-20. In dissolving the TRO and denying Plaintiff's motion for a preliminary injunction, the Court correctly ignored the issue of whether the image was copied, holding that it could not form the basis for a trademark claim and that there was no copyright claim in the lawsuit. Dkt. No. 67 at 3:17-4:14. The requested discovery is irrelevant to the motion for sanctions and should be denied. It may be discoverable if Plaintiff's copyright claim ultimately becomes part of the case, but RJITSCT should not be forced to incur the expense of responding to discovery on this issue until the motion for sanctions and Plaintiff's motion for leave to amend are resolved.

## III. RJITSCT'S REQUESTED DISCOVERY

### A. RJITSCT's Statement

RJITSCT contends that no discovery from either party is appropriate on the motion for sanctions. The motion for sanctions concerns Plaintiff's evidentiary basis for papers it filed before RJITSCT was ever served in this case; therefore, all evidence relevant to the motion for sanctions must already be in Plaintiff's and PMJ''s possession. As explained above, Plaintiff's request for discovery is a fishing expedition aimed at discovering new causes of action, not included within

7

Plaintiff's *ex parte* application for a TRO, in an attempt to justify Plaintiff's and PMJ's false statements to the Court made in pleadings, motions, and sworn declarations under penalty of perjury.

However, if the Court permits any discovery on the motion for sanctions, it must be reciprocal. At the status hearing in which the Court offered Plaintiff and PMJ the opportunity to request discovery regarding the motion for sanctions, the Court indicated that it may hold an evidentiary hearing on the motion for sanctions. RJITSCT seeks evidence that would be admissible at such a hearing in order to refute the defenses RJITSCT anticipates Plaintiff and PMJ will raise in their opposition. The discovery RJITSCT requests seeks to find the reasons Plaintiff and PMJ made the statements that they did in their filings, and to find out what, if any, presuit investigation Plaintiff and PMJ conducted before filing their Complaint. This discovery is plainly relevant to the motion for sanctions, and would in any case be the kind of evidence Plaintiff and PMJ would have to produce in their opposition to justify their conduct.

## B. Expeditee's Statement

This Court ordered the parties to meet and confer regarding the early discovery needed by Expeditee and PMJ to respond to RJITSCT's Renewed Motion for Sanctions. (Dkt. No. 80.) During the Parties' meet and confer discussions, RJITSCT attempted to drastically expand the scope of early discovery to include documents RJITSCT wants from Expeditee and PMJ.

RJITSCT's document requests are inappropriate. First, no such discovery requests were made during the status conference. Second, all evidence to support its sanctions motion was required to be included in RJITSCT's opening brief. It would be wholly inappropriate to introduce new evidence and arguments for the first time in RJITSCT's Reply, when Expeditee no longer has an opportunity to respond to them. Third, many of RJITSCT's discovery requests improperly seek attorney-client communications and/or attorney work product. For at least these reasons, RJITSCT's request for early discovery should be denied in its entirety.

### C. RJITSCT's Early Discovery Requests

**1. All documents constituting Expeditee and PMJ's pre-suit investigation for this lawsuit.**

#### a. RJITSCT's Statement

RJITSCT's motion for sanctions concerns Plaintiff's allegations in its *ex parte* TRO application that it conducted investigations into RJITSCT's activities and established that RJITSCT was using the FLAGWIX mark on its products. *See* Dkt. No. 79 at 6. The documents constituting that investigation are plainly relevant to the motion for sanctions. Plaintiff and PMJ should not be permitted to defend their conduct by referring to those alleged investigation without producing the documents that constitute their investigations.

#### b. Expeditee and PMJ's Statement

Expeditee and PMJ object to this request for the reasons stated in III.B above. In addition, the request is overly broad as it is not limited to RJITSCT.

**2. Documents sufficient to show the reasons why Expeditee alleged in the Complaint that it is a Nevada limited liability company.**

#### a. RJITSCT's Statement

Plaintiff has admitted that the statement in its Complaint that it is a Nevada LLC is false. RJITSCT anticipates that Plaintiff will defend this conduct as a harmless oversight. as it has indicated in its amended corporate disclosure statement filed on January 23, 2022. Dkt. No. 53. RJITSCT is entitled to discovery into this issue to respond to Plaintiff's anticipated assertion that this filing was a harmless and unintentional error.

#### b. Expeditee and PMJ's Statement

Expeditee and PMJ object to this request for the reasons stated in III.B above.

3. **Documents sufficient to show the reasons why Expeditee alleged in the Complaint that its principal place of business is in Chicago, Illinois.**

   a. **RJITSCT's Statement**

Plaintiff has admitted that the statement in its Complaint that its principal place of business is in Chicago, Illinois, is false. Plaintiff then compounded its misconduct by continuing to claim at the preliminary injunction hearing that its principal place of business was in Chicago, Illinois, when at most, it used PMJ's law firm address as an address of convenience for intellectual property registrations. Dkt. No. 66 at 19:24-22:18. RJITSCT anticipates that Plaintiff will defend this conduct as a harmless oversight. as it has indicated in its amended corporate disclosure statement filed on January 23, 2022. Dkt. No. 53. As explained in RJITSCT's motion for sanctions, Plaintiff's false allegation appears to be intended to create a basis to maintain venue in this District despite the fact that Plaintiff has no substantial connection to this District. Dkt. No. 79 at 11-12. RJITSCT is entitled to discovery into this issue to respond to Plaintiff's anticipated assertion that this filing was a harmless and unintentional error.

   b. **Expeditee and PMJ's Statement**

Expeditee and PMJ object to this request for the reasons stated in III.B above.

4. **An identification of any legal filing in any other case that PMJ used as a template to prepare the complaint, application for TRO, supporting declarations thereto, motion for PI, supporting declarations thereto, or any other filing in this case.**

   a. **RJITSCT's Statement**

As RJITSCT has pointed out in previous filings, Plaintiff's filings that are the subject of the motion for sanctions appear to be plagiarized from other attorneys' filings in other "Schedule A" trademark cases. *See* Dkt. No. 71 at 5 n. 2. It is likely that Plaintiff's recklessness in plagiarizing these other filings without supporting evidence for the claims in the filings was the cause of the false statements included in the filings that are the subject of the motion for sanctions. This request is

therefore relevant to the motion for sanctions and would assist the Court in determining why Plaintiff and PMJ took the actions that they did. To the extent that Plaintiff and PMJ assert any defense to the motion for sanctions claiming that they properly drafted the filings in question based on competent evidence, they would put this matter at issue, and accordingly would waive work product privilege. *See Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 216 (N.D. Ill. 2001).

### b. Expeditee and PMJ's Statement

Expeditee and PMJ object to this request for the reasons stated in III.B above. Expeditee and PMJ further object to the request as it calls for attorney work product. RJITSCT's argument that Expeditee will waive attorney-client and/or attorney work product privileges by opposing the Motion is incorrect. The *Beneficial Franchise* case cited by RJITSCT predates the 2008 enactment of Fed. R. Evid. 502, which abolished the "subject-matter waiver," except in rare circumstnces. *See, e.g., Jokich, M.D. FSBI, FACR v. Rush Univ. Med. Center,* No. 18 C 7885, 2020 WL 154895, at * 2 (Apr. 1 2020 N.D. Ill.) (FRE 502 "was enacted in part to abolish the prior 'dreaded subject-matter waiver' doctrine in which 'any disclosure of privileged matter worked a forfeiture of any other privileged information that pertained to the same subject matter."). Post FRE 502, "Courts in this District have emphasized that 'subject matter waiver is reserved for rare cases in which a party attempts to use privileged information as both a sword and a shield in litigation.'" *Id.*, *citing McCullough v. Hanley,* No. 17 CV 50116, 2019 WL 3776962, at *12 (N.D. Ill. Aug. 12, 2019).

Even if *Beneficial Franchise* was still good law, it is inapposite and does not support RJITSCT's argument. In that case, defendant opened the door to an attorney opinion regarding noninfringement of plaintiff's patent by relying on the attorney opinion itself as a defense to willful infringement claim. *Beneficial Franchise,* .205 F.R.D. at 216. In contrast, Expeditee and

11

PMJ have not put any attorney work product at issue in this litigation. RJITSCT's argument that Expeditee or PMJ will waive attorney work product by explaining in its opposition brief how it drafted the claims against defendants has been rejected by other courts in this District. *See, Jokich, 2020 WL 154895*, at * 4 (finding no waiver from defense counsel declaration that explained "what he did with his work product" because it was merely "explaining the circumstances of the creation of the document at issue").

### 5. All documents supporting Plaintiff's allegation that Respect The Look's products used the FLAGWIX Mark.

#### a. RJITSCT's Statement

This request goes to the core of both RJITSCT's motion for sanctions and this litigation more generally. Plaintiff obtained an *ex parte* TRO against RJITSCT by claiming, in sworn declarations under penalty of perjury, that it had evidence that RJITSCT was using the FLAGWIX Mark on its flags. Dkt. No. 79 at 4-5. Mr. Jones admitted at the preliminary injunction that he had no such evidence. Dkt. No. 66 at 27:16-19. Plaintiff now admits, through its new counsel, that it has no evidence of RJITSCT's use of the FLAGWIX Mark. Dkt. No. 89 at 6. If Plaintiff has no such evidence, it should say so; if it has any evidence, it must produce it in its opposition to the motion for sanctions in any case to have any hope at defeating the motion.

#### b. Expeditee and PMJ's Statement

Expeditee and PMJ object to this request for the reasons stated in III.B above.

### 6. All documents supporting the statement in Taylor Vo's declaration that Plaintiff regularly investigates suspicious websites for sales of counterfeit products.

#### a. RJITSCT's Statement

The motion for sanctions alleges that Plaintiff relied on a false sworn declaration under penalty of perjury to obtain its *ex parte* TRO. It is reasonable for the Court to require Plaintiff to

produce documents substantiating Mr. Vo's declaration in order to respond to the motion for sanctions. If Plaintiff conducts such investigations, production should be trivial; if Plaintiff does not, Mr. Vo has committed perjury, and the Court should incorporate that finding into its decision on the motion for sanctions.

### b. Expeditee and PMJ's Statement

Expeditee and PMJ object to this request for the reasons stated in III.B above. Expeditee and PMJ further object to the request as overly broad and unduly burdensome as it is not limited to RJITSCT.

### 7. An identification of all employees or agents of Plaintiff or PMJ who conducted the pre-filing investigation into the Defendants' alleged counterfeiting.

### a. RJITSCT's Statement

RJITSCT's motion for sanctions concerns Plaintiff's allegations in its *ex parte* TRO application that it conducted investigations into RJITSCT's activities and established that RJITSCT was using the FLAGWIX mark on its products. *See* Dkt. No. 79 at 6. The individuals who conducted that investigation are plainly relevant to the motion for sanctions. Plaintiff and PMJ should not be permitted to defend their conduct by referring to those alleged investigation without producing the documents that constitute their investigations.

### b. Expeditee and PMJ's Statement

Expeditee and PMJ object to this request for the reasons stated in III.B above. Expeditee and PMJ further object to the request as overly broad and unduly burdensome as it is not limited to RJITSCT and is irrelevant to the arguments raised in its Motion. The identification of individual employees of Expeditee who conducted the pre-suit investigation is irrelevant to Expeditee's opposition to the sanctions Motion and is designed to burden and harass Expeditee.

8. **An identification of all "employees or contractors" of Plaintiff who were involved in preparing Exhibit 1 to the Complaint, and what work each such person performed in preparing that Exhibit.**

    a. **RJITSCT's Statement**

As explained in the motion for sanctions, Mr. Jones's sworn declaration submitted in support of Plaintiff's *ex parte* application for a TRO states that Exhibit 1 to the Complaint "was prepared by the Plaintiff and its employees or contractors under their direction and supervision." Dkt. No. 79 at 5. RJITSCT's motion for sanctions alleges that Mr. Jones's declaration was false, because Plaintiff did not in fact have evidence of a listing from RJITSCT's webstore with the FLAGWIX Mark. *Id.* It is reasonable for the Court to require Plaintiff to identify the individuals referred to in Mr. Jones's declaration in order to respond to the motion for sanctions. If Plaintiff's employees prepared Exhibit 1, production should be trivial; if they did not, Mr. Jones has committed perjury, and the Court should incorporate that finding into its decision on the motion for sanctions.

    b. **Expeditee and PMJ's Statement**

Expeditee and PMJ object to this request for the reasons stated in III.B above. Expeditee and PMJ further object to the request as overly broad and unduly burdensome as it is not limited to RJITSCT or the arguments raised in its Motion. The identification of individual employees of Expeditee who conducted the pre-suit investigation is irrelevant to Expeditee's opposition to the sanctions Motion and is designed to burden and harass Expeditee.

9. **The basis for the allegation in Taylor Vo's declaration that some of Defendants' counterfeit products are "bicycle components."**

    a. **RJITSCT's Statement**

As explained in the motion for sanctions, Mr. Vo's sworn declaration submitted in support of Plaintiff's *ex parte* application for a TRO states that some of Defendants' counterfeit products are "bicycle components," which is surprising because Plaintiff's FLAGWIX Mark is used for cloth

14

flags. Dkt. No. 79 at 4. This is not a simple misspelling and cannot be dismissed as merely a "typo." It is reasonable for the Court to require Plaintiff to identify the basis for this allegation or the reason it was included in Mr. Vo's declaration, which again, was a sworn declaration under penalty of perjury.

### b. Expeditee and PMJ's Statement

Expeditee and PMJ object to this request for the reasons stated in III.B above. Expeditee and PMJ further object to the request as any typo in Mr. Vo's declaration is irrelevant to Expeditee's and PMJ's opposition to the Motion.

### 10. All documents supporting Patrick Jones's declaration that he authenticated each of the allegedly infringing product listings personally.

### a. RJITSCT's Statement

As explained in the motion for sanctions, Mr. Jones's sworn declaration submitted in support of Plaintiff's *ex parte* application for a TRO states that Exhibit 1 to the Complaint "was prepared by the Plaintiff and its employees or contractors under their direction and supervision and [he has] authenticated the listings [him]self." Dkt. No. 79 at 5. RJITSCT's motion for sanctions alleges that Mr. Jones's declaration was false, because Plaintiff did not in fact have evidence of a listing from RJITSCT's webstore with the FLAGWIX Mark. *Id.* It is reasonable for the Court to require Plaintiff to produce documents supporting this statement in Mr. Jones's declaration. If Mr. Jones actually authenticated these listings, production should be trivial; if they did not, Mr. Jones has committed perjury, and the Court should incorporate that finding into its decision on the motion for sanctions.

### b. Expeditee and PMJ's Statement

Expeditee and PMJ object to this request for the reasons stated in III.B above. Expeditee and

PMJ further object to the request as overly broad and unduly burdensome as it is not limited to

RJITSCT.

**11. All documents supporting the statement in Plaintiff's TRO application that "upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless."**

### a. RJITSCT's Statement

RJITSCT's motion for sanctions alleges that Plaintiff violated Federal Rule of Civil

Procedure 11(b)(3) by alleging in its *ex parte* application for a TRO that the Defendants in this case

hold most of their assets in China. Dkt. No. 79 at 5-6. That statement was false as to RJITSCT, and

Mr. Jones admitted that he had no evidence of that allegation beyond a stereotype at the preliminary

injunction hearing. Dkt. No. 66 at 25:10-26:7. If Plaintiff had some basis for this statement, it should

not be burdensome to produce that basis; if Plaintiff had no basis, then Plaintiff violated Rule

11(b)(3).

### b. Expeditee and PMJ's Statement

Expeditee and PMJ object to this request for the reasons stated in III.B above. Expeditee and

PMJ further object to the request as overly broad and unduly burdensome as it is not limited to

RJITSCT.

**12. All documents supporting the statement in Plaintiff's TRO application that "Plaintiff … has good cause to suspect that many of the Defendants are residents of China."**

### a. RJITSCT's Statement

RJITSCT's motion for sanctions alleges that Plaintiff violated Federal Rule of Civil

Procedure 11(b)(3) by alleging in its *ex parte* application for a TRO that the Defendants in this case

are residents of China. Dkt. No. 79 at 5-6. That statement was false as to RJITSCT, and Mr. Jones admitted that he had no evidence of that allegation beyond a stereotype at the preliminary injunction hearing. Dkt. No. 66 at 25:10-26:7. If Plaintiff had some basis for this statement, it should not be burdensome to produce that basis; if Plaintiff had no basis, then Plaintiff violated Rule 11(b)(3).

### b. Expeditee and PMJ's Statement

Expeditee and PMJ object to this request for the reasons stated in III.B above. Expeditee and PMJ further object to the request as overly broad and unduly burdensome as it is not limited to RJITSCT.

### 13. All documents supporting Plaintiff's allegation that Respect The Look specifically is a foreign company and/or a Chinese company.

### a. RJITSCT's Statement

RJITSCT's motion for sanctions alleges that Plaintiff violated Federal Rule of Civil Procedure 11(b)(3) by alleging in its *ex parte* application for a TRO that RJITSCT is a foreign company or specifically a Chinese company, and then continuing to make that allegation at the preliminary injunction hearing. Dkt. No. 79 at 5-6. That statement was false as to RJITSCT, and Mr. Jones admitted that he had no evidence of that allegation beyond a stereotype at the preliminary injunction hearing. Dkt. No. 66 at 25:10-26:7. If Plaintiff had some basis for this statement, it should not be burdensome to produce that basis; if Plaintiff had no basis, then Plaintiff violated Rule 11(b)(3).

### b. Expeditee and PMJ's Statement

Expeditee and PMJ object to this request for the reasons stated in III.B above. Expeditee and PMJ further object to the request as overly broad and unduly burdensome as it is not limited to RJITSCT.

14. **All documents supporting Mr. Jones's certificate of service on January 10, 2022, representing that he had caused copies of the summons, complaint, TRO, motion for preliminary injunction, and supporting memorandum on all defendants.**

   a. **RJITSCT's Statement**

The motion for sanctions alleges that Mr. Jones filed a fraudulent certificate of service on January 10, 2022, stating that he had caused the complaint, *ex parte* TRO, motion for preliminary injunction, and supporting memorandum to be served on all Defendants. Dkt. No. 79 at 6-8. Mr. Jones subsequently admitted that he had not in fact served at least 101 of the defendants, including RJITSCT. Dkt. No. 79 at 7. PMJ represented that this was the result of an innocent miscommunication in his subsequent "amended certificate of service." Dkt. No. 38. The Court should require PMJ and/or Plaintiff to produce the documents demonstrating that this was an innocent miscommunication, if PMJ and/or Plaintiff intend to rely on that defense.

   b. **Expeditee and PMJ's Statement**

Expeditee and PMJ object to this request for the reasons stated in III.B above. Expeditee and PMJ further object to the request as overly broad and unduly burdensome as it is not limited to RJITSCT.

15. **All communications between Mr. Jones and any Expeditee employee or agent between January 10, 2022, and January 18, 2022, regarding service of the complaint on Respect The Look and the other Alibaba and PayPal defendants.**

   a. **RJITSCT's Statement**

The motion for sanctions alleges that Mr. Jones filed a fraudulent certificate of service on January 10, 2022, stating that he had caused the complaint, *ex parte* TRO, motion for preliminary injunction, and supporting memorandum to be served on all Defendants. Dkt. No. 79 at 6-8. Mr. Jones subsequently admitted that he had not in fact served at least 101 of the defendants, including RJITSCT. Dkt. No. 79 at 7. PMJ represented that this was the result of an innocent miscommunication in his subsequent "amended certificate of service" filed on January 16, 2022. Dkt.

No. 38. The Court should require PMJ and/or Plaintiff to produce the communications demonstrating that this was an innocent miscommunication, in order to determine whether PMJ and Plaintiff acted in good faith. Plaintiff's claim of privilege has been waived because Plaintiff placed the communications at issue by filing the amended certificate of service that states: "Due to a miscommunication between the Plaintiff and its counsel, the 'PayPal Defendants' were not served on January 16, 2022. Plaintiff's counsel was not aware that the 'PayPal Defendants' had not been served on January 10, 2022, until January 16, 2022, at which time he immediately informed the Court and filed this Amended Certificate of Service." Dkt. No. 38; *see Beneficial Franchise*, 205 F.R.D. at 216.

### b. Expeditee and PMJ's Statement

Expeditee and PMJ object to this request for the reasons stated in III.B above. Expeditee and PMJ further object to the request as overly broad and unduly burdensome as it is not limited to RJITSCT. Expeditee and PMJ also object as the request calls for information protected by attorney-client privilege.

## IV    PROPOSED BRIEFING SCHEDULE

The Parties propose the following briefing schedule on RJITSCT's Motion if the Court grants Expeditee and PMJ's early discovery request:

| Proposed Date | Tasks if Early Discovery Request Granted |
|---|---|
| 4/28/22 | RJITSCT produces documents requested in Section II(C)(1-5).<br><br>*If the Court orders Expeditee and PMJ to produce documents, they will also be produced on this date. |
| 5/19/22 | Expeditee and PMJ file Oppositions to Renewed Motion for Sanctions |
| 6/02/22 | RJITSCT Reply |

If the Court does not grant early discovery, Parties propose the following briefing schedule:

| Proposed Date | Tasks if Early Discovery Request(s) Denied |
|---|---|
| 4/21/22 | Expeditee and PMJ file Oppositions to Renewed Motion for Sanctions |
| 5/05/22 | RJITSCT Reply |

Respectfully submitted,

Dated: March 29, 2022                    LOZA & LOZA LLP

/s/ Lena N. Bacani
Lena N. Bacani (*pro hac vice*)
Lena.bacani@lozaip.com
Marie E. Richmond (*pro hac vice*)
Marie.richmond@lozaip.com
Loza & Loza LLP
305 N. Second Ave., #127
Upland, CA 91786
Tel: (847) 670-1223

ARONBERG GOLDGEHN DAVIS & GARMISA
Matthew De Preter
330 N. Wabash Ave. Suite 1700
Chicago, IL 60611
(p) 312.828.9600
(f) 312.828.9635
cdepreter@agdglaw.com

*Attorneys for Plaintiff Expeditee LLC*

Dated: March 29, 2022                    PMJ PLLC

/s/ Patrick M. Jones
Patrick M. Jones
pmj@patjonesPLLC.com
PMJ PLLC
900 S. Clark St., Ste. 2101
Chicago, IL 60606
Tel: (312) 255-7976

*Attorney for PMJ*

20

Dated: March 29, 2022          ZUBER LAWLER LLP

/s/ *Brian J. Beck*

Brian J. Beck
bbeck@zuberlawler.com
Zuber Lawler LLP
111 W. Jackson Blvd., Ste. 1700
Chicago, IL  60604
Tel:  (312) 346-1100

*Attorneys for Defendant* RJITSCT LLC, dba
Respect the Look

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 29, 2022 a true and correct copy of the foregoing was filed electronically with the Clerk of the Court through the Court's CM/ECF System, which will provide electronic notification of such filing to counsel of record.

Additionally, in accordance with the present Coronavirus COVID-19 Public Emergency Order, it is the undersigned's understanding that there are to be no in-person deliveries of any kind may be made to a judge's chambers or to the Clerk's Office and thus no courtesy hard copy of the electronic filing is to be delivered to the Courtroom Deputy on the date of filing.

/s/ *Lena N. Bacani*

Lena Bacani