**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **EXPEDITEE LLC,** | ) |
| | ) **Case No. 21-6237** |
| **Plaintiff,** | ) |
| | ) **Hon. Andrea R. Wood** |
| **vs.** | ) |
| | ) |
| **THE ENTITIES listed on EXHIBIT 1,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM IN OPPOSITION TO DEFEDANT RJITSCT'S RENEWED
MOTION FOR SANCTIONS AGAINST PMJ PLLC**

PMJ PLLC ("<u>PMJ</u>"), former counsel for Plaintiff Expeditee LLC (the "<u>Plaintiff</u>" or "<u>Expeditee</u>"), files this partial response to the Renewed Motion for Sanctions (the "<u>Renewed Motion</u>") filed by Zuber Lawler LLP on behalf of RJITSCT LLC, d/b/a Respect The Look ("<u>Respect The Look</u>" or "<u>RTL</u>").[1] In further support of its response to the Renewed Motion, PMJ states as follows:

**STATEMENT OF FACTS**

1.      The Plaintiff retained PMJ, not Patrick Jones individually, to prosecute its interests after it discovered that many online retailers, including RTL, were copying its designs, images, trademark, and including its trademark within metadata to promote and sell counterfeit products to consumers located in the United States and around the world.

2.      The Plaintiff is a Vietnam-based company. This fact, on occasion, caused communication problems due to the time zone difference between Vietnam and Chicago and a significant language barrier, which the Plaintiff and PMJ did their best to manage. *See* Declaration of Patrick M. Jones (the "<u>Jones Decl.</u>"), at ¶4, a copy of which is attached as <u>Exhibit A</u>.

---

[1] A response to the arguments set forth in the Renewed Motion as to Expeditee's alleged conduct will be separately filed on behalf of Expeditee by its current counsel, Loza & Loza LLP. The issues raised in the separate responses were drafted to avoid duplication.

3.    To assess whether the Plaintiff's rights had indeed been violated and the location of the infringers, PMJ retained an experienced investigator, Mubashir Anwar. Jones Decl., at ¶¶6-7.

4.    The investigator informed PMJ that he had identified over 100 online webstores, many of whom, including RTL, sold counterfeit products of the Plaintiff's design incorporating the Plaintiff's trademark into the image and/or metadata to increase traffic to their websites and sales at the counterfeit products. *Id.*, at ¶¶7-8.

5.    Prior to filing the Complaint in this case, the Plaintiff and PMJ reviewed and confirmed the investigator's findings. *Id.*, at ¶9.

6.    PMJ also researched the alleged U.S. addresses of the potential defendants, including RTL, and concluded that almost every single physical address was a virtual dropbox or P.O. Box, which is strongly indicative of overseas companies with no real presence in the United States. *Id.*, at ¶10. PMJ concluded, and RTL has since confirmed, that it also used an anonymous P.O. Box to shield its identity. *Id.*

7.    PMJ filed a complaint against the defendants, including RTL, on November 22, 2021, for (i) trademark counterfeiting and infringement, (ii) unfair competition and false designation of origin, and (iii) violation of the Illinois Uniform Deceptive Trade Practices Act. (Dkt. #1.)

8.    To prevent defendants from taking down products from their website, destroying evidence of their infringement, Plaintiff filed a motion to file certain documents under seal and used a pseudonym to refer to the Plaintiff. (Dkt. #14.)

9.    PMJ disclosed the name of the Plaintiff to the Court on the civil cover sheet filed with the complaint. PMJ also filed the Plaintiff's trademark certificate disclosing Plaintiff's identity to the Court. (Dkt. ##3, 4.)

10.     Furthermore, to prevent defendants from diverting their funds in anticipation of a judicial decision against them, PMJ filed a motion for a temporary restraining order ("TRO"). (Dkt. #10.)

11.     On December 22, 2021, PMJ sent an email to several online retailer platforms that facilitated the counterfeiters, including PayPayl.com, which RTL used to process payments for sales of Plaintiff's counterfeit goods. Per the email, PMJ explicitly authorized PayPal to provide PMJ's contact information to any accounts that were affected by the TRO, including RJITSCT, operating under its pseudonym "Respect The Look." *See* Email from Patrick M. Jones to PayPal.com, dated Dec. 22, 2022, attached as Exhibit B, stating:

> and transactional history of the Defendants (see TRO, at Dkt #).
>
> We authorize you to provide this information to the Defendants so that we might resolve and deter the infringing conduct as soon as possible. Please contact us with any questions.
>
> Sincerely,
>
> Patrick M. Jones

12.     Once RTL learned Expeditee had initiated a lawsuit against them, RTL immediately deleted the infringing product from its website. *See* Jones Decl. at ¶13.

13.     PMJ became aware of potential misstatements in the Complaint on January 12 and 13, 2022 and immediately took steps to amend those statements regarding, specifically, the Plaintiff's state of incorporation and the location of its principal place of business. (Dkt. #53.)

14.     On January 12, 2022, RTL's counsel, Mr. Brian Beck, reached out to PMJ to discuss the case alleging, among other things, that RTL had not been served with a copy of the Complaint and summons. Jones Decl., at ¶14.

15.     On January 13, 2022, RTL's counsel reached out again and stated that although the image of RTL's product at issue was blurry, he could not see the Flagwix trademark on the image. The image used by RTL was identical to Flagwix's original image, but had been "cropped" to hide the Flagwix name. *Id.*, at ¶14.

16.     Twenty-four hours after RTL's second email, and before Plaintiff and PMJ could look into RTL's allegations, RTL blindsided the Plaintiff, PMJ, and perhaps the Court, with a motion for sanctions. (Dkt. #34.)

17.     On March 7, 2022, RTL filed a Renewed Motion for Sanctions. (Dkt. #79.)

18.     RTL's Renewed Motion for Sanctions was filed despite the facts that:

- Plaintiff, via PMJ, had already corrected the alleged errors. Plaintiff amended its corporate disclosure on January 23, 2022 to reflect the correct place of incorporation and principal place of business of Expeditee; Plaintiff served the defendants who had not received a complete set of documents on January 16, 2022. (Dkt. #53.);

- Plaintiff, via PMJ, had informed the Court that it intended to file an amended complaint to incorporate a copyright claim, revise the trademark claim, and correct the place of incorporation and principal place of business (Jones Decl. at ¶15);

- PMJ and Plaintiff had and maintain a good faith belief that RTL copied the Plaintiff's design, cropped out its trademark, and sold counterfeit products of the Plaintiff that, at the very least, contained metadata that included the Plaintiff's trademark in an effort to fraudulently lead customers to believe that RTL was selling authentic products produced by the Plaintiff (Jones Decl. at ¶12);

- On December 22, 2021, PMJ directed PayPal to provide PMJ's contact information to any account that was restricted as a result of the case (Jones Decl. at ¶16);

- Immediately after the Complaint was served on RTL, they deleted the page advertising the counterfeit products (Jones Decl. at ¶17);

- At all times relevant to the Plaintiff's claim against RTL, RTL's PayPal account remained active and received payments from customers purchasing Plaintiff's counterfeit product as well as other products listed on RTL's website; RTL has not presented any evidence and likely did not suffer any damages due to the TRO, which is a direct contradiction to its representations to the Court; and

- As soon as the Court vacated the TRO, RTL diverted all of its funds from its PayPal account, in direct contradiction to its representations to the Court (Jones Decl. at ¶18).

## ARGUMENT

RTL's Renewed Motion for Sanctions against PMJ under Rule 11 of the Federal Rules of Civil Procedure ("FRCP") should be denied because (I) RTL's request for sanctions against

Patrick M. Jones, individually, did not comply with the safe harbor provision, and (II) PMJ had a good faith basis for all of the allegations set forth in the Complaint, and promptly corrected any errors. When the facts are viewed in their totality, it can reasonably be concluded that it was RTL's Renewed Motion – *and not the Plaintiff's Complaint* – that were filed for impermissible purposes intended solely to harass the opposing party and its counsel.

## I.    The Safe Harbor Provision of Rule 11 Precludes Sanctions Against PMJ or Patrick M. Jones, Individually.

Under the "safe harbor" provision of Rule 11, the party opposing the motion for sanctions has 21 days after it is served said motion to amend or withdraw the challenged pleadings. FRCP Rule 11(c)(2). Within that time, the party in favor of sanctions may not file or present to the court its motion for sanctions. *Id*. ("The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets"). *See also Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1058 (7th Cir. 1998).

RTL's counsel, Brian Beck, sent an email to PMJ on January 12, 2022 to discuss certain aspects of the case. PMJ immediately reviewed the issues raised by Beck and responded to RTL on January 13, 2022, less than 24 hours after Beck's inquiry. Beck followed up with a couple questions and then, less than twenty-four hours later, filed a motion for sanctions against the Plaintiff and Patrick M. Jones, individually, without affording the Plaintiff or PMJ/Jones any opportunity to amend its pleadings.[2]

---

[2] RTL not only failed to present its request for sanctions and allegations of extortion as a separate motion, it also failed to allow the Plaintiff time to amend its complaint. RTL's counsel raised issues with PMJ on January 12, 2022 and only two days later, filed a motion for sanctions. (Dkt. #35.) RTL's counsel did not provide the Plaintiff and PMJ a reasonable period to respond, neither did he serve his motion on Plaintiff prior to filing it with the Court.

RTL filed a Renewed Motion on March 7, 2022. (Dkt. #79.) The Renewed Motion also failed to comply with the safe harbor provision of Rule 11. Even if the Court were to conclude that the safe harbor provision of Rule 11 does not apply to the Renewed Motion, the fact remains that Plaintiff indicated to the Court early on that it intended to file an amended complaint. And indeed, Plaintiff has filed a motion for leave to amend its complaint, preventing the imposition of sanctions under Rule 11. *See* 1993 Advisory Committee Notes ("The timely withdrawal of a contention will protect a party against a motion for sanctions"). Even applying a flexible interpretation of Rule 11's safe harbor provision, this Court cannot find that sanctions are appropriate in a case such as this where the counsel claiming sanctions failed to observe the rule, as well as basic notions of civility, professional courtesy, or any respect for judicial economy.

## II. Sanctions Are Not Appropriate Because Plaintiff And PMJ Had A Good Faith Basis For The Allegations Set Forth In The Pleading.

When deciding whether to grant Rule 11 sanctions, a court must look at subjective component of Rule 11, as well as the objective one. *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 931 (7th Cir.1989). The subjective component requires the court to look at the intent of the target of the motion for sanctions, that is, whether that party had an improper purpose. *Id.* The objective component, on the other hand, requires the court to examine whether that party made a reasonable inquiry beforehand. *Id.* Here, there is no indication, other than RTL's hyperbole, that PMJ had an improper purpose when filing the Complaint or that PMJ failed to make a reasonable inquiry into the allegations beforehand.

### A. Plaintiff's claim was not brought for an improper purpose.

Courts have defined "improper purpose" as the intent to harass, cause unnecessary delay or increase the cost of litigation needlessly. *Mars Steel Corp, 880 F.2d at 931*. It is not enough to show a party caused unnecessary delay or additional litigation costs; one must also show that party had the intent to do so. *People v. Stefanski*, 377 Ill.App.3d, 548, 551, 316

Ill.Dec. 631, 879 N.E.2d 1019 (2017). An honest mistake cannot be the basis for sanctions. In a case where the plaintiff had made a factual error as to a key third party's location under the federal copyright venue statute, the court concluded, "the error was inadvertent and therefore not sanctionable." *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 449 (7th Cir. 1993). In other words, there cannot be an "improper purpose" without bad faith. *Id*.

First, PMJ did not cause or intend to cause any "delay or additional litigation costs." PMJ responded almost immediately, and in every case within less that 24 hours, to all inquiries from defendants, including RTL. *See* Jones Decl., at ¶19. It can fairly be said that it was RTL who has worked incessantly to increase litigation costs in this case by suing the Plaintiff and Patrick M. Jones for sanctions with no notice or any basis for such claims.

RTL also claims the Plaintiff *knowingly* made false representations to the Court. (Dkt. #79, at p.1.) RTL specifically refers to the Plaintiff's use of a pseudonym in the caption of the complaint, the state of incorporation of the Plaintiff, and the location of its principal place of business in the U.S. *Id.* at p.2. As set forth herein and in the Jones Decl., this claim is patently false and is presented as a distraction from the fact that RTL copied the Plaintiff's design, cropped out its trademark, and sold counterfeit products. *See* Jones Decl., at ¶14.

Contrary to RTL's claims, PMJ filed Plaintiff's civil cover sheet and trademark certificate the same day that it filed the Complaint, disclosing Plaintiff's identity to the Court. (Dkt. ##2-1; 3.) As Plaintiff explained to the Court, it used a pseudonym so that defendants could not destroy evidence and divert assets. This is not uncommon is these types of cases.

Furthermore, RTL's claim that PMJ committed fraud on the Court with respect to the statement that the Plaintiff is a Nevada LLC is not evidence of bad faith on behalf of the Plaintiff or PMJ. PMJ had a good faith basis to allege that Expeditee LLC was a Nevada LLC because *it was stated on its trademark registration*. PMJ does not have any understanding of how this mistake came about, but PMJ had no reason to purposefully mislead the Court on

7

this point. Nonetheless, the Plaintiff, via PMJ, corrected in the amended corporate disclosure on January 23, 2022. (Dkt. # 53.)

RTL's claim that PMJ committed "perjury" by alleging in the original Complaint that the Plaintiff had a principal place of business in Chicago is also false. As PMJ has disclosed to the Court, the Plaintiff, in fact, conducts its U.S. operations as a Delaware limited liability company through its U.S. agent, Universal Corporate Services LLC, located at 900 South Clark Street, Chicago, Illinois. While the Chicago address is the main location for Plaintiff inside the U.S., PMJ amended the corporate disclosure statement to clarify that Plaintiff is based in Vietnam. (Dkt. #53.)

Just as Plaintiff had no reason to intentionally mislead the Court into believing it was incorporated in Nevada, it had no reason to mislead the Court as to its principal place of business. The Plaintiff did not rely on its principal place of business to argue in favor of this Court's jurisdiction over this matter. (Dkt. #1, at p.1-3.) Specifically, Plaintiff stated, "This Court has personal jurisdiction over Defendants in that they transact business in the State of Illinois and in the Northern District of Illinois." *Id.*, at p.3. In fact, Plaintiff did not even mention its principal place of business in its jurisdiction and venue argument. *Id.*, at p.2-3. Further, RTL does not oppose jurisdiction or venue in this case, and waived any opposition by appearing and filing a counterclaim.

RTL also wrongly claims Jones "perjured" himself in his declaration in support of Plaintiff's motion for a TRO. (Dkt. #79, at p.4.) Accusations of perjury should neither be made, nor taken lightly. Perjury is defined as a false statement made under oath, with the specific intent to deceive. *See United States v. White*, 240 F.3d 656, 661 (7th Cir. 2001) ("One commits "perjury" if, while under oath, he or she gives false testimony concerning a material matter *with a willful intent to provide false testimony*, rather than as a result of confusion,

mistake, or faulty memory" (emphasis added)). Jones's declaration was made in good faith; any inaccuracy contained therein, was an honest mistake, with no intent to deceive this Court.

Finally, RTL falsely accuses PMJ of having fraudulently filed a certificate of service. (Dkt. #79, at p.7.) Again, this is a serious allegation that should neither be made nor taken lightly, or without support. In this case, there clearly was no intent on the part of PMJ to deceive this Court. Jones believed that the defendants had been served on January 7 and January 10, 2022. This Court requested that the Plaintiff provide evidence of service via email, which the Plaintiff did.

To be clear, when PMJ received an indication that some of the "PayPal defendants" may not have been properly served, PMJ immediately remedied any uncertainty regarding service by taking the following steps:

- On December 21, 2021, the Court granted Plaintiff's motion for a temporary restraining order;

- Plaintiff's counsel served PayPal a copy of the complaint and summons, as well as a copy of the TRO, and requested that PayPal communicate the contact information and identity matching the webpages indexed on the list provided to the Court (*see* Email from Jones to PayPal, dated Dec. 22, 2021, attached as Exhibit B);

- As PMJ could not obtain an answer from several platforms before the TRO expired, Plaintiff requested an extension, which the Court granted on January 3, 2022;

- Finally, on January 7, 2022, PayPal sent an email to all the PayPal defendants, indicating their accounts were restricted pursuant to a court order, and informing them of the case number. (To be clear: PMJ did not dictate or have any control over PayPal's communications to its customers, like RTL);

- PMJ, which did not have access to the defendants' contact information at the time, asked PayPal to provide them the information and necessary documents. *Id*. At the time, PMJ reasonably believed that PayPal had provided the information and documents to the PayPal defendants, and that they had been properly notified;

- PMJ filed the certificate of service with the good faith belief that all the defendants had been properly served;

- At 5:30 p.m. on January 12, 2022, Beck alleged to PMJ via email that RTL had not been properly served;

- At 3:30 p.m. on January 14, 2022, *less than 48 hours after contacting the Plaintiff and PMJ*, RTL filed its motion for sanctions against Plaintiff and PMJ alleging perjury, fraud and extortion;

- A timeframe of less than 48-hours is neither compliant with the safe harbor provision of Rule 11, nor reasonable under any circumstances;

- On January 16, 2022, **PMJ re-served all PayPal defendants**, including RTL, with the complaint, summons and preliminary injunction notice of hearing and motion (Dkt. #38);

- At the same time, **Plaintiff filed a motion to continue the preliminary injunction hearing**, notably to provide the PayPal defendants, like RTL, with notice of the hearing and time to respond (Dkt. #37);

- Plaintiff further filed an amended certificate of service to reflect the proper service on all defendants. (Dkt. #38.); and

- Tellingly, RTL persisted with its motion for sanctions, and has not addressed its infringement of the Plaintiff's intellectual property rights.

In an attempt to draw attention away from its intellectual property violations, RTL has aggressively accused Plaintiff and PMJ of unethical and borderline criminal behavior, going so far as to claim, "This *extortionate conduct* is consistent with Plaintiff's even more egregious conduct in the currently [separate] pending case of *Expeditee LLC v. The Entities listed on Exhibit 1*… in which Plaintiff "served" defendants by issuing invoices for $15,000." (Dkt. #79, at p.9) (emphasis added). RTL actually presented to this Court an invoice for $15,000 sent to a defendant in another case. *Id*. RTL's inuendo is completely baseless and uninformed. The issuance of an invoice based on a proposed settlement does not support RTL's sensational and borderline unethical allegation that PMJ engaged in the crime of "extortion." It is entirely unclear why RTL would accuse the Plaintiff and PMJ of engaging in extortion based on an invoice issued in connection with another case, other than to harass the Plaintiff and PMJ, confuse the issues in this case, and increase litigation costs.

This attempt by RTL to paint Plaintiff and PMJ as extortionists is baseless and outrageous. Indeed, RTL claims Plaintiff "served" defendants with invoices when that invoice was in fact sent *after* Plaintiff and the concerned defendant had reached a settlement

agreement based on the defendant's *admitted counterfeiting of Plaintiff's products*. Jones Decl., at ¶19. Plaintiff never claimed paying them was defendants' only option. *Id.* PMJ always responded promptly and offered defendants an opportunity to disavow their infringement or reach a settlement to avoid legal expense. *Id.* Many defendants admitted that they had (sometimes unknowingly) sold counterfeit products of the Plaintiff and offered to pay a settlement amount, which PMJ negotiated in good faith. *Id.* PMJ negotiated settlements with dozens of defendants, including many that used the PayPal platform, like RTL. *Id.* Therefore, any accusation that the Plaintiff or PMJ engaged in extortion (a crime punishable by a minimum of one year in prison and a fine of up to $2,500) is completely unfounded and should not be condoned.

> **B.  PMJ made a reasonable inquiry into the allegations set forth in the Complaint before filing.**

The objective component of Rule 11 requires the court to examine whether the target of a motion for sanctions has made a reasonable inquiry beforehand. *Mars Steel Corp, 880 F.2d at 931*. Indeed, a plaintiff is allowed to plead allegations "on information and belief" when an inquiry reasonable under the circumstances supports that belief. *Zenith Elecs. Corp. v. Exzec, Inc.*, No. 93 C 5041, 1997 U.S. Dist. LEXIS 20762, at *40 (N.D. Ill. Dec. 24, 1997). The Court made clear in the *Zenith* case that the examination of the reasonableness of the inquiry must take into account the circumstances of the case. These circumstances notably include time constraints and practicality. *Id.* Courts must consider "the time available to the attorney to prepare the document, the plausibility of the legal view contained in the document... and the complexity of the legal and factual issues raised." *Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 875–76 (5th Cir.1988).

Here, the Plaintiff's products were being counterfeited by more than 100 competitors leading up to Christmas, the most profitable season for Plaintiff. Jones Decl., at ¶8. It was therefore imperative that the Plaintiff stop the infringers before they could do more damage to

its business. *Id*. PMJ had a very limited timeframe to conduct an investigation, prepare the Complaint, and file the motion for the TRO. *Id.*, at ¶9. During that timeframe, PMJ coordinated with its own intellectual property attorney, retained a trademark infringement specialist, and an online fraud specialist. *Id.*, at ¶¶6-7. In a matter of weeks, PMJ and Plaintiff identified and collected images of more than 100 infringing products. *Id.*, at ¶8. Therefore, the Court should conclude that PMJ's pre-filing investigation was reasonable under the circumstances.

Courts must also make a cost-benefit analysis when determining whether an inquiry was reasonable. *See Nemmers v. United States*, 795 F.2d 628, 632 (7th Cir. 1986); *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987). It is a common practice for trademark infringers to erase the mark from the picture of the infringing product to avoid liability. Thus, Plaintiff did consider purchasing an infringing copy from each of the defendants to prove the latter had committed trademark infringement. However, the number of defendants and of infringing products sold by each defendant was cost prohibitive.

Again, PMJ retained an online fraud investigator with significant experience to confirm or deny the Plaintiff's claims and to identify infringers. The investigator confirmed that the defendants had "cloned" the Plaintiff's products. The investigator identified more than 100 websites, including RTL, that had copied images of the Plaintiff's product directly from the Plaintiff's website, were pawning off counterfeit goods as their own and selling those products to residents of the State of Illinois. PMJ reviewed the investigator's findings and authenticated the list. PMJ did so by looking at each defendant's webpage and reviewing the images of the products sold by said defendants. Based on this information, the Plaintiff and PMJ had a good faith basis to allege that these images were advertisements for the sale of counterfeits of the Plaintiff's products in violation of its intellectual property rights.

The Complaint, with its exhibits, was submitted to the Plaintiff for review prior to filing. Jones Decl., at ¶12. PMJ also researched the alleged locations of the potential defendants on Google maps and determined that nearly all of them were located in China or Vietnam; the addresses in the United States were primarily mail drop boxes and warehouses, many of which did not appear to be affiliated in any way with the Defendants, *including RTL*. *Id.*, at ¶10. None of the U.S. addresses PMJ found could actually be connected to the defendants listed. *Id.* PMJ thus concluded the defendants, including RTL, resided – and mostly maintained their business accounts – abroad. *Id.* RTL's address is an anonymous P.O. Box, so it was and is not clear whether it is a U.S.-based business. *Id.*

In sum, all allegations made by Plaintiff in this case were based on extensive investigation under time pressure and practical constraints. This case was not brought for any improper purpose; it was brought to prevent counterfeiters, like RTL, from selling products designed, manufactured, and sold by the Plaintiff. PMJ had and maintains a good faith belief that the defendants, including RTL, infringed the Plaintiff's intellectual property rights and should, and will be, held accountable.

## CONCLUSION

**WHEREFORE**, PMJ PLLC requests that this Court enter an order (i) denying sanctions against PMJ and/or Patrick M. Jones, individually, and (ii) granting such other and further relief as this Court deems appropriate under the circumstances.

Dated May 19, 2022                                             Respectfully submitted,


By:     /s/ Patrick M. Jones
          Former Counsel for the Plaintiff


Patrick M. Jones (IL #6271256)
John A. Wiberg
Sarah M. Beaujour
PMJ PLLC
The National Building

13

125 South Clark Street, 17th Floor
Chicago, Illinois 60603
Tel: (312) 255-7976
Email: pmj@pmjpllc.com
Email: jw@pmjpllc.com
Email: sb@pmjpllc.com

### CERTIFICATE OF SERVICE

I certify that on May 19, 2022, a copy of the foregoing motion was served on the following parties who have filed an appearance in this case by ECF and electronic mail:

Brian J. Beck
ZUBER LAWLER LLP
135 S. LaSalle St., Suite 4250
Chicago, Illinois 60603
Email: bbeck@zuberlawler.com

Counsel for RJITSCT LLC d/b/a Respect The Look

Lena Bacani
Los Angeles, CA
515 S. Flower Street,
36th Floor
Los Angeles, California 90071
Email: lena.bacani@lozaip.com

Counsel to the Plaintiff

/s/ Patrick M. Jones

## EXHIBIT A

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **EXPEDITEE LLC,** | ) |
| | ) **Case No. 21-6237** |
| **Plaintiff,** | ) |
| | ) **Judge: Honorable Andrea R. Wood** |
| **vs.** | ) |
| | ) |
| **THE ENTITIES listed on EXHIBIT 1,** | ) |
| | ) |
| **Defendants.** | ) |

### DECLARATION OF PATRICK M. JONES IN SUPPORT OF PMJ PLLC'S RESPONSE TO RJITSCT'S RENEWED MOTION FOR SANCTIONS

I, Patrick M. Jones, an attorney over the age of 18 years old, declare as follows:

1.      I am an attorney at law with over 22 years of practice, duly admitted to practice before the Courts of the State of Illinois, the United States District Court for the Northern District of Illinois, and the Supreme Court of the United States.

2.      I am the Managing Member of PMJ PLLC ("PMJ"), the law firm that represented Expeditee LLC (the "Plaintiff") in the above-captioned matter.

3.      Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify consistently with the facts set forth herein.

4.      The Plaintiff is a Vietnam-based company. This fact, on occasion, caused communication problems due to the time zone difference between Vietnam and Chicago and a significant language barrier, which the Plaintiff and PMJ did their best to manage.

5.      The Plaintiff was a client of PMJ for several years. In 2021, the Plaintiff contacted PMJ about filing a complaint to stop counterfeiters from selling its products, including an online retailer that represented itself as "Respect the Look."

**EXHIBIT A**

6.     PMJ discussed the potential case with its in-house intellectual property attorney, and with outside counsel who had filed and resolved similar cases before this Court.

7.     PMJ also hired an online fraud investigator to identify online websites who were selling the Plaintiff's products.

8.     The investigator identified over 100 online stores who were using images of products produced by the Plaintiff to sell counterfeit merchandise.

9.     Within a timeframe of less than two weeks, PMJ and the Plaintiff reviewed and confirmed the investigator's findings.

10.     PMJ reviewed the investigator's evidence and the counterfeiters' websites to determine whether any of them physical addresses or employees located in the United States. All of them, including RTL, used anonymous P.O. Boxes or virtual mailboxes to hide their locations and their identities. RTL, in fact, used an anonymous P.O. Box, making it appear that it a non-U.S. online retailer.

11.     Some of the more sophisticated counterfeiters, like RTL, Photoshop, crop or blur the Plaintiff's image to remove their Trademark, so that the Flagwix trademark is not legible.

12.     Based on these facts, the Plaintiff and PMJ had and maintain a good faith belief that RTL copied the Plaintiff's design, cropped out its trademark, and sold counterfeit products in violation of the Plaintiff's intellectual property rights as set forth in the Complaint.

13.     Once RTL learned of the lawsuit, it deleted the infringing product from its website; certainly not conduct that a plaintiff or, possibly a court, would expect from a "non-infringing" party. At the initial hearing on its opposition to the entry of the preliminary injunction, RTL's owner also inexplicably claimed – under oath – that it was his company, not the Plaintiff, that designed the flag at issue. Since making that statement, RTL has walked back

## EXHIBIT A

that statement, while still accusing the Plaintiff and PMJ of perjury, Rule 11 violations, and extortion.

14.     On January 12, 2022, RTL's counsel, Beck, reached out to PMJ to discuss the case, alleging, among other claims, that RTL had not been served with a copy of the Complaint and summons. Notably, Beck did not contend that his client had not cloned the Plaintiff's design, copied the image of the design from the Plaintiff's website and cropped out the Flagwix trademark, and/or sold counterfeit reproductions of the Plaintiff's product.

15.     Plaintiff informed the Court that it intended to amend the Complaint, and in fact amended its corporate disclosure statement to make it clear that the Plaintiff was Delaware LLC, and to remove the allegation from the Complaint that it had a "principal place of business" in Chicago, Illinois, as that term is defined in this Circuit.

16.     On December 22, 2021, I sent an email to PayPal instructing it to provide PMJ's contact information to any defendant whose accounts were affected by the case. PMJ does not know whether PayPal provided that information to those defendants.

17.     Immediately after RTL was served with the Renewed Motion, PMJ instructed its online investigator to search the RTL website for the offending image; it had been removed by RTL. PMJ understood this to be an indication – the very least – of culpability by RTL for the claims against it.

18.     In an effort to have the TRO against it dissolved, RTL represented to the Court, under oath, that there was no reason for the Court to restrain RTL's account because it was a U.S. company and it would not divert its assets to avoid liability. This turned out to be a lie. Within days of the dissolution of the TRO against RTL, it transferred nearly all of its funds in the amount of more than $300,000 out of its PayPal account to some other account that is not yet

# EXHIBIT A

known.

19.     PMJ received dozens of call and emails from defendants named in this case. PMJ responded to those inquiries in every instance in under 24 hours. In many cases, the defendants apologized for selling counterfeit products of the Plaintiff and offered to settle the matter to minimize legal expense. In each instance, PMJ negotiated with those parties to dispose the claims against them.

20.     PMJ amicably settled claims in this case against dozens of defendants in a very short period of time, minimize legal express for everyone involved. Any accusation that PMJ criminally "extortiated" any defendant in this or any other case is, at best unfounded, and at worst a lie.

Dated: May 19, 2022                    Respectfully submitted,


                                       By:     /s/ Patrick M. Jones
                                               Patrick M. Jones
                                               Former Counsel for the Plaintiff

# EXHIBIT B

---

| | |
|---|---|
| **Subject:** | TRO - Xped v. Ex. 1, Case no. 21-6237 |
| **Date:** | Wednesday, December 22, 2021 at 10:10:08 AM Central Standard Time |
| **From:** | Patrick Jones |
| **To:** | EEOMALegalSpecialist@paypal.com |
| **CC:** | Sarah Beaujour |
| **BCC:** | Taylor Vo, Patrick Jones |
| **Attachments:** | 20 - Sealed TRO.pdf, 1 - Complaint.pdf, Plaintiff initial Doc Requests PayPal.pdf, Flagwix - PayPal accounts.xlsx |

PayPal:

Attached please find the following documents:

- Complaint, dated Nov. 22, 2021;
- The relevant portion of Ex. 1 to the Complaint;
- Sealed Temporary Restraining Order (the "TRO"), dated Dec. 21, 2021; and
- Plaintiff's Initial Document Requests.

The Court's Temporary Restraining Order requires You to do the following:

- Freeze the defendants' accounts, as identified on Ex. 1 (*see* TRO, at Sec.II);
- Accept service of process my email; and
- Comply with expedited discovery by providing the names, addresses, email addresses, and transactional history of the Defendants (*see* TRO, at Sec.IV).

We authorize you to provide this information to the Defendants so that we might resolve and deter the infringing conduct as soon as possible. Please contact us with any questions.

Sincerely,

Patrick M. Jones

PMJ PLLC
125 South Clark Street
Chicago, Illinois 60603
Tel: (312) 255-7976
Cell: (312) 404-3225
Fax: (312) 803-0931
www.pmjpllc.com

101 North 1st Ave
Phoenix, AZ 85003

*"Chicago-Based with a Global Influence"*

This email message and accompanying data may contain information that is confidential and subject to privilege. If you are not the intended recipient, you are notified that any use, dissemination, distribution or copying of this message or data is prohibited. If you have received this email in error, please notify me immediately and delete all material pertaining to this email.