# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EXPEDITEE, LLC, | Case No.: 1:21-cv-06237 |
| Plaintiff, | |
| vs. | District Judge: Hon. Andrea R. Wood |
| THE ENTITIES listed on EXHIBIT 1, | |
| Defendants. | |
| RJITSCT LLC d/b/a/ Respect The Look, | |
| Counterclaimant, | |
| vs. | |
| EXPEDITEE LLC, | |
| Counter-defendant. | |

## PLAINTIFF EXPEDITEE LLC'S OPPOSITION TO RJITSCT LLC D/B/A RESPECT THE LOOK'S RENEWED MOTION FOR SANCTIONS

Plaintiff Expeditee LLC ("Expeditee"), respectfully opposes the Renewed Motion for Sanctions (Dkt. 78) ("Motion"), filed by Defendant RJITSCT LLC d/b/a Respect the Look ("RTL"), as follows:

### I. INTRODUCTION

RTL's Motion is a baseless attempt to avoid liability for its flagrant infringement of Expeditee's intellectual property rights. The Motion should be denied because RTL failed to serve a draft of the Motion on Expeditee 21 days before filing as required under Rule 11(c)(2). RTL also failed to serve a draft of its original motion for sanctions,[1] preventing Expeditee from amending its claims in the original complaint and TRO. (Dkt. 34.) RTL not only filed the two sanctions motions without the required notice, it also filed a combination Motion to Dismiss, for Summary Judgment and for Attorney Fees and Costs (Dkt. 71) which RTL admitted in Court was for the express purpose of preventing Expeditee from amending or withdrawing any of its claims. RTL also opposed Expeditee's motion for leave to file a First Amended Complaint. (Dkt. 96.) Such actions to prevent Expeditee from addressing the complained of issues are directly contrary to the purpose of Rule 11's safe harbor provision.

RTL's failure to comply with the procedural requirements of Rule 11 is alone sufficient to deny the Motion. *See, e.g., HNA Sweden Hospitality Mgmt. AB v.Equities First Holdings, LLC*, No. 1:19-cv-02452, 2020 WL 4720029, at *2 (S.D. Ind. July 9, 2020) ("Defendants fired their warning shot, and Plaintiffs now seek leave to cease prosecuting the challenged claims. The mechanism worked as designed. To reach the merits of the motion for sanctions would undermine the safe harbor's purpose—streamlining the administration and procedure of the federal courts—by requiring the Court to analyze the reasonableness of claims Plaintiffs are no longer pursuing.")

The Motion should also be denied because Expeditee's claims and allegations were objectionably reasonable and made in good faith without any improper purpose. RTL's assertions

---

[1] (Dkt. 34.) RTL's original sanctions motion was also combined with its Motion to Dissolve the TRO and, therefore, did not satisfy the procedural requirements of Rule 11(c)(2) ("A motion for sanctions must be made separately from any other motion").

that Plaintiff knowingly made false representations and "had no factual or legal basis for its claims" are demonstrably false. (Dkt. 79 at 1.) RTL clearly copied and sold knockoffs of Expeditee's FLAGWIX-branded products, such as its One Nation Under God flag shown in Table 1 below.

**Table 1 – Comparison of FLAGWIX and RTL products**



Not only did RTL clone Expeditee's One Nation Under God design, it also took the product name and Expeditee's photograph showcasing the FLAGWIX product. RTL's social media posts advertising its product were found during Expeditee's pre-suit investigation for unauthorized uses of the Mark, providing Expeditee with the reasonable belief that RTL used the Mark in embedded text or metadata so that its product listings would pop up when consumers searched for authentic FLAGWIX products. (Dkt. 1, ¶ 29.) RTL's blurring of the FLAGWIX Mark in the photograph taken from Expeditee does not avoid liability as detailed in Expeditee's Motion for Leave to File

a First Amended Complaint (Dkt. 88).

RTL argues that Expeditee's claims are baseless because the original complaint and/or motion for TRO filed by Expeditee's prior counsel stated: (1) Plaintiff was "XPed LLC;" (2) Plaintiff was a Nevada limited liability company; (3) Plaintiff had a principal place of business in Chicago, Illinois; (4) RTL was using the FLAGWIX trademark; and (5) "Defendants are using the various websites and webstores…to sell Counterfeit Products from foreign countries such as China…"[2] (ECF 79 at 2, 5-6.) Given RTL's election not to challenge personal jurisdiction or venue, and its filing of its counterclaims in this District, it is unclear how RTL was prejudiced by statements (1) – (3).[3] Expeditee did not intentionally misstate any facts and corrected and/or clarified each of these statements in subsequent filings once they were brought to Expeditee's attention. (*See* PMJ Opp'n. at 3-4, 7-9.) Expeditee has also sought leave to amend its original complaint to correct these statements (Dkt. 88) – which RTL opposes. (Dkt. 96.)

Because Expeditee has not been given the opportunity to amend its original complaint, RTL's Motion is premature. To the extent RTF relies on alleged misstatements in the request for TRO, it is moot because Expeditee has corrected its allegations on the record and the Court has already denied Expeditee's request for a preliminary injunction ("PI") against RTL. (Dkt. 52.) Given these facts, RTL should not be allowed to use Rule 11 as a litigation weapon to prevent Expeditee from stopping RTL from selling its cheap knockoffs to consumers.

## II. BACKGROUND

Expeditee designs, manufactures and sells its original flags and banners under its registered FLAGWIX trademark, U.S. Reg. No. 6,265,462 ("Mark"). (Dkt. 1, ¶ 9, Ex. 2.) Expeditee's products are sold throughout the United States and the world, including within the Northern District of Illinois, both online and through various retail establishments via a network of authorized distributors. (*Id.*, ¶¶ 9, 12, 13, 15.) Expeditee has invested substantial time, money, and

---

[2] RTL's allegations regarding alleged misstatements and a certificate of service filed by Expeditee's former attorneys at PMJ will be addressed in a separate Opposition filed by PMJ ("PMJ Opposition").
[3] Further details regarding statements (1) – (5) are addressed in the Opposition filed by Expeditee's former counsel, PMJ, and will not be repeated here.

3                                          **OPP'N TO RJITSCT LLC'S**
                                          **RENEWED MOT. FOR SANCTIONS**
                                          Case No.: 1:21-cv-06237

resources in promoting the Mark in connection with its goods and, as a result, customers associate the Mark with Expeditee and its flag products. (*Id.*, ¶¶ 12, 19.)

On November 22, 2021, Plaintiff filed its original Complaint against over a hundred defendants alleging claims of: (1) Federal Trademark Counterfeiting and Infringement (15 U.S.C. § 1114); (2) Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a)); and (3) violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510). (Dkt. 1.) RTL filed a Counterclaim and Motion to Dissolve the TRO and for Sanctions, on January 14, 2022. (ECF Nos. 31, 34.) The Court dissolved the temporary restraining order against RTL on January 20, 2022 (Dkt. 52). RTL then filed a combination Motion to Dismiss, Motion for Summary Judgment and for Attorneys' Fees and Costs on February 14, 2022. (Dkt. 70.) RTL filed the present Renewed Motion for Sanctions on March 7, 2022. (Dkt. 78.)

Additional background facts regarding Expeditee's pre-suit investigation, filing of the original complaint and requests for TRO and PI, are detailed in the PMJ Opposition and will not be repeated here in order to avoid duplication.

### III. LEGAL AUTHORITY

Rule 11 sanctions are drastic remedies not to be imposed lightly. *See, e.g., Lefkovitz v. Wagner,* 219 F.R.D. 592, 592-93 (N.D. Ill. 2004). The party seeking sanctions carries a "high burden" in demonstrating that they are warranted. *Great E. Entm't Co., Inc. v. Naeemi,* No. 14 C 4731, 2015 WL 6756283, at *1 (N.D. Ill. Nov. 5, 2015) (*citing Lundeen v. Minemyer,* No. 09 C 3820, 2010 WL 5418896, at *3 (N.D. Ill. Dec. 17, 2010)). Under Federal Rule of Civil Procedure 11(b)(1), a court may impose sanctions if a plaintiff makes legally frivolous arguments or fails to make a proper prefiling inquiry of the facts. *See Hernandez v. Joliet Police Dep't,* 197 F.3d 256, 265 (7th Cir. 1999). The court must conduct "an objective inquiry into whether the party or his counsel should have known that [its] position is groundless." *Cuna Mut. Ins. Soc'y v. Office & Prof'l Employees Int'l Union,* 443 F.3d 556, 560 (7th Cir. 2006).

IV. ARGUMENT

### A. The Motion Should Be Denied Because RTL Has Not Complied With the Safe Harbor Requirements of Rule 11(c)(2)

Federal Rule of Civil Procedure 11(c)(2) states that the "motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." As this Court has opined, the safe harbor provision is intended to prevent parties from using Rule 11 as a weapon in litigation. *See SFG, Inc. v. Musk,* No. 19-cv-02198, 2021 WL 972887, at *4 (N.D. Ill. Feb. 10, 2021) (*quoting N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 885-86 (7th Cir. 2017) (stating that the purpose of Rule 11's "safe harbor" provision is to reduce weaponization of motions for sanctions)).

RTL admits that it did not comply with the safe harbor provision but argues that the Court should still impose monetary sanctions "under the Court's inherent power" because "the nature of preliminary relief proceedings prevents strict compliance with Rule 11(c)(1)'s safe harbor provision." (Dkt. 79 at 11 (*citing Methode Electronics, Inc. v. Adam Techs., Inc.,* 371 F.3d 923, 924 (7th Cir. 2004).) RTL's argument fails.

RTL's reliance on *Methode* is misplaced as the facts are inapposite. In *Methode,* defendant served plaintiff with a letter three days after the complaint was filed advising Methode that Illinois was not an appropriate venue and of defendant's intention to seek Rule 11 sanctions. *Id.* at 924-25. Neither party had contacts with Illinois and had previously litigated and settled their dispute in New Jersey. *Id.* Methode went forward with filing its TRO after receiving the letter and defendant challenged venue and requested transfer to New Jersey "where venue was clearly proper and where the court was already familiar with the parties and the background of their disputes." *Id.* at 925. Unlike the plaintiff in Methode, Expeditee did not receive notice of RTL's intent to file

its Rule 11 motion prior to Expeditee's request for TRO or PI. (Dkt. 34.) Moreover, RTL admits that it filed its first sanctions motion on January 14, 2021, just *two days* after it had notified PMJ that RTL hadn't received service of the PI motion. (Dkt. 79 at 7.) PMJ investigated the issue and filed an amended Certificate of Service two days later on January 16, 2022. (Dkt. 38.)

Further distinguishing this case from *Methode,*[4] Expeditee has never waived its argument that RTF violated Rule 11(c)(2). RTL has had *months* to serve Expeditee with a draft of this Motion. There is no pending TRO or PI preventing RTL from complying with the 21-day safe harbor requirement. Therefore, RTL has not substantial complied with Rule 11(c)(2).

In addition, RTL elected not to challenge venue and instead filed counterclaims against RTL in this District, thus waiving any objection to both venue and jurisdiction. (Dkt. 31.) Moreover, unlike the parties in *Methode,* both Expeditee and RTL have contacts in Illinois. Expeditee maintains a corporate services address in Chicago,[5] conducted much of the pre-suit investigation here and hired attorneys in the District. (*See* Decl. of Patrick Jones in Supp. of PMJ's Opp'n to Motion ("Jones Decl."). ¶¶ 4-10.) RTL advertises in Illinois, ships its infringing products to Illinois, and filed its counterclaim against Expeditee *in this District*. (ECF Nos. 1 at ¶ 7, 31.) Therefore, personal jurisdiction and venue are proper here.

RTL admitted during the recent status conference that it intentionally filed the Motion for Summary Judgment along with its Motion to Dismiss and Attorneys' Fees (Dkt. 70) for the purpose of preventing Expeditee from amending or withdrawing any of its claims – the exact opposite of Rule 11's intended purpose. The Rule 11(c)(2) requirements are "not merely an empty

---

[4] *Id.* at 927.
[5] The statement indicating that Expeditee was incorporated in Nevada was an innocent mistake based on a Nevada address appearing in the U.S. Patent and Trademark Office ("USPTO") online record of registration for the Mark. Expeditee has never been incorporated in Nevada and does not know where the Nevada address came from. Once it became aware of the mistake, Expeditee corrected its location of incorporation in subsequent filings. (Dkt. 53.)

formality." *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025 (7th Cir.1999). Failure to comply with the safe harbor provision may subject the movant itself to sanctions under FRCP 11. *See* 1993 Advisory Committee Notes to FRCP 11(b) and (c). This reason alone is sufficient to warrant denial of the Motion.

### B. Sanctions Are Inappropriate Because Expeditee Conducted an Objectionably Reasonable Pre-Suit Investigation

Even if the Court finds that RTL satisfied the requirements of Rule 11(c)(2), sanctions are inappropriate. While Rule 11 typically does not require a showing of bad faith, the primary determination under Rule 11 is whether the signing attorney conducted an inquiry into the factual and legal basis of the challenged document that was objectively reasonable under the circumstances. *See, e.g., Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 205 (7th Cir.1985).

Recognizing that it hasn't complied with Rule 11, RTL argues that the Court should nevertheless award sanctions under its inherent power. (Dkt. 79 at 10.) While the Court has the inherent power to sanction frivolous and vexatious conduct, such sanctions are appropriate only "where the offender has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Salmeron v. Enter. Recovery Sys., Inc.* 579 F.3d 787, 793 (7th Cir. 2009). Because of their potency, courts must exercise "restraint and discretion" before exercising their inherent powers to sanction parties for misconduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991).

Expeditee did not bring this lawsuit in bad faith. Rather, Expeditee brought its claims to stop the rampant copying of its original designs and sales of cloned "knockoffs" to unsuspecting customers. *Id.* RTL argues that Expeditee should be sanctioned because it alleged in its original complaint and TRO supporting documents that: (1) the defendants listed in Exhibit I sold products bearing the FLAGWIX Mark; and (2) were mostly located outside the U.S. (Dkt. 12.) Expeditee's statements do not support sanctions under either Rule 11 or the Court's inherent power as

explained below.

### 1. RTL's Blatant Copying of Expeditee's Product Listing Supports Expeditee's Claims

Expeditee conducted a reasonable pre-suit investigation and even hired an experienced third party investigator to help it locate counterfeit products. (*See* Jones Decl., ¶¶ 7-8.) During its pre-suit investigation, Expeditee, PMJ and the investigator searched for unauthorized uses of its FLAGWIX Mark, locating numerous instances of infringement. (*Id.*) As a result, Expeditee discovered RTL's social media post detailed in Section I above which showed ***RTL had taken Expeditee's product listing photograph and used it as its own***. *See* Table 1 *supra.*

Given the nearly identical flag design, slogan, product name and photograph used to display the product, there is no doubt that RTL intentionally and unlawfully copied Expeditee's FLAGWIX-branded product. By doing so, RTL attempted to pass off its knockoff as an authentic FLAGWIX flag, resulting in likelihood of confusion as to the source, sponsorship, approval or certification of RTL's product. Such evidence supports Expeditee's unfair competition and false designation of origin claim under 15 U.S.C. § 1125(a) of the Lanham Act (Dkt. 1, ¶¶ 38-48) and violation of the Illinois Uniform Deceptive Trade Practices Act (Dkt. 1, ¶¶ 49-54). Therefore, Expeditee had a factual and legal basis for its claims satisfying Rule 11(b)(3).

Understandably, RTL attempts to ignore these claims and focus only on Expeditee's claim under 15 U.S.C. § 1114 alleging infringement of the Mark. However, RTL's argument fails because Expeditee's claim was not brought in bad faith or for any improper purpose, and was not frivolous. RTL copied everything in Expeditee's product listing, including the flag design, slogan, product name ***and the photograph itself***. *See* Table 1 *supra.* Expeditee's authentic product listing shows the FLAGWIX Mark in the upper left hand corner of the flag. Contrary to RTL's assertion, Ms. Vo did not lie in her declaration. The Mark is difficult to see on the small, compressed images

and Expeditee was reviewing hundreds of images from over a hundred separate infringers. (Dkt. 1, Ex. 1.) While reviewing the hundreds of infringements, Expeditee accidentally missed that RTL and some other defendants had blurred or cropped out the Mark from the pilfered photographs and only discovered the mistake when RTL pointed out the lack of visible Mark in its January 13, 2022 email to PMJ. (Jones Decl., ¶ 14.)

Given the *identical* recreation of Expeditee's listing and the fact that RTL's social media post came up during a search for the Mark, Expeditee's belief that RTL had used the Mark was objectionably reasonable under the circumstances. RTL's social media page and website supported Expeditee's belief that RTL was using the Mark in hidden text and metatags embedded in its pages. The fact that RTL took down its One Nation Under God product from its Facebook page and website after the Complaint was filed[6] further indicated that Expeditee's claims had support, and that additional evidence would be uncovered during discovery. "When necessary evidence is in the opposing party's exclusive possession, counsel may file a complaint based on reasonable inferences from whatever evidence is available, notwithstanding Rule 11." *Vista Mfg., Inc. v. TRAC-4, Inc.*, 13 F.R.D. 134, 143 (N.D. Ind. 1990) (*quoting Lebovitz v. Miller,* 856 F.2d 902 (7th Cir. 1988)).

In addition to the claims asserted in Expeditee's original complaint, RTL's actions also support claims for trade dress infringement under Section §·1125(a)(3) and copyright infringement under 17 U.S.C. § 501. "The Lanham Act permits a civil action against any person who uses 'any word, term, name, symbol, or device' 'in connection with any goods or services' in a manner which 'is likely to cause confusion' as to the source of those goods or services." *Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, 491 (7th Cir. 2019); *see also Blau Plumbing, Inc. v. S.O.S.*

---

[6] Jones Decl., ¶ 13.

*Fix-It, Inc.*, 781 F.2d 604, 608 (7th Cir. 1986) (recognizing that "trade dress is a form of trademark"). Expeditee has sought leave to file its FAC to add these claims. (Dkt. 88.)

### 2. *Expeditee's Statement that Most of the Defendants Were Based Outside the U.S. Was Supported By Evidence*

RTL's argument that Expeditee should be sanctioned because it stated that "most" of the Defendants listed in Exhibit I were based outside the U.S. must fail. First, RTL has presented no evidence that the statement is false with respect to any other defendant. In addition, Expeditee gathered evidence during its pre-suit investigation that supported its belief that RTL was based, at least in part, outside the U.S. RTL's One Nation Under God product advertisement (as shown in Table 1 *supra*) was posted on RTL's Facebook page which stated it was managed, at least in part, ***from the Philippines***. (Declaration of Lena Bacani ("Bacani Decl."), ¶ 3.) While RTL argues that its website lists a Connecticut address, that alone is insufficient to prove RTL does not conduct operations outside the U.S. Many foreign-based companies maintain mail stops in the U.S.

For the foregoing reasons, Expeditee had ample basis to assert claims and seek a TRO against RTL. This fact distinguishes the present case from the cases cited by RTL. (Dkt. 79 at 14.) Because neither its claims nor the TRO were frivolous, objectionably unreasonable, or brought in bad faith, sanctions under Rule 11 or the Court's inherent power are inappropriate.

### C. RTL's Motion Should Be Denied as Untimely and/or Moot

RTL's Motion is untimely and moot because it seeks sanctions based on statements that Expeditee's former counsel, PMJ, already corrected and which Expeditee has sought to amend in its FAC. Imposing Rule 11 sanctions for statements made in a pleading before the nonmoving party has an opportunity to replead is premature. *See, e.g., Salem v. Kozlov,* No. 15 C 8997, 2016 WL 4169102, at *7-8 (N.D. Ill. Aug. 8, 2016) (finding proper time for addressing Rule 11 sanctions motion was after plaintiff had opportunity to replead); *U.S. ex rel. Ivanich v. Bhatt,* No.

13 C 4241, 2015 WL 249413, at *3 (N.D. Ill. Jan. 20, 2015) (holding that motion for sanctions was premature at "early stage of proceedings" and permitting plaintiff opportunity to file second amended complaint). When a Rule 11 motion is based on factual allegations in pleadings, its resolution should be deferred until "the end of the litigation," after the pleader "has had an adequate opportunity to develop his proof." *Kaplan v. Zenner,* 956 F.2d 149, 152 (7th Cir. 1991).

Expeditee has requested leave to file a FAC to address RTL's complaints and add trade dress and copyright infringement claims against RTL based on the evidence already gathered in Expeditee's pre-suit investigation. (Dkt. 88.) Therefore, it is inappropriate to impose sanctions for allegations in the original complaint that Expeditee seeks to amend.

Moreover, RTL's Motion is moot because Expeditee already corrected the alleged misstatements prior to RTL's filing of this Motion. As explained in PMJ's Opposition, PMJ filed the original complaint under a pseudonym to avoid defendants' destruction of evidence and disclosed Expeditee's name to the Court in the civil cover sheet filed the same day. (PMJ Opp'n at 2; Dkt. 1, 3, 4) Expeditee also filed an amended Corporate Disclosure Statement on January 23, 2022 that clarified that, while it did maintain its corporate services address in Chicago, it was incorporated in Delaware (not Nevada) with primary business operations in Vietnam. (Dkt. 53.) Expeditee's former counsel, PMJ, clarified on the record that it did not currently have evidence showing RTL's display of the FLAGWIX Mark on RTL's product because RTL had cropped it out of the picture and didn't know whether RTL was based in China. (Dkt. 66 at 27-28.) The Motion is moot with respect to these statements because the Court already granted RTL's motion to dissolve the TRO against RTL prior to filing of this Motion. (Dkt. 55.)

### D. Monetary Sanctions Against Expeditee are Inappropriate

Based on the foregoing, RTL is not entitled to any sanctions under either Rule 11 or this Court's inherent authority. Monetary sanctions against a represented party are inappropriate where the basis of the award is a frivolous legal position. *See, e.g., Dearborn St. Bldg. Assoc., LLC,* 411 Fed.Appx. 847, 852 (6th Cir. 2011). To the extent RTL is basing its request for monetary sanctions on its assertion that RTL has not infringed the registered Mark in violation of § 1114 (a fact in dispute), Expeditee should not be required to pay such sanctions because it was represented by counsel at the time the § 1114 claim was asserted in the original complaint and TRO. (*See,* Dkt. 77.)

### E. Terminating Sanctions are Unwarranted

Terminating sanctions are rarely granted under Rule 11 and usually only for willful misconduct. *See, e.g., King v. Fleming,* 899 F.3d 1140, 1148-54 (10th Cir. 2018) (affirming dismissal of all claims where party knowingly filed a materially and fraudulently altered email). RTL's statement that terminating sanctions are appropriate because it is "undisputed" that RTL has not used the Mark which "disposes of each claim set forth in Plaintiff's complaint" (Dkt. 79 at 14) not only falls far short of the willful misconduct required for terminating sanctions, but is also categorically false.

RTL does not contend that Expeditee altered any of the evidence it submitted with its complaint or request for TRO. Indeed, the only alteration appears to be from RTL itself, when it blurred and cropped the FLAGWIX Mark out of the One Nation Under God product photograph.

RTL's use, or nonuse, of the Mark is disputed. Expeditee continues to believe that RTL used the Mark in hidden text and metatags on its website to attract and confuse customers looking for authentic FLAGWIX products. RTL took down all posts and webpage listings for the product

after the original complaint was filed. RTL's clear misappropriation of Expeditee's design, slogan and photograph, and intentional blurring of the Mark from Expeditee's photograph to hide its true origin, raise serious concern that the cloned products include the Mark. Expeditee is entitled to take further discovery on these issues.

Moreover, even if RTL did not use the Mark, that would not dispose of the remaining claims. RTL still unlawfully copied Expeditee's One Nation Under God flag product and product listing. Such misconduct supports Expeditee's existing unfair competition and false designation of origin claims under 15 U.S.C. §·1125(a) of the Lanham Act (Dkt. 1, ¶¶ 38-48) and violation of the Illinois Uniform Deceptive Trade Practices Act (Dkt. 1, ¶¶ 49-54). In addition, these same facts support Expeditee's copyright and trade dress infringement claims outlined in its FAC. Expeditee has ample evidence that RTL willfully infringed Expeditee's valuable intellectual property rights. Contrary to RTL's false and incendiary accusations, Expeditee did not file a frivolous case or attempt to extort RTL or any other defendants. Therefore, no sanctions, much less terminating sanctions, are appropriate.

## V. CONCLUSION

For the foregoing reasons, Expeditee respectfully requests the Court DENY RTL's Renewed Motion for Sanctions in its entirety.

Dated: May 19, 2022 Respectfully Submitted,

LOZA & LOZA LLP

/s/ *Lena N. Bacani*
Lena N. BacaniI (admitted *pro hac vice*)
Lena.bacani@lozaip.com
Marie Richmond (admitted *pro hac vice*)
Marie.richmond@lozaip.com
305 N. Second Ave., #127
Upland, CA  91786
Tel:  (213) 394-3625


ARONBERG GOLDGEHN DAVIS & GARMISA
Matthew De Preter
330 N. Wabash Ave. Suite 1700
Chicago, IL 60611
(p) 312.828.9600
(f) 312.828.9635
cdepreter@agdglaw.com


*Attorneys for Plaintiff, Expeditee LLC*

14  **OPP'N TO RJITSCT LLC'S
RENEWED MOT. FOR SANCTIONS**
Case No.: 1:21-cv-06237

## CERTIFICATE OF SERVICE

      I hereby certify that on May 19, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.

      By: /s/ _Lena N. Bacani_____
           Lena N. Bacani