IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Expeditee LLC., <br><br> *Plaintiff*, <br><br> v. <br><br> THE ENTITIES listed on EXHIBIT 1, <br><br> *Defendants*, <br><br> ──────────────────── <br><br> RJITSCT LLC d/b/a Respect The Look, <br><br> *Counterclaim-Plaintiff*, <br><br> v. <br><br> Expeditee LLC, <br><br> *Counterclaim-Defendant.* | Case No.: 1:21-cv-6237 <br><br> Judge Andrea R. Wood <br><br> <u>Jury Trial Demanded</u> |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
RJITSCT LLC D/B/A RESPECT THE LOOK'S MOTION FOR SANCTIONS**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

I. Plaintiff and PMJ admit and offer no justification for their willful misconduct. ............... 2

    A. Plaintiff and PMJ indisputably lied to the Court about Respect The Look's use of the FLAGWIX mark and Respect The Look's domicile. ......................................... 2

    B. PMJ's opposition admits to additional lies to the Court regarding Plaintiff's domicile and purported execution of service. ............................................................... 6

II. Plaintiff and PMJ may not take refuge in the safe harbor provision of Rule 11(c)(2). ........................................................................................................................... 9

III. Plaintiff's dubious new infringement allegations do not justify Plaintiff's sanctionable misconduct. ................................................................................................. 13

IV. The appropriate sanction is dismissal with prejudice and an award of Respect The Look's attorney fees against both Plaintiff and PMJ. ....................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**

*Corley v. Rosewood Care Center, Inc.*,
   142 F.3d 1041 (7th Cir. 1998) .................................................................................................. 10

*Dearborn Street Bldg. Assocs., LLC v. Huntington Nat. Bank*,
   411 Fed. Appx. 847 (6th Cir. 2011) .......................................................................................... 15

*Divane v. Krull Elec. Co., Inc.*,
   200 F.3d 1020 (7th Cir. 1999) ............................................................................................ 10, 12

*Engel v. Vitale*,
   370 U.S. 421 (1962) .................................................................................................................. 13

*Expeditee LLC v. The Entities Listed on Exhibit 1*,
   No. 1:21-cv-6440, 2022 WL 1556381 (N.D. Ill. May 17, 2022) ............................................... 7

*F&G Scrolling Mouse, L.L.C. v. Microsoft, Inc.*,
   56 F. Supp. 2d 1005 (N.D. Ill. 1999) ......................................................................................... 7

*Fuentes v. Shevin*,
   407 U.S. 67 (1972) ..................................................................................................................... 9

*In re Bagdade*,
   334 F.3d 568 (7th Cir. 2003) ..................................................................................................... 8

*Methode Electronics, Inc. v. Adam Technologies, Inc.*,
   371 F.3d 923 (7th Cir. 2004) ........................................................................................ 10, 11, 12

*Ridge Chrysler Jeep, LLC v. Daimler Chrysler Servs. N. Am.*,
   No. 03 C 760, 2006 WL 2808158 (N.D. Ill. Sept. 6, 2006) .............................................. 14, 15

**Statutes**

18 U.S.C. § 1621 .............................................................................................................................. 1

**Rules**

Fed. R. Evid. 407 .......................................................................................................................... 14

Federal Rule of Civil Procedure 11 ..................................................................................... 1, 9, 15

Illinois Rule of Professional Conduct 3.1 ................................................................................ 1, 15

Illinois Rule of Professional Conduct 3.3 ............................................................................ 1, 4, 15

# INTRODUCTION

Neither Plaintiff Expeditee, LLC ("Plaintiff" or "Expeditee") nor its former counsel PMJ PLLC ("PMJ") offer any justification for the false statements they submitted to the Court to obtain an unwarranted *ex parte* TRO. Relying on those false statements, the Court wrongly granted a TRO against not just RJITSCT LLC d/b/a Respect The Look ("Respect The Look"), but against dozens of other defendants who did not use Plaintiff's FLAGWIX mark and did not sell counterfeit products. And Plaintiff obtained that wrongful TRO, as PMJ now admits, for the express purpose of suppressing competition during the profitable holiday season. Plaintiff's and its representative Taylor Vo's actions violated Federal Rule of Civil Procedure 11(b)(1)-(3) and possibly 18 U.S.C. § 1621, the statute prohibiting perjury. PMJ and PMJ attorney Patrick Jones's actions violated the same rule and statute, as well as Illinois Rules of Professional Conduct 3.1, 3.3(a)(1), and most importantly 3.3(d). Terminating sanctions and attorney fee awards are appropriate when a party submits false statements of fact, false declarations under oath, and fraudulent certificates of service to obtain an *ex parte* TRO. The Court should not allow Plaintiff to take refuge in the safe harbor provision of Rule 11(c)(2), as Seventh Circuit precedent and basic fairness dictate that a party cannot invoke the emergency procedures of an *ex parte* TRO, and then complain that the wrongfully restrained defendant brought a motion for sanctions immediately rather than suffer three more weeks of irreparable harm. Nor should the Court allow itself to be distracted by Plaintiff's new allegations of infringement of an unregistered copyright or an implausible and unregistered trade dress, neither of which were presented as part of Plaintiff's *ex parte* TRO application and neither of which could have supported an *ex parte* TRO application. The Court should accordingly grant Respect The Look's motion for sanctions in full, dismiss Plaintiff's complaint with prejudice, and award Respect The Look the attorney fees it has incurred defending this wrongfully brought and even more wrongfully litigated lawsuit.

# ARGUMENT

## I. Plaintiff and PMJ admit and offer no justification for their willful misconduct.

Plaintiff and PMJ's opposition briefs do not offer any factual defense of their misrepresentations to the Court in support of Plaintiff's *ex parte* application for a TRO. If anything, their oppositions should be considered aggravating factors in a sanctions analysis, as Plaintiff offered no evidence—such as a declaration from Taylor Vo—to explain the basis for its misrepresentations to the Court, while PMJ, in attempting to excuse its previous lies, admitted to additional earlier lies to the Court, particularly with respect to its certificates of service.

### A. Plaintiff and PMJ indisputably lied to the Court about Respect The Look's use of the FLAGWIX mark and Respect The Look's domicile.

Plaintiff and PMJ affirmatively stated to the Court, in both filings and in sworn declarations under oath, that: (1) Respect The Look (and all other defendants) used the FLAGWIX Mark on their products and internet advertising, and (2) Respect The Look (and all other defendants) were Chinese companies whose assets needed to be restrained on an *ex parte* basis to ensure that Plaintiff could obtain damages for alleged counterfeiting. These statements were the basis for Plaintiff's *ex parte* TRO, and they were false—willfully false as to the FLAGWIX Mark, and at least recklessly false as to Respect The Look's domicile.

Plaintiff's TRO application explicitly alleged that the defendants sold products bearing the FLAGWIX Mark – not that they used the mark in website metadata or infringed other aspects of Plaintiff's designs:

- "As alleged in the Complaint, the Defendants are promoting, advertising, marketing, distributing, offering for sale and selling counterfeit products, **bearing counterfeit versions of Plaintiff's Mark** . . ." Dkt. No. 11 at 9 (emphasis added).

- "Defendants deceive the public by . . . using websites to sell and/or offer for sale unlicensed and **counterfeit** products **featuring the Mark**." *Id.* (emphasis added).

- "The primary way in which Defendants advertise the sale of **Counterfeit Products** on the infringing websites **is by displaying the Mark and images of the product, featuring the Mark.**" *Id.* at 10 (emphasis added).

- "The Defendants are selling low-quality **counterfeit** versions of products that are similar to Plaintiff's products **and use counterfeit marks identical to the Mark**." *Id.* at 18 (emphasis added).

- "As Plaintiff has demonstrated, Defendants have been profiting from the sale of **counterfeit Plaintiff products using the Mark**." *Id.* at 22 (emphasis added).

- "Defendants' primary method of driving consumer traffic to the Infringing Websites and Webstores . . . is through the **unlawful use of the Mark** . . ." *Id.* at 24 (emphasis added).

These statements were false not only as to Respect The Look, but as to nearly half the defendants named in this lawsuit. Dkt. No. 66 at 12:12-17.

And these statements were not only included in the TRO application, but in sworn declarations under oath submitted by Patrick Jones and Taylor Vo. Vo, Plaintiff's "CEO Assistant," submitted a declaration under oath, in support of Plaintiff's application for a TRO, stating that Plaintiff conducted investigations revealing that the Defendants were selling "Counterfeit Products" to consumers in the United States using the FLAGWIX Mark without authorization. Dkt. No. 12 at ¶¶ 10-11. Jones submitted a sworn declaration as well stating that "[a] listing of **Defendants' unauthorized use of Mark** [sic]" was filed under seal as Exhibit 1 to the Complaint, that this exhibit "was prepared by the Plaintiff and its employees or contractors," and that Mr. Jones "authenticated the listings [him]self." Dkt. No. 13 at ¶ 5. He further stated, again in his sworn declaration, that in the exhibit, "selected screenshots of the listings from Defendants' Infringing Webstores appear **with the Mark listed in the listing title, images associated with the listing, and/or within the description of the product itself.**" *Id.*

The statements contained in the TRO application and declarations (as well as the similar statements in the original Complaint, which are detailed in Respect The Look's opening brief, Dkt. No. 79 at 2) were willfully false. Neither PMJ's nor Plaintiff's opposition offers any factual

basis for the allegations throughout the TRO application that Respect The Look used the FLAGWIX Mark. PMJ offers as an excuse that it "had a very limited timeframe to conduct an investigation" because the counterfeiting was "leading up to Christmas, the most profitable season for Plaintiff." Dkt. No.. 97 at 11-12. First, a limited timeframe cannot excuse a deliberate lie to the Court, especially one submitted in an *ex parte* filing. Illinois Rule of Professional Conduct 3.3(a)(1) prohibits a lawyer from knowingly making a false statement of fact or law to a tribunal. Illinois Rule of Professional Conduct 3.3(d) imposes a heightened duty on lawyers in an *ex parte* proceeding, requiring the lawyer to "inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse." There is no excuse for PMJ to have made material statements to the court, especially in sworn declarations and especially in an *ex parte* proceeding, that it knew to be false. Second, PMJ offers no corroboration for its claim to have made any reasonable investigation, as its supporting declaration includes no pre-suit investigation memorandum or similar documentation. Dkt. No. 97, Ex. A at ¶¶ 6-10. And third, that Plaintiff rushed a TRO application to the Court before the Christmas season is an aggravating factor, not a mitigating factor: PMJ effectively has admitted a core allegation of Respect The Look's counterclaim, that "Counterclaim-Defendant misused this Court's *ex parte* TRO procedures to interfere with Respect The Look and other defendants' ability to compete with Counterclaim-Defendant during the critical holiday sales season." Dkt. No. 31 at ¶ 48. The Christmas season is the most profitable time of year for Respect The Look as well as Plaintiff. Plaintiff and PMJ's admission shows that their false statements were not just made recklessly, but maliciously with the intent to suppress Plaintiff's competition during the "most profitable season" for both Plaintiff and Respect The Look.

Plaintiff and PMJ also deceived the Court about Respect The Look's domicile, and PMJ continued to deceive the Court about Respect The Look's domicile at the preliminary injunction hearing. The TRO application alleges that "Plaintiff . . . has good cause to suspect that many of the Defendants are residents of China." Dkt. No. 11 at 30. Vo's sworn declaration affirmatively states that Plaintiff's investigations "have established that Defendants are using the various websites and webstores . . . to sell Counterfeit Products from foreign countries such as China to consumers in the United States . . ." Dkt. No. 12 at ¶ 11. Even after Respect The Look filed evidence showing RJITSCT LLC's Connecticut registration and address (Dkt. Nos. 35-1 at ¶ 2-4, 35-2), Jones persisted in his false statements to the Court, claiming that Respect The Look uses a false name on its PayPal website, and is "a foreign entity owned by somebody called Reginald Jennings." Dkt. No. 66 at 14:13-21. He then represented to the Court that he believed, solely because Respect The Look uses a P.O. Box for its mailing address, that "given a couple of days, we can track down where they actually are, but they're not domiciled in the United States as the opposing party claims. That's false." Dkt. No. 66 at 15:2-5.

In their oppositions, Plaintiff and PMJ again present evidence that aggravates their misconduct, rather than mitigating it. Plaintiff points to Respect The Look's Facebook page as being managed from the Philippines (as well as the United States) as a purported basis for its previous representations to the Court, even though that evidence had never previously been presented in connection with Plaintiff's *ex parte* TRO application. Dkt. Nos. 98 at 10, 98-1. But the same webpage identifies Respect The Look's corporate name, RJITSCT LLC. Dkt. No. 98-1. And a simple Google search for "RJITSCT LLC" would have instantly revealed to Plaintiff that RJITSCT LLC is a limited liability company registered under the laws of Connecticut and located at 1 Columbia Street in New Britain, Connecticut. Reply Declaration of Brian J. Beck

("Beck Reply Decl."), Ex. 1. PMJ, meanwhile, continues to stand by its absurd claim that the fact that a party uses a U.S. Post Office Box for its mailing address is evidence of a foreign domicile. Dkt. No. 97 at 13, Ex. A at ¶ 10. But again, neither PMJ nor Plaintiff informed the Court at the time it made its *ex parte* application for a TRO that its sole basis for alleging Respect The Look to be a Chinese, or at least foreign, company, was that it used a U.S. Post Office Box for a mailing address. Again, this is a violation of not only Rule 11 but of Illinois Rule of Professional Conduct 3.3(d), requiring a lawyer to inform the tribunal of "all material facts known to the lawyer," not just the facts that purportedly support the client's case.

> **B.    PMJ's opposition admits to additional lies to the Court regarding Plaintiff's domicile and purported execution of service.**

PMJ also lied to the Court about Plaintiff's principal place of business multiple times, as well as about Plaintiff's purported service of the complaint, TRO, and motion for preliminary injunction. The original Complaint alleges that Plaintiff's principal place of business is in Chicago, Illinois. Dkt. No. 1 at ¶ 1. However, Plaintiff is not registered to do business in Illinois. Dkt. No. 35-14. At the preliminary injunction hearing, when the Court asked Jones about Plaintiff's principal place of business, Jones **did not** state that the Complaint contained an accidental error, but affirmatively told the Court that Plaintiff's address in Chicago was "125 South Clark Street, 17th Floor, Chicago, Illinois 60603." Dkt. No. 66 at 19:24-20:2. And that lie may have gone unnoticed, had Respect The Look's counsel not pointed out that this address was curiously the same as PMJ's address. *Id.* at 21:4-13. At that point, in response to the Court's questions, Jones continued to state that Plaintiff shared office space with PMJ, even though it had no employees at that address, or indeed, anywhere in the United States. *Id.* at 21:11-22:18.

Now in its opposition, PMJ compounds its lie by claiming that its representation that Plaintiff's principal place of business was in Chicago was **not** based on any purported use of

PMJ's office for registration of intellectual property, but was based on Plaintiff's use of an agent located at 900 South Clark Street in Chicago. Dkt. No. 97 at 8. First, that PMJ now claims to rely on an agent for service of process located at 900 South Clark Street instead of PMJ's own offices implicitly admits that PMJ intentionally lied to the Court at the preliminary injunction hearing when it said that Plaintiff's address was 125 South Clark Street. Second, any competent attorney should know that the legal term of art "principal place of business" refers to a corporation's "nerve center," which "should normally be the place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010).

This lie was material, even though Respect The Look chose to file a counterclaim and pursue its legal remedy in this Court rather than exercise its right to seek a transfer of venue. In the other "Schedule A" lawsuit filed by Expeditee, the Court granted several defendants' motion to dismiss for lack of personal jurisdiction who were similarly situated to Respect The Look in that their only connection to Illinois was that they operated websites, not targeted to Illinois customers, that could be accessed by Illinois residents. *Expeditee LLC v. The Entities Listed on Exhibit 1*, No. 1:21-cv-6440, 2022 WL 1556381, at *4 (N.D. Ill. May 17, 2022). And because neither Plaintiff nor Respect The Look has any ties to this district, Respect The Look would have been well within its rights to move to transfer this case to the District of Connecticut. *See F&G Scrolling Mouse, L.L.C. v. Microsoft, Inc.*, 56 F. Supp. 2d 1005, 1007 (N.D. Ill. 1999). If Plaintiff "had no reason to mislead the Court as to its principal place of business," it would be baffling that PMJ and Plaintiff have exerted so much effort in attempting to find some basis to claim that Plaintiff had a principal place of business in Chicago.

Similarly, PMJ's opposition aggravates, rather than mitigates, the fraudulent certificate of service it filed on January 10, 2022. The Certificate of Service, sworn to under oath by Jones,

states that Jones, "[o]n January 10, 2022, . . . caused to be served true and accurate copies of" the summons, complaint, *ex parte* TRO, and motion for preliminary injunction "via email on the Defendants listed on Schedule A." Dkt. No. 28. When Plaintiff was alerted to Respect The Look's not having been served, Plaintiff filed an amended certificate of service on January 16, 2022, stating that the failure of service was "[d]ue to a miscommunication between the Plaintiff and its counsel." Dkt. No. 38. Now, PMJ tells a different story, claiming that it "asked PayPal to provide [to the defendants] the information and necessary documents," and "[a]t the time, PMJ reasonably believed that PayPal had provided the information and documents to the PayPal defendants." Dkt. No. 97 at 9. In other words, contrary to Jones's representations under oath in his January 16 amended certificate of service, PMJ actually depended on non-party PayPal to serve defendants, even though PayPal was under no legal obligation to do so. Then, apparently without receiving any communication from PayPal that service had been effected, Jones falsely told the Court that he had caused the defendants to be properly served with the complaint and TRO. PMJ could not have reasonably believed that asking a non-party to email the defendants, without receiving any response from the non-party, constituted adequate service. And if PMJ's statements in its opposition are true, PMJ's January 16 certificate of service, blaming the error on its client when the client apparently had no part in sending the service emails, was also willfully false. Filing a fraudulent certificate of service is a serious offense that has not only resulted in awards of fees and monetary sanctions, but in attorney discipline. *See In re Bagdade*, 334 F.3d 568, 583, 586 (7th Cir. 2003).

      Again, this lie was material. Had Respect The Look's counsel not conducted an independent investigation and filed its original motion for sanctions, it is likely that PMJ would never have corrected the record, and over 100 defendants would never have been served with the

complaint, TRO, preliminary injunction, and ultimately default judgment against them. PMJ complains that Respect The Look filed its motion for sanctions "less than 48 hours after contacting the Plaintiff and PMJ," but omits the fact that the afternoon of Friday, January 14, 2022, was the very last minute that Respect The Look could file its motion: the Court had scheduled a preliminary injunction hearing for January 18, 2022, at 9:00 a.m., and January 17 was a court holiday. Service of process is not a mere formality, it is an integral part of the right to procedural due process: "Parties whose right are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). That Respect The Look's independent investigation and last-minute emergency motion practice ultimately limited the damage done by PMJ's fraudulent certificate of service does not excuse PMJ's willful misconduct.

**II.     Plaintiff and PMJ may not take refuge in the safe harbor provision of Rule 11(c)(2).**

Both Plaintiff and PMJ's primary arguments against sanctions are based on the safe harbor provision of Rule 11(c)(2), but both Plaintiff and PMJ ignore that: (1) emergency circumstances created by Plaintiff forced Respect The Look to file its motion for sanctions without waiting the standard 21 days; and (2) 21 days after Respect The Look filed its original motion for sanctions, Plaintiff had still not withdrawn the offending statements. Respect The Look suffered irreparable harm from Plaintiff's fraudulently obtained TRO. At the preliminary injunction hearing, Respect The Look's owner Reginald Jennings testified that he would have to shut down his business and let go of his personnel if the TRO continued for months. Dkt. No. 66 at 34:22-35:8. Plaintiff argues that the motion for sanctions is now moot because the Court has denied Plaintiff's motion for a preliminary injunction (Dkt. No. 98 at 3), but that would reward Plaintiff for making its false statements of fact and frivolous legal claims in an *ex parte* application, by forcing Respect The Look to choose between moving immediately to dissolve the

TRO or waiting to file a motion for sanctions. This is precisely why the Seventh Circuit affirmed sanctions despite the moving party's technical failure to comply with Rule 11's safe harbor provision in *Methode Electronics, Inc. v. Adam Technologies, Inc.*, 371 F.3d 923, 927-928 (7th Cir. 2004). The cases on which Plaintiff and PMJ rely to argue that the safe harbor provision requires denial of Respect The Look's motion do not concern TRO or preliminary injunction practice, or any other circumstance in which "blind adherence to the procedures in Rule 11 is not possible." *Compare Methode*, 371 F.3d at 927, to *Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1058 (7th Cir. 1998); *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025-1026 (7th Cir. 1999).

      Plaintiff's attempt to distinguish *Methode* illustrates the absurdity of allowing Plaintiff and PMJ to take refuge in the safe harbor provision here. Plaintiff argues that in *Methode*, the defendant served plaintiff with a letter three days after the complaint was filed advising of the defendant's intent to file a Rule 11 motion, while here, "Expeditee did not receive notice of RTL's intent to file its Rule 11 motion prior to Expeditee's request for TRO or PI." Dkt. No. 98 at 6. But that distinction exists because here, Respect The Look was not even served with Expeditee's request for TRO or a preliminary injunction until after Respect The Look filed its motion for sanctions. It is the height of audacity to file an *ex parte* application for a TRO under seal containing willfully and materially false factual allegations, and then to seek to evade sanctions for that misconduct because Respect The Look, having never been served with the *ex parte* application, could not serve notice of its intent to move for sanctions earlier.

      Contrary to Plaintiff and PMJ's claims, Respect The Look communicated with PMJ before filing its motion for sanctions, and waited until the last minute to give Plaintiff and PMJ the chance to correct their filing and their fraudulent certificate of service. Respect The Look was

not provided with the case number for this lawsuit and PMJ's email address until January 7, 2022. Dkt. No. 35-6. Respect The Look obtained counsel on January 12, 2022. Dkt. No. 35-7 at ¶ 13. Respect The Look's counsel immediately contacted PMJ that day to request the evidence of infringement (which at that point remained under seal) and the purported service email to Respect The Look. Dkt. No. 35-19. The next day, Respect The Look's counsel asked PMJ if it the evidence of alleged infringement submitted in support of the TRO application indeed lacked the word "Flagwix," and again asked for a copy of the service email. Dkt. No. 35-20. As of 3:00 p.m. on January 14, 2022, PMJ still had not responded to Respect The Look's counsel's email. Dkt. No. 35-7 at ¶ 15. And at that point, as explained previously, Respect The Look had no choice but to file its motion, as a preliminary injunction hearing was scheduled for 9:00 a.m. on January 18, and the court would be closed January 15-17. Dkt. No. 29. Like the defendant in *Methode*, Respect The Look attempted to give Plaintiff and PMJ every opportunity to correct its error, but could not have waited any longer to file without risking that the preliminary injunction would be granted and that Respect The Look's business would be destroyed.

And despite being served with the original motion for sanctions on January 14, 2022, Plaintiff did not attempt to take advantage of the safe harbor provision by correcting its filings within 21 days. At the hearing on January 20, 2022, when the Court granted Respect The Look's motion to dissolve the TRO and denied Plaintiff's motion for a preliminary injunction as to Respect The Look, the Court set a briefing schedule on the motion for sanctions, and PMJ requested 21 days to respond. Dkt. No. 67 at 8:8-19. The Court accordingly set a deadline of February 10, 2022, for Plaintiff's response. Dkt. No. 55. Plaintiff did not respond on February 10, 2022, and a status hearing was held on February 15, 2022. Dkt. No. 77. Plaintiff did not voluntarily dismiss Respect The Look or attempt to amend its complaint within those 21 days,

though it could have done so as of right until Respect The Look filed its motion for summary judgment on February 14, 2022. Having failed to take advantage of the 31 days between the filing of Respect The Look's motions for sanctions and for summary judgment, Plaintiff and PMJ cannot now complain that they had no opportunity to withdraw or correct their papers. This case is accordingly similar to *Divane*, 200 F.3d at 1026-1027, in which the moving party served a motion for sanctions, the district court allowed the non-moving party time to substantiate or amend its allegations, the non-moving party failed to do so, and the moving party then served a new motion for sanctions on substantially the same basis at the same time it filed the motion on the non-moving party. The Seventh Circuit held that under those circumstances, the moving party "effectively complied with the twenty-one day safe harbor provision of Rule 11(c)(1)(A)," and affirmed the District Court's grant of sanctions. *Id.* at 1027. Plaintiff was served with Respect The Look's motion for sanctions on January 14, 2022, failed to withdraw or substantiate its claims within 21 days, and Respect The Look then filed a renewed motion for sanctions on substantially the same basis on March 7, 2022 (Dkt. No. 79). Plaintiff was given effective notice of Respect The Look's motion for sanctions, and the Court may accordingly fully sanction Plaintiff under Rule 11.

But even if the safe harbor applied, the Court should exercise its inherent power to sanction Plaintiff and PMJ. Plaintiff and PMJ have had an opportunity to respond, and a careful consideration of the record leads to only one conclusion: that Plaintiff and PMJ's conduct was "intentionally deceptive" in pursuit of an *ex parte* TRO that was made for the purpose of suppressing Plaintiff's competition during the profitable holiday season. Where the Seventh Circuit in *Methode* affirmed sanctions against a Plaintiff who attempted to deceive the Court as to venue (371 F.3d at 928), Plaintiff and PMJ here attempted to deceive the Court as to the

central allegations of counterfeiting, venue, and service of process. If any pattern of misconduct calls for the Court to exercise its inherent power, it is Plaintiff and PMJ's conduct here.

### III. Plaintiff's dubious new infringement allegations do not justify Plaintiff's sanctionable misconduct.

Apart from its argument as to the safe harbor provision, Plaintiff's opposition mainly argues that Respect The Look committed other acts of infringement, alleging that Respect The Look took "Expeditee's product listing photograph and used it as its own." Dkt. No. 98 at 8. This is another red herring and an attempt to distract from PMJ and Plaintiff's willful misconduct; none of this evidence was presented in either the original complaint or in Plaintiff's *ex parte* application for a TRO, which both exclusively alleged counterfeiting of the FLAGWIX mark. Plaintiff is not permitted to lie to the Court to obtain an *ex parte* TRO, and then have its misconduct excused because it might have had a different meritorious claim.

But these new allegations are also dubious, and could never have given Plaintiff a basis to move for a TRO, much less a TRO including an asset freeze. Plaintiff alleges that "RTL copied everything in Expeditee's product listing, including the flag design, slogan, product name and the photograph itself." Taking these four elements separately, Plaintiff omits from its allegation that the slogan and product name are both "One Nation Under God," in which Plaintiff obviously cannot claim any intellectual property right, as that phrase was added to the Pledge of Allegiance in 1954. *Engel v. Vitale*, 370 U.S. 421, 440 n. 5 (1962). The flag designs, while similar, are not identical (the pattern of crosses and number of visible stars and stripes are different on the two listings, and the orientations are reversed)—and in any case, would be the subject of a copyright claim, and Plaintiff had no copyright registration when it filed its Complaint and *ex parte* application for TRO. And as for the stock photograph of a house with yellow and pink flowers against which the flags for sale are set, Plaintiff has no copyright or trade dress in that stock

photograph either, which is used for many unrelated flag photographs by third parties and, in at least one case, was used to illustrate a magazine article about the banning of Black Lives Matter and Pride flags at schools. *See* Beck Reply Decl., Exs. 2-5.

PMJ similarly tries to distract from its misconduct by alleging that Respect The Look's removal of its flag listing demonstrates culpability. Dkt. No. 97, Ex. A at ¶ 17. Of course, subsequent remedial measures are not admissible to show culpability. Fed. R. Evid. 407. And as Mr. Jennings testified, the "One Nation Under God" flag was an insignificant percentage of Respect The Look's sales. Dkt. No. 66 at 34:18-20. It is neither uncommon nor surprising for a party to take unnecessary remedial actions, even though it has committed no wrong, to avoid damage to its business. Similarly, that Respect The Look withdrew money from its PayPal account after the TRO was lifted does not show culpability or any attempt to evade liability; it shows that Respect The Look was rightly terrified that its business was nearly destroyed as a result of Plaintiff and PMJ's lies and abuse of process. In any case, PMJ cannot and should not evade the consequences of its own misconduct by attacking Respect The Look.

**IV.**     **The appropriate sanction is dismissal with prejudice and an award of Respect The Look's attorney fees against both Plaintiff and PMJ.**

Plaintiff argues that terminating sanctions are only available for willful misconduct (Dkt. No. 98 at 12), but that bar is easily met here. Plaintiff lied to the Court about the use of the FLAGWIX Mark on Respect The Look's product and advertisement, and it cannot blame that misconduct on PMJ because those false allegations were made in Vo's declaration. Plaintiff similarly lied to the Court about its basis for alleging that Respect The Look was based in China, and again those false allegations were made in Vo's declaration. Plaintiff makes no attempt to distinguish *Ridge Chrysler Jeep, LLC v. Daimler Chrysler Servs. N. Am.*, No. 03 C 760, 2006 WL 2808158, at *9-*10 (N.D. Ill. Sept. 6, 2006), in which this Court imposed terminating

sanctions on a plaintiff who lied to the Court in order to obtain a TRO. Notably, the Court in *Ridge* addressed Plaintiff's complaint that terminating sanctions might prevent the plaintiff from pursuing meritorious claims, holding that "[w]hile it is true that Plaintiffs will be prejudiced by the decision to dismiss this case with prejudice, the harm to Plaintiffs is more than outweighed by the harm to Chrysler and to the legal system as a whole that would flow from any decision to allow Plaintiffs to continue to prosecute their case under these circumstances." 2006 WL 2808158, at *14. Plaintiff's willful misconduct has irreparably tainted this case from the outset, and permitting Plaintiff to continue to prosecute an entirely new set of claims would harm the legal system as a whole by informing plaintiffs they are free to lie to the Court to obtain an *ex parte* TRO, and then correct their complaint later after the harm of the TRO has been done.

Monetary sanctions, including an award of attorney fees, are also appropriate against both Plaintiff and PMJ. PMJ has no excuse for its serial willful misrepresentations to the Court, which violated Rule 11, Illinois Rules of Professional Conduct 3.1 and 3.3, and may even have risen to the level of perjury. But Plaintiff cannot escape liability either. The basis for Respect The Look's sanctions claim against Plaintiff is not a frivolous legal position but a misrepresentation of facts. As the Sixth Circuit held in the case Plaintiff cites in its defense, sanctions are appropriately awarded jointly and severally against both a party and its counsel when the pleadings are "unsupportable due to their lack of evidentiary support, which constitutes a violation of Rule 11(b)(3)." *Dearborn Street Bldg. Assocs., LLC v. Huntington Nat. Bank*, 411 Fed. Appx. 847, 852 (6th Cir. 2011). Because Plaintiff and its former counsel filed papers with the Court representing, without any evidentiary basis, that Respect The Look used the FLAGWIX Mark on its products and that Respect The Look is a Chinese company, Plaintiff and its former counsel should both be held liable for their misconduct.

Respectfully submitted,

RJITSCT LLC d/b/a Respect The Look

Dated: June 9, 2022            By: /s/ *Brian J. Beck*

Brian J. Beck
ZUBER LAWLER & DEL DUCA LLP
135 S. LaSalle Street, Suite 4250
Chicago, Illinois 60603
(312) 346-1100
(213) 596-5621 (fax)

Counsel for Defendant and
Counterclaim-Plaintiff
RJITSCT LLC d/b/a Respect The Look

**CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2022, a copy of the foregoing was served on counsel of record by electronic means pursuant to the court's Electronic Case Filing (ECF) system.

*/s/ Brian J. Beck*