IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Expeditee LLC., <br><br> *Plaintiff*, <br><br> v. <br><br> THE ENTITIES listed on EXHIBIT 1, <br><br> *Defendants*, <br><br> ──────────────── <br><br> RJITSCT LLC d/b/a Respect The Look, <br><br> *Counterclaim-Plaintiff*, <br><br> v. <br><br> Expeditee LLC, <br><br> *Counterclaim-Defendant.* | Case No.: 1:21-cv-6237 <br><br> Judge Andrea R. Wood <br><br> <u>Jury Trial Demanded</u> |

**DEFENDANT RJITSCT, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO
PMJ PLLC's MOTION TO RECONSIDER**

**INTRODUCTION**

Patrick Jones[1], the former attorney for Plaintiff Expeditee, LLC, lied to the Court in order to obtain an *ex parte* TRO against Defendant RJITSCT, LLC d/b/a Respect The Look ("Respect The Look") on behalf of his former client. Through numerous hearings and filings, including his latest filing, he continues to change his position and story in ways that only dig a deeper hole—doubling down on his theory that Respect The Look's principal Reginald Jennings is a resident of the Philippines rather than Connecticut and improperly attempting to smear Respect The Look based on the political message of the products it sells.[2] Throughout his motion for reconsideration, Jones offers no new facts or legal arguments to justify his conduct, and now repeatedly mischaracterizes this Court's orders and Respect The Look's filings to evade

---

[1] It is unclear whether the Court will impose sanctions against Mr. Jones personally or his former firm PMJ PLLC, or whether it even can sanction PMJ PLLC as, according to Jones, PMJ PLLC ceased operations in February 2023 (Dkt. 125 at 3). For consistency, as Jones has not asserted that any other attorney at PMJ was responsible for the sanctionable conduct in question, and as the Court's Order refers to former counsel as Jones "for clarity and ease of reference only" (Dkt. 122 at 3 n. 1), Respect The Look will refer to the party moving for reconsideration as "Jones" throughout this motion.

[2] Of course, the political statements on a party's goods are irrelevant to its due process rights or allegations of trademark infringement and are protected by the First Amendment. *See Matal v. Tam*, 582 U.S. 218, 248 (2017) ("The commercial market is well stocked with merchandise that disparages prominent figures and groups, and the line between commercial and non-commercial speech is not always clear, as this case illustrates. If affixing the commercial label permits the suppression of any speech that may lead to political or social 'volatility,' free speech would be endangered."). But in any case, like Respect The Look, Plaintiff sells right-wing flags with slogans such as "Jesus is my Savior, Trump is my President" (https://flagwix.com/products/lets-go-brandon-american-grommet-flag-bnn474gf/) and "Trump 2024: Let's Go Brandon" (https://flagwix.com/products/lets-go-brandon-american-grommet-flag-bnn474gf/). Respect The Look too sells products with messages across the political spectrum: its "About Us" page explains that "We believe that people from all walks of life deserve the opportunity to express their unique style," (https://respectthelook.com/pages/about-us), and it sells products with more moderate and left-leaning messages as well such as its "Kindness Peace Equality Love Inclusion Hope Diversity T-Shirt" (https://respectthelook.com/collections/newly-released-products/products/kindness-shirt) and its "Mind Your Own Uterus T-Shirt" (https://respectthelook.com/collections/newly-released-products/products/mind-your-own-uterus-1).

1

consequences for his actions. The Court has not made any error in its Order granting sanctions, there have been no significant changes in the facts, and there is no reason for the Court to reconsider its correct Order sanctioning Plaintiff and its former counsel for their temporarily successful fraud on the court.

## ARGUMENT

A motion for reconsideration is rarely appropriate and may only be granted if the movant shows a manifest error of law or fact, or new evidence that calls the original decision into question. "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). "It is well recognized, however, that issues warranting reconsideration 'rarely arise and the motion to reconsider should be equally rare.'" *Boldt Co. v. Black & Veatch Construction, Inc.*, No. 19-cv-8383, 2023 WL 6392406, at *2 (N.D. Ill. Oct. 2, 2023) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). "Accordingly, a motion for reconsideration 'is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion.'" *Id.* (quoting *Caisse Nationale*, 90 F.3d at 1270).

Jones's motion fails to show the existence of any manifest error of fact or law, or any change of circumstances except the immaterial facts that since the completion of briefing on Respect The Look's motion for sanctions, the case was reassigned from Judge Andrea Wood to Judge Lindsay Jenkins, and that PMJ PLLC has ceased operations. Procedurally, though Jones appears to assert that the Court should have held an in-court hearing before imposing sanctions, Jones offers no legal authority that the Court was required to conduct an in-court hearing, or that the reassignment of this case to Judge Jenkins requires an in-court hearing. Indeed, the Seventh Circuit has held that where a motion for sanctions has been fully briefed and the party being

2

sanctioned has been given an opportunity to respond in writing, the district court is not required to grant an evidentiary hearing before imposing sanctions. *Margoles v. Johns*, 587 F.2d 886, 888-889 (7th Cir. 1978); *see also Alford v. Rents*, No. 08-cv-683, 2010 WL 4222922, at *2-3 (S.D. Ill. Oct. 20, 2010) ("The Court concludes that the requirements of due process have been satisfied in that the parties were accorded an opportunity to respond and have done so. … The parties are not also entitled to an in-person hearing.").

As explained below, each of Jones's criticisms of the Court's Order are nothing more than repetition of the same arguments Plaintiff and Jones made in opposition to Respect The Look's motion for sanctions. Those criticisms still lack merit for the same reasons stated previously in Respect The Look's reply brief (Dkt. 100) and the Court's Order (Dkt. 122). The Court should accordingly deny Mr. Jones's motion for reconsideration.

**I.  The Court correctly found that Jones and Plaintiff's substantive allegations of trademark counterfeiting in support of the *ex parte* TRO application were baseless and sanctionable.**

Jones and Plaintiff's most egregious conduct was lying to the Court about the substantive facts and resulting legal implications purportedly supporting Plaintiff's *ex parte* TRO application. As the Court explained in its order granting sanctions, "Expeditee's memoranda in support of its motions for TRO and preliminary injunction relied exclusively on trademark infringement as the basis for receiving relief." Dkt. 122 at 32 (citing Dkt. 11 at 15-20; Dkt. 27 at 3-4). At the preliminary injunction hearing, Jones admitted that he possessed no evidence that Respect The Look used Plaintiff's FLAGWIX Mark, changing his position to argue that Respect The Look infringed the FLAGWIX Mark by removing it from its flags. Dkt. 122 at 33 (citing Dkt. 66 at 9:25-10:3, 12:15-19). Plaintiff still has offered no evidence that Respect The Look ever used the FLAGWIX Mark in any way.

3

In his motion for reconsideration, Jones advances a theory already raised in Plaintiff's opposition to the motion for sanctions and rejected by the Court: that Plaintiff's passing reference in the Complaint alleging that Respect The Look used the FLAGWIX trademark in "metadata tags" to draw consumers to its website has not been entirely disproven. *Compare* Dkt. 125 at 10 to Dkt. 98 at 9. Jones's retreat to the metadata tag theory fails to support reconsideration for at least three reasons: (1) it was not raised in support of Plaintiff's motion for a TRO or preliminary injunction; (2) Plaintiff has offered no evidence that Respect The Look ever used the FLAGWIX Mark as a "metadata tag"; and (3) a motion for reconsideration may not merely repeat the same arguments made on the original motion. As Respect The Look previously explained in its reply brief in support of the motion for sanctions, Plaintiff's TRO application alleged only that Respect The Look sold products bearing the FLAGWIX Mark, not that Respect The Look used the mark in website metadata. Dkt. 100 at 2-3 (citing Dkt. 11 at 9-10, 18, 22, 24). Jones mischaracterizes the Court's finding as determining that Plaintiff "did not emphasize this legal theory enough," (Dkt. 125 at 5), but the Order in fact says that the metadata theory is not mentioned **at all** in the TRO or preliminary injunction papers, was not raised at the preliminary injunction hearing, and cannot demonstrate that the legal arguments Jones actually made were non-frivolous. Dkt. 122 at 35 n. 10. The Court correctly found that the metadata tag theory was not raised as part of Plaintiff's motion for a TRO or preliminary injunction, and so even if it had merit, it would not save Jones or Plaintiff from sanctions for obtaining a TRO and moving for preliminary injunction based on frivolous legal arguments.

Second, Plaintiff has still offered no evidence to support its "metadata tag" theory. As Jones's brief notes, the Court declined to address these arguments about alternate theories of trademark infringement at length in its order, because the Court found "that arguments to this

4

effect are unsupported." Dkt. 122 at 8 n. 2. Those arguments remain unsupported. The Court correctly noted in its order that "[a] plaintiff bears the burden of clearly establishing that it is entitled to preliminary injunctive relief. A plaintiff in Expeditee's position who wishes to obtain an extraordinary remedy does not have a license to fail to develop an evidentiary record or to pursue frivolous legal arguments." Dkt. 122 at 34. Jones still offers no evidence of this alleged use of infringing metadata tags in his motion for reconsideration. Dkt. 125 at 10. A metadata tag is part of the HTML code that describes a webpage, and can therefore typically be found by inspecting a page's publicly available source code. *See Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1045 (9th Cir. 1999). If Respect The Look had used "FLAGWIX" in a metadata tag, Plaintiff accordingly would not have needed discovery to find some evidence of its use. Still, even assuming *arguendo* that Plaintiff had "a good faith basis to allege that RTL used its trademark in metadata tags," (and Jones fails to explain what that "good faith basis" is), a good faith basis for an allegation cannot support an *ex parte* TRO application or a motion for preliminary injunction, as "[a] TRO is an extraordinary remedy that require[s] a clear showing that the movant is entitled to it." Dkt. 122 at 27.

And finally, Jones's "metadata tag" theory has already been addressed by the Court and rejected, and so cannot support a motion for reconsideration, as discussed above. *Boldt* 2023 WL 6392406, at *2 ("a motion for reconsideration 'is not an appropriate forum for rehashing previously rejected arguments'"). The Court should accordingly deny Jones's motion for reconsideration as to the issue of frivolous legal arguments.

**II.     The Court correctly found that Jones had no good faith basis for asserting that Respect The Look was based overseas.**

Remarkably, Jones continues to argue, still with no basis in fact, that "RTL lied to the Court, is and was a business operated overseas that infringed the Plaintiff's trademark, and when

5

confronted with the evidence, absconded with the proceeds." Dkt. 125 at 10. Jones continues to ignore the plethora of corroborating evidence demonstrating that Respect The Look is a business based in New Britain, Connecticut, including:

- RJITSCT LLC's registration to do business as a Connecticut LLC listing a business address in New Britain, Connecticut. Dkt. 35-2.

- Respect The Look's business address on its website in New Britain, Connecticut. Dkt. 35-3.

- Reginald Jennings's associated website for the IT services company he also runs under the RJITSCT LLC name, which prominently advertises that it services "the greater Hartford Area." http://rjitsct.com/.

- Reginald Jennings's LinkedIn account, which matches the URL on his email signature in Dkt. 35-4, identifying his location as New Britan, Connecticut. https://www.linkedin.com/in/rjenningsjr/.

What, then, is the basis for Jones's continued allegation that Respect The Look is based overseas? The only citation provided in Jones's brief is to the Court's order is in paragraph 31 of his recitation of facts, which states: "Despite the sworn declaration of Jennings, RTL does not appear to be a U.S.-based business. It is more likely that Jennings lied to the Court under oath. *See* Order, at p. 30 n. 8." Dkt. 125 at 5, ¶ 31. But the Court's order, Dkt. 122 at 30 n. 8, explains that the only evidence Plaintiff offers of Respect The Look being an overseas company is that its Facebook page is managed, at least in part, from the Philippines—evidence which was never presented at the time Plaintiff filed its motion for TRO or a preliminary injunction, which the Court has already addressed, and evidence which would not, in any case, show that Respect The Look is an overseas company.[3] Jones offers no evidence, new or old, to suggest that Reginald Jennings lied under oath, or that Respect The Look is anything other than what its publicly available records show it to be: a Connecticut business headquartered in New Britain,

---

[3] It is routine for American companies to outsource certain functions, such as managing social media, to overseas contractors.

Connecticut. And as demonstrated by Jones's citation, the Court has already addressed the allegation that Respect The Look's Facebook page was managed from the Philippines and rejected it as irrelevant. Dkt. 122 at 30 n. 8.

In support of his motion for reconsideration, Jones completely mischaracterizes the content of Jennings's declaration. Jones writes in his brief that "the declaration of Reginald Jennings proves nothing. But it is interest [sic] for what it does not declare – **it does not declare that RTL's business is based in the United States.** That would be a pretty easy declaration to make if it were true, especially when you are trying to provide proof to the Court that your company is based in the United States." Dkt. 125 at 12-13 (emphasis in original). It would indeed be an easy declaration to make, which is why Jennings's declaration made that exact statement:

> I am an American citizen and a resident of the state of Connecticut. RJITSCT LLC is a limited liability company organized and existing under the laws of the state of Connecticut, and is registered to do business in the state of Connecticut. A true and correct copy of a printout from the Connecticut Secretary of State website showing RJITSCT's business address of One Columbia Street, New Britain, Connecticut, 06052, and identifying me as its principal and registered agent for service, is attached hereto as Exhibit 1.

Dkt. 35-1 at ¶ 2. Jones also ignores Jennings's live testimony at the preliminary injunction hearing, where he explained that he runs his business with his wife, sister, and other local people in New Britain, Connecticut (Dkt. 66 at 30:16-23), that it has a physical address at One Columbia Street, New Britain, Connecticut 06052 (*Id.* at 31:14-15), that it has no financial assets located in a foreign bank account (*Id.* at 31:16-18), that he was calling that day from New Britain, Connecticut on his personal cell phone (*Id.* at 35:11-17), and that the One Columbia Street location is Respect The Look's warehouse (*Id.* at 38:15-17). Jones had the opportunity to cross-examine Jennings at the preliminary injunction hearing, and was unable to elicit any testimony calling Respect The Look's domicile into question. *Id.* at 36:12-40:6.

7

Jones also accuses Respect The Look of immediately transferring its funds out of its PayPal account (Dkt. 125 at 13), another accusation that Jones previously raised (Dkt. 97 at 4). Noting once again that a motion for reconsideration is not an appropriate vehicle to rehash previously rejected arguments (*Boldt*, 2023 WL 6392406, at *2), Respect The Look's withdrawal of funds from its PayPal account is not "abscond[ing] with funds," but ordinary business operation. As Jennings testified at the preliminary injunction hearing, he had significant operating expenses that had to be paid out of the money in his PayPal account, including paying the salaries of between 10 and 15 employees, as well as paying expenses for his other businesses. Dkt. 66 at 31:19-32:20. As Jones should recognize, "[a] preliminary asset freeze cannot be imposed to preserve [the plaintiff's] ability to collect any judgment it later obtains." *Eicher Motors Ltd. v. Individuals Identified on Schedule A Hereto*, No. 22-cv-2458, 2022 WL 3081869, at *3 (N.D. Ill. Aug. 3, 2022) (citing *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999)); *see also* Dkt. 66 at 24:24-25:3 ("THE COURT: There is plenty of case law for the proposition that it's not appropriate to enter an asset freeze or some sort of injunctive relief that has the effect of an asset freeze simply to ensure that a defendant has money in order to pay a monetary judgment."). While an asset freeze may in some cases be appropriate to preserve a plaintiff's rights to an equitable accounting of profits from sales of goods infringing its trademarks (*see id.* at *3), Jennings testified, and Plaintiff has never offered any evidence to the contrary, that sales from the allegedly infringing flag made up an insignificant percentage of Respect The Look's profits. Dkt. 66 at 34:18-20. Jones's argument that Respect The Look acted improperly by withdrawing funds from its PayPal account to operate its business was, and remains, legally frivolous.

Jones offers no new evidence suggesting he had any good faith basis for alleging that Respect The Look is an overseas company, nor does he identify any error in the Court's decision regarding that issue. The Court should accordingly deny Jones's motion for reconsideration as to his fraud on the Court concerning Respect The Look's domicile.

### III. The Court correctly found that Jones had no good faith basis for asserting that Plaintiff's principal place of business was in Chicago, and that assertion was material.

Jones's motion for reconsideration continues to argue that he had a good faith argument that Plaintiff had a principal place of business in Chicago, Illinois, and in doing so continues to ignore his blatant false representation to the Court at the preliminary injunction hearing and his failure to recognize the accepted legal meaning of a corporation or LLC's "principal place of business." He also fails to demonstrate any error in the Court's conclusion that Jones's fraud on the court was material.

Jones argues that he believed Plaintiff had a good faith argument that Plaintiff's activities in the United States established a principal place of business (Dkt. 125 at 9), but offers no legal authority suggesting that any of the activities he identifies would give Plaintiff a principal place of business in the United States, much less the Northern District of Illinois. As the Court noted in its order, "*Hertz Corp. v. Friend* establishes 'that the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities,' also known as its 'nerve center.''' 559 U.S. 77, 80-81 (2010) (citations omitted)." Dkt. 122 at 25. Jones offers no legal authority to suggest that the Court made an error of law in its citation to *Hertz*, and the facts he cites in his brief cannot overcome the fact that, as he admitted at the preliminary injunction hearing, Plaintiff has no employees, let alone "high level officers," in the United States, let alone Chicago. Dkt. 66 at 21:20-22:18.

9

He also fails to offer any justification for his transparent attempt to deceive the Court at the preliminary injunction hearing by stating that the address of Plaintiff's principal place of business in Chicago was 125 South Clark Street (Dkt. 66 at 19:24-20:2, 21:11-15). The Court already addressed this issue and explained, correctly, that Jones's argument that his allegation was based on the location of Expeditee's U.S. agent at 900 South Clark Street "harms, not helps, Jones. It is wholly incredible that Jones could have believed in good faith that Expeditee's principal place of business was in Chicago via the location of its U.S. agent, but still represent at the hearing that its home base was his law firm." Dkt. 122 at 25. Jones offers no factual or legal basis for the Court to reconsider its finding.

Jones's legal argument for the immateriality of his misrepresentations to the Court focuses on the fact that the Court ultimately found venue and jurisdiction over the defaulting defendants (Dkt. 125 at 9-10), but these arguments fail to demonstrate that Jones's misrepresentations were immaterial. The Court explained correctly that during the *ex parte* TRO proceedings, had the Court been aware of Plaintiff's true location, "the Court might have questioned why a Vietnamese company needed an American court to freeze the assets of Vietnamese Defendants." Dkt. 122 at 27. In other words, had Jones been honest about the location of Plaintiff, the Court may never have granted the *ex parte* TRO in the first place. Once the TRO was entered and the parties were joined, the Court has temporarily found venue and jurisdiction as a result of the defendants' subsequent actions that Jones could not have anticipated. As to Respect The Look, it ultimately made a litigation decision to waive its challenge to venue and jurisdiction in the Northern District of Illinois, but Plaintiff and Jones had no way of knowing that Respect The Look would do so at the time Jones made his misrepresentations. *See* Dkt. 100 at 7. And as to the other defendants, they still have not

10

appeared, and if they do appear, they may still challenge jurisdiction or venue. *See, e.g., Viahart LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 19-cv-8181, 2021 WL 5113935, at *3 (N.D. Ill. Nov. 3, 2021).

The Court explained, citing to *Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 927 (7th Cir. 2004) and *Inventus Power, Inc. v. Shenzhen Ace Battery Co.*, 2020 WL 3960451, at *6-7 (N.D. Ill. July 13, 2020), that "[m]aking plausible venue allegations matters because the Court would be less inclined to enter an *ex parte* TRO if venue was likely improper than if venue appeared secure." Jones offers no factual argument or legal authority that would indicate that the Court made any error in finding Jones's false allegations regarding Plaintiff's principal place of business to be material and sanctionable. The Court should accordingly deny Jones's motion for reconsideration as to his fraud on the court regarding Expeditee's location.

## IV. The Court correctly found that Jones's fraudulent certificate of service was sanctionable.

In his motion for reconsideration, Jones provides the same story regarding service that he already presented, and that the Court found to be sanctionable, in response to the original motion for sanctions. Jones claims that as of January 10, PayPal had not provided him with contact information for the PayPal defendants, but that his client had, and that his client informed Jones it would serve the PayPal defendants. Dkt. 125 at 13-14. On Sunday, January 16, when Jones discovered that service had not been effected (a discovery he would not have made had Respect The Look's counsel not alerted him to Respect The Look's not having been served), he emailed the PayPal defendants, but did so without providing notice of the imminent preliminary injunction hearing scheduled for January 18. Dkt. 125 at 14. The Court fully addressed the service issue based on these facts, explaining that the January 10 certificate of service was

11

fraudulent, and the January 16 email and certificate of service did not cure the failure because it "did not include notice of the preliminary injunction hearing two days later." Dkt. 122 at 37-38.

Jones argues that the subsequent entry of a preliminary injunction by the Court against other defendants later demonstrates that his fraudulent certificate of service did no harm (Dkt. 125 at 14), but the Court already addressed this issue and found that the harm could not be cured. Dkt. 122 at 38-39. Further, Jones omits the fact that when the preliminary injunction was entered, it was only entered almost a month after the initial preliminary injunction hearing, on February 15, 2022, and then only against about half of the initial defendants, as to only the defendants "indicated to have used the FLAGWIX trademark." Dkt. 77. Had Respect The Look not appeared and brought the substantive issue of a lack of evidence of trademark infringement to the Court's attention as to the approximately half of defendants, including Respect The Look, who had not used the FLAGWIX trademark, the Court would likely have entered an unsupported preliminary injunction against nearly a hundred defendants who had never used the FLAGWIX mark and had never received notice of the preliminary injunction hearing. Nothing in Jones's motion demonstrates any error in the Court's well-reasoned conclusion:

> In *ex parte* proceedings in particular, the Court has no choice but to rely on the plaintiff's truthfulness. Making fraudulent representations about service is especially grave misconduct. Without proper service, a defendant whose rights have been affected by the Court's order may have difficulty appearing and vindicating those rights. That could well have happened here, if Respect the Look had not appeared and vigorously defended itself. Despite Jones's remedial efforts, given the high stakes of this type of proceeding, Court finds that sanctions are warranted based on the initial fraud."

Dkt. 122 at 39. Because Jones points to no manifest error of fact or law in the Court's decision, or to any new evidence that would require reconsideration, the Court should deny Jones's motion for reconsideration as to the service issue.

**V.      Jones offers no basis for reconsideration of the Court's awarded sanctions.**

In his motion for reconsideration, Jones challenges the Court's findings that his conduct was sanctionable but does not challenge the sanctions imposed for his misconduct. Jones makes no argument that based on the Court's findings, the sanctions of attorney's fees and dismissal with prejudice are too harsh. Because, for the reasons stated above, Jones has not presented any evidence or argument supporting reconsideration, the Court should deny Jones's motion for reconsideration in its entirety.

**VI.     The Court should add the fees incurred by Respect The Look in responding to Jones's motion for reconsideration to its award of attorney's fees.**

In its previous statement regarding attorney's fees (Dkt. 127 at 10), Respect The Look presented evidence that it had incurred $15,989.20 in attorney's fees and $2,408.74 in costs in preparing and litigating its motion for sanctions, and stated that it would submit a supplemental declaration with this brief setting forth the additional fees and costs incurred in responding to Jones's motion for reconsideration.

As set forth in the attached Supplemental Declaration of Brian Beck ("Beck Decl."), Mr. Beck's current rate for this matter, since being promoted to Partner in January of 2023, is $620/hour. Beck Decl. at ¶ 3. He spent a total of 2.2 hours reviewing, discussing with his client, and addressing the Court's Order in September, which was invoiced to the client. Beck Decl., Ex. 1. He spent a total of 6.1 hours preparing the fee statement that was submitted on October 6, and a total of 12.7 hours preparing this opposition memorandum, for total requested attorney's fees set forth below (Beck Decl. at ¶ 4):

13

| Event | Hours | Fees |
|---|---|---|
| Addressing September Order | 2.2 | $1,364 |
| Preparing October 6 Fee Statement | 6.1 | $3,782 |
| Drafting Opposition Memorandum | 12.7 | $7,874 |
| Total | 21.0 | $13,020 |

For the reasons set forth in Respect The Look's previous statement (Dkt. 127 at 4-6), these fees incurred in pursuing Respect The Look's sanctions award should be included in the sanctions award. It would defeat the purpose of the Court's award of attorney's fees if Respect The Look was required to incur additional attorney's fees to defend its entitlement to sanctions and those fees were not also assessed against Jones.

## CONCLUSION

Jones's motion for reconsideration does nothing more than rehash the same arguments he made in opposition to Respect The Look's motion for sanctions. The Court correctly found Jones's misconduct to be sanctionable, and nothing in Jones's motion points to any mistake of fact or law, or any new evidence, that would alter the Court's conclusion. Respect The Look therefore respectfully requests that the Court deny Jones's motion for reconsideration in its entirety, and that the Court include in its final award of attorney's fees the $13,020 in fees incurred in September and October 2023 for this matter that were not previously included in Respect The Look's October 6 fee statement (Dkt. 127).

                                                Respectfully submitted,

                                                RJITSCT LLC d/b/a Respect The Look

Dated: October 25, 2023                By: */s/ Brian J. Beck*

                                                Brian J. Beck
                                                ZUBER LAWLER & DEL DUCA LLP
                                                135 S. LaSalle Street, Suite 4250
                                                Chicago, Illinois 60603
                                                (312) 346-1100
                                                (213) 596-5621 (fax)

                                                Counsel for Defendant and
                                                Counterclaim-Plaintiff
                                                RJITSCT LLC d/b/a Respect The Look

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 25, 2023, a copy of the foregoing was served on counsel of record by electronic means pursuant to the court's Electronic Case Filing (ECF) system.

                                                          */s/ Brian J. Beck*