**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Xped LLC, | |
|     *Plaintiff,* | |
| v. | |
| The Entities Listed on Exhibit 1, | No. 21 CV 6237 |
|     *Defendants.* | |
| | Judge Lindsay C. Jenkins |
| RJITSCT, LLC d/b/a Respect the Look, | |
|     *Counter Claimant,* | |
| v. | |
| Expeditee LLC, | |
|     *Counter Defendant.* | |

**MEMORANDUM OPINION AND ORDER**

In September, this Court dismissed Plaintiff Expeditee LLC's claims against Defendant RJITSCT, LLC d/b/a Respect the Look with prejudice as a sanction for misconduct by Expeditee and its former counsel, Patrick Jones. *Xped LLC v. Entities Listed on Exh. 1*, —F. Supp. 3d—, 2023 WL 5748350, at \*18 (N.D. Ill. Sept. 6, 2023).[1] The Court also awarded Respect the Look "reasonable attorney's fees and costs incurred in vacating the [temporary restraining order ('TRO')] and defending the motion for preliminary injunction." *Id.* The sanctions order reserved three questions: the amount of fees to award, the allocation of those fees between Expeditee and Jones,

---

[1] The Court retroactively treats all conduct by Jones's former law firm, PMJ PLLC, as conduct by Jones himself. [Dkt. 138.]

1

and whether "the Court should award Respect the Look all of its attorney's fees as the prevailing party pursuant to 15 U.S.C. § 1117(a)." *Id.* Respect the Look requests a total of $51,818 in fees and $5,891.28 in costs for the proceedings leading up to the Court's sanctions order, plus $13,020 in fees for work done after that order. [Dkt. 127 at 1, 10; Dkt. 128 at 13–14.] It asks for some of these fees to be awarded jointly and severally against Expeditee and Jones. [Dkt. 127 at 10.] Expeditee and Jones object to some of these fees and to Respect the Look's proposed allocation. [Dkt. 131, 135.] As explained below, the Court grants Respect the Look's application for fees and costs in large part.

## I.    Background

The Court's sanctions order described the facts and procedural history of this case in detail, *Xped*, 2023 WL 5748350, at *1–5, so the Court will be brief here. Expeditee, then represented by Jones, filed a sealed complaint against approximately 200 Defendants, including Respect the Look. *Id.* at *1. It moved for an *ex parte* TRO, arguing that products Defendants sold online infringed its "FLAGWIX" trademark and that if the Court did not freeze Defendants' assets, they would abscond overseas with their funds, preventing Expeditee from recovering. *Id.* at *2–3. The Court, then Judge Wood, entered the TRO. *Id.* at *3. Expeditee then moved for a preliminary injunction and received permission to serve Defendants by email, which it attempted by requesting the online platforms to pass along the service documents to Defendants with accounts on their platforms. *Id.* But PayPal did not provide Respect the Look with these documents, so it was not properly served. *Id.*

2

Nevertheless, Respect the Look retained Brian Beck of Zuber Lawler LLP a few days before the January 18, 2022 preliminary injunction hearing. Beck entered an appearance on January 14, filed a motion to dissolve the TRO and for sanctions, and filed a counterclaim. *Id.* at *3–4. Expeditee requested a one-week continuance, which Respect the Look opposed and the Court denied. *Id.* at *4. Respect the Look was the only Defendant to appear at the January 18 hearing, but the Court was unable to make a final determination about whether to grant the preliminary injunction, so it continued the hearing until January 20 and extended the TRO. *Id.* at *4–5. At that hearing, the Court dissolved the TRO and denied the preliminary injunction with respect to approximately half of the Defendants, including Respect the Look, because Expeditee lacked evidence that they infringed its trademark; the Court entered the preliminary injunction as to the remaining Defendants. *Id.* at *5.

On February 14, 2022, Respect the Look filed a combined motion to dismiss, for summary judgment, and for attorney's fees. *Id.* The same day, Expeditee's current counsel entered an appearance, and it soon moved to substitute different local counsel for Jones. *Id.* On March 7, Respect the Look moved for sanctions against Expeditee and Jones based on a number of instances of alleged litigation misconduct. *Id.* Respect the Look asked the Court to dismiss Expeditee's complaint as a sanction and to award it attorney's fees. *Id.* Expeditee argued that sanctions were unwarranted, and in lieu of responding to Expeditee's motion to dismiss and for summary judgment, it proposed to amend its complaint to pursue different claims against Respect the Look and other Defendants. *Id.* Respect the Look opposed this motion. *Id.* Those motions

were fully briefed by June 2022 and remained pending until the case was reassigned from Judge Wood in February 2023. On September 6, 2023, the Court entered an order finding some of Expeditee's and Jones's conduct sanctionable, dismissing Expeditee's claims against Respect the Look with prejudice, and awarding it attorney's fees. *Id.* at *18.[2]

On October 3, 2023, before Respect the Look submitted its fee application, Jones—but not Expeditee—moved for reconsideration of the sanctions order. [Dkt. 125.] Three days later, Respect the Look filed its fee application, which characterized Jones's motion as frivolous and indicated that Respect the Look would ask the Court to award it the fees it would incur in responding to that motion. [Dkt. 127 at 5–6.] On October 25, Respect the Look filed its opposition brief. [Dkt. 128.] Expeditee filed its response to the fee petition on November 7, challenging some of the fees Respect the Look requested and arguing that the Court should order Jones, not it, to pay the fee award. [Dkt. 131.] Jones declined to file a reply brief in support of his motion for reconsideration, which on November 27 the Court denied except to the extent that it clarified a few minor points in its sanctions order. [Dkt. 132, 133.] Given Expeditee's arguments, the Court gave Jones an opportunity to respond to the fee petition, which he took. [Dkt. 135.] The Court now considers the proper scope, amount, and allocation of the fees and costs it will award to Respect the Look.

---

[2]    The Court granted Expeditee leave to file an amended complaint against the other Defendants, however. [Dkt. 123.]

## II.    Legal Standards

A district court has the inherent power to order a party who has engaged in litigation misconduct to pay its opponent's attorney's fees and costs as a sanction. *See Goodyear Tire & Rubber Co. v. Haegar*, 581 U.S. 101, 107 (2017). Such a sanction must be compensatory, not punitive, in nature; a "court can shift only those attorney's fees incurred because of the misconduct at issue." *Id.* at 108. Therefore, the court can award fees and costs only if the litigation misconduct was a but-for cause of those fees being incurred. *Id.* at 108–09. The court must "assess and allocate specific litigation expenses," but it has discretion to determine what fees and costs were caused by the sanctionable conduct. *Id.* at 109–10. In some cases, the court may even award the full amount of fees incurred, such as "[i]f a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior." *Id.* at 110.

Separately, the Lanham Act provides for the award of reasonable attorney's fees to the prevailing party in exceptional trademark infringement cases. 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court interpreted identical language in the Patent Act, holding "that an 'exceptional' case is simply one that stands out from others with respect to [1] the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or [2] the unreasonable manner in which the case was litigated." 572 U.S. 545, 553–54 (2014). The Seventh Circuit, like most other circuits, has adopted the *Octane* standard in the Lanham Act context. *LHO Chi. River, L.L.C. v. Perillo* ("*LHO I*"), 942 F.3d 384, 385 (7th Cir. 2019).

5

The Supreme Court explained that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances. … [T]here is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the considerations we have identified." *Octane*, 572 U.S. at 554 (cleaned up). It endorsed the use of "a 'nonexclusive' list of 'factors'" discussed in a Copyright Act case, "including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). The Seventh Circuit in *LHO I* adopted the same factors for trademark cases. 942 F.3d at 388–89.

## III.   Applicability of 15 U.S.C. § 1117(a)

The Court has already determined that awarding sanctions pursuant to its inherent power is proper; here, the Court considers whether it is appropriate to award fees and costs under the Lanham Act, 15 U.S.C. § 1117(a). Expeditee argues that the Court should limit the fees and costs it awards Respect the Look to those "incurred in vacating the TRO and defending the motion for preliminary injunction," which the Court previously awarded. *Xped*, 2023 WL 5748350, at *18. [Dkt. 131 at 4–5.][3] Respect the Look argues that it is a prevailing party within the meaning of § 1117(a) and that this is an exceptional case, so the Court is not constrained only to award fees and costs on the bases discussed in the sanctions order. *See JCW Invs., Inc. v. Novelty,*

---

[3]      Jones adopts Expeditee's arguments regarding § 1117(a). [Dkt. 135 at 1.]

*Inc.*, 509 F.3d 339, 341 (7th Cir. 2007) ("[T]he Lanham Act, 15 U.S.C. § 1117(a), permit[s] an award of full costs and reasonable attorneys' fees to the prevailing party …." (citations omitted)). The Court agrees; therefore, it will award all reasonable fees and costs Respect the Look incurred in connection with Expeditee's trademark claim.

Expeditee wisely does not argue that this is not an exceptional case, given that unreasonable litigation conduct that creates "the need … to advance considerations of compensation and deterrence" can make a case exceptional. *LHO Chi. River, L.L.C. v. Rosemoor Suites, LLC* ("*LHO II*"), 988 F.3d 962, 969 (7th Cir. 2021) (quoting *LHO I*, 942 F.3d at 386). In its sanctions order, the Court found that compensation and deterrence were warranted here. *See Xped*, 2023 WL 5748350, at *16–18. Rather, Expeditee argues that the Court cannot award fees because Respect the Look is not a "prevailing party" within the meaning of § 1117(a). [Dkt. 131 at 8.]

The Lanham Act does not define "prevailing party," and the Court is unaware of a Seventh Circuit case interpreting § 1117(a)'s use of that term. Respect the Look argues—and Expeditee does not contest—that "prevailing party" in § 1117(a) shares the meaning the Supreme Court applied in other statutory contexts in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Services*, 532 U.S. 598, 601–02 (2001) (interpreting 42 U.S.C. §§ 3613(c) and 12205). [Dkt. 127 at 7; *see* Dkt. 131 at 8.] The Seventh Circuit has interpreted this definition to apply broadly across statutes that use the term "prevailing party." *Frey v. E.P.A.*, 751 F.3d 461, 471 (7th Cir. 2014) ("This circuit has adopted a strong presumption that *Buckhannon* applies to each fee-shifting statute that awards fees to 'prevailing

parties.'" (cleaned up)). And other circuits have applied the *Buckhannon* definition to § 1117(a). *See Lorillard Tobacco Co. v. Engida*, 611 F.3d 1209, 1215 (10th Cir. 2010); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1078 (9th Cir. 2015). The Court therefore holds that the *Buckhannon* definition applies to the Lanham Act.

*Buckhannon* defines "prevailing party" as "one who has been awarded some relief by the court." 532 U.S. at 603. Not only judgments on the merits—including for nominal damages—but also settlement agreements enforced through consent decrees can constitute the relief necessary to make a litigant a prevailing party. *Id.* at 603–04. In contrast, a voluntary change in the defendant's conduct, even if that change brings about the result the plaintiff set out to achieve through the lawsuit, does not suffice. *Id.* at 605. The key question is whether there has been a "material alteration of the legal relationship of the parties" bearing a "judicial *imprimatur* on the change." *Id.* at 604–05 (citation omitted); *see, e.g.*, *A.B. v. Brownsburg Cmty. Sch. Corp.*, 80 F.4th 805, 810 (7th Cir. 2023) (applying the *Buckhannon* test).

Respect the Look argues that that the dismissal with prejudice as a sanction makes it the prevailing party under § 1117(a). [Dkt. 127 at 7–8 (citing cases in which dismissal with prejudice made a litigant the prevailing party).] Expeditee disagrees; it argues that Respect the Look did not win judgment on the merits because its motion for summary judgment was denied as moot and, in any event, the motion would have been denied. [Dkt. 131 at 7–8.] Expeditee's characterization of the dismissal as not

on the merits is not precisely accurate,[4] but this point is not dispositive. A finding that a party's claim succeeds or an opponent's fails is not required to prevail under § 1117(a). Consent judgments, which are entered into voluntarily and need not involve a substantive resolution of the claims, are relief that can support an award of attorney's fees under statutes similar to § 1117(a). *See Alliance for Water Efficiency v. Fryer*, 892 F.3d 280, 287 (7th Cir. 2018) ("Whether on the merits, by consent decree, or on motion, a court must enter judgment on the … claim." (citations omitted)); *cf. Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008) ("There is no question that a dismissal with prejudice makes the defendant the prevailing party for purposes of an award of attorney's fees under [the analogous] § 505 [of the Copyright Act]. This is no less true when a case is dismissed because the plaintiff 'threw in the towel'—that is, where the dismissal is on the plaintiff's own motion." (citations omitted)).

Expeditee also argues that Respect the Look is not a prevailing party because the cases it relies on are factually distinguishable and it "does not cite any authority

---

[4] The Court agrees that it did not consider the merits of Expeditee's claims against Respect the Look, except to the extent that it found that it had no evidence to support those claims at the time Expeditee sought preliminary injunctive relief. That is, the Court did not analyze whether those claims might succeed or fail. But for preclusion purposes, the dismissal was "on the merits" in the sense that it bars Expeditee from relitigating its claims. *White v. Ill. State Police*, 15 F.4th 801, 808 (7th Cir. 2021) ("A dismissal with prejudice … is a ruling on the merits that precludes any claim encompassed by the suit." (cleaned up)). As the Seventh Circuit recently alluded to in a case involving dismissal as a sanction, a dismissal need not be based on the legal insufficiency of a plaintiff's claim to have preclusive effect. *Fulks v. Watson*, 88 F.4th 1202, 1209 (7th Cir. 2023) ("Dismissal prevents Fulks from litigating his allegation of sexual assault against Dr. Wilson."); *see also LeBeau v. Taco Bell, Inc.*, 892 F.2d 605, 606–07 (7th Cir. 1989) (dismissal for failure to appear was on the merits because it did not specify otherwise).

to support its claim." [Dkt. 131 at 8.] Expeditee is correct on the first point, but factual differences aside, there is ample authority for concluding that Respect the Look is a prevailing party. The Seventh Circuit has "adopted a strong presumption that *Buckhannon* applies to each fee-shifting statute that awards fees to 'prevailing parties.'" *Frey*, 751 F.3d at 471 (cleaned up). Respect the Look fits comfortably within *Buckhannon*'s definition of a prevailing party. The dismissal caused a "material alteration of the legal relationship of the parties" because Respect the Look is no longer defending against Expeditee's claims, and the Court ordered the dismissal, so it bears a "judicial *imprimatur*." *Buckhannon*, 532 U.S. at 604–05. Expeditee does not dispute that this case is exceptional. Therefore, the Court finds that it may award attorney's fees to Respect the Look pursuant to § 1117(a).

## IV.  Reasonableness of Fees

Having found that Respect the Look is a prevailing party in an exceptional Lanham Act case, the Court turns to the amount of fees to award. Under the Lanham Act, the Court may award "full costs and reasonable attorneys' fees" incurred during the litigation, *JCW Invs.*, 509 F.3d at 341, and pursuant to its inherent power, the Court may award fees and costs caused by sanctionable conduct, *Goodyear*, 581 U.S. at 108–10. Expeditee and Jones object to some of the fees Respect the Look requests. Here, the Court considers each category of fees Respect the Look requests and any objections. The Court discusses the allocation of fees below.

### A.  Opposing TRO and Preliminary Injunction

The first category of fees that Respect the Look requests are the fees it incurred while working to vacate the TRO and opposing the preliminary injunction. The Court

held that Respect the Look is entitled to recover these fees as a sanction imposed under the Court's inherent power, *see Xped*, 2023 WL 5748350, at \*16–18, and these fees are also recoverable under the Lanham Act because they were incurred while defending against a trademark claim. Beck's billing entries for these tasks also include work done preparing Respect the Look's counterclaim. Respect the Look has not sought to recover Beck's fees for work on the counterclaim, and the Court agrees that those fees must be excluded because they were not incurred while defending against Expeditee's Lanham Act claim, *see* 5 McCarthy on Trademarks and Unfair Competition § 30:103 (5th ed. Dec. 2023 update), or as a result of sanctionable conduct, *see Goodyear*, 581 U.S. at 109.

Respect the Look requests a total of $9,230.80 in fees and $420.26 in costs. [Dkt. 127 at 1; Dkt. 127-1 ¶ 7.] Between January 12 and January 21, 2022, Beck billed 23.0 hours at $450 per hour, totaling $10,350; two entries totaling 13.5 hours included research and drafting the counterclaim. [Dkt. 127-2 at 3.] A paralegal billed 4.6 hours at $148 per hour on these matters, totaling $680.8, of which 3.4 hours were billed for a time entry that included work on the counterclaim. [Dkt. 127-1 ¶ 4; Dkt. 127-2 at 3.][5] Respect the Look was also billed $420.26 in costs for transcript services between January 21 and February 3, 2022 relating to these matters. [Dkt. 127-2 at 3–4.] Beck estimates that he performed at most 4 hours of work on the counterclaim [Dkt. 127-

---

[5]    Paralegal fees are recoverable under fee-shifting statutes. *See, e.g.*, *Koch v. Jerry W. Bailey Trucking, Inc.*, 51 F.4th 748 (7th Cir. 2022) (Fair Labor Standards Act); *Krecioch v. United States*, 316 F.3d 684 (7th Cir. 2003) (Equal Access to Justice Act).

1 at 2], so Respect the Look has reduced its request for fees for Beck's work by $1,800. That reduction brings the fee total to $9,230.80 ($10,350 − $1,800 + $680.80).

Expeditee raises several objections to this request. First, it notes that the Court did not impose monetary sanctions against Expeditee in connection with the frivolous legal arguments Jones made, *Xped*, 2023 WL 5748350, at *12–14, and it argues that the Court should not order Expeditee to pay those fees under the Lanham Act. [Dkt. 131 at 3.] It argues that "Expeditee's reliance on counsel should not be a cause for imposing monetary sanctions against Expeditee." [*Id.*] Second, it argues that Respect the Look should not "profit from its unlawful conduct because of mistakes made by [Jones] at the TRO and preliminary injunction … hearing." [*Id.*]

The Court disagrees. As to the first point, the Court did not impose monetary sanctions against Expeditee for this conduct because Rule 11 prohibits sanctions against a party for frivolous legal positions taken by its counsel, and the Court limited the exercise of its inherent power to the same extent. *See Xped*, 2023 WL 5748350, at *6–8, *16–17. The Lanham Act contains no such restriction, however, and awarding attorney's fees is appropriate even if a party has not engaged in subjective bad faith. *See LHO I*, 942 F.3d at 387. Further, even if Expeditee was relying on Jones's advice in good faith, the Court found that it engaged in sanctionable conduct separate from the legal arguments it is not responsible for under Rule 11.[6] In *Octane*, the Supreme

---

[6] As the Court explained, "[i]t is well established that attorneys' actions are imputed to their clients, even when those actions cause substantial harm. A litigant bears the risk of errors made by his chosen agent." *Xped*, 2023 WL 5748350, at *12 (quoting *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 529 (7th Cir. 2020)). Expeditee argues that Jones alone is responsible for all misconduct (and Jones levels a similar argument against Expeditee). [Dkt. 131 at 3; Dkt. 135 at 1–2.] The Court addresses these arguments below.

Court rejected as "overly rigid" a standard under which "a district court could find a case exceptional either where the parties had engaged in material, sanctionable litigation misconduct, or where the litigation had been *both* brought in bad faith *and* objectively baseless." *Id.* (cleaned up). The Seventh Circuit's adoption of the more flexible *Octane* standard confirms that awarding fees under § 1117(a) is appropriate here, where Expeditee's unreasonable litigation conduct—whether undertaken in good faith or not—harmed Respect the Look. *See id.* at 387–88.

As to the second point, Expeditee's invocation of "unlawful conduct" by Respect the Look is unpersuasive. Expeditee's inability to attempt to prove such conduct is the result of the dismissal sanction for its pursuit of baseless trademark infringement claims in the first instance, rather than any meritorious claim it might have had. *See Xped*, 2023 WL 5748350, at *18 (rejecting Expeditee's argument that it should be permitted to move forward with other claims). Nor would Respect the Look profit from an award of attorney's fees; any award would do no more than make Respect the Look whole for defending claims the Court has determined to be frivolous.

Next, Expeditee argues that Respect the Look "should not be awarded fees spent in drafting its unsuccessful opposition to Expeditee's motion to continue the [preliminary injunction] hearing" because "[t]he Court granted Expeditee's motion over [Respect the Look's] opposition, and the expense of such a motion ($405) could have easily been avoided had [it] stipulated to the short extension request." [Dkt. 131 at 4–5.] The Court disagrees; this fee is reasonable. Expeditee sought to continue the preliminary injunction hearing for one week, during which time presumably the TRO

13

freezing Respect the Look's assets would remain in place. [Dkt. 37.][7] Reginald Jennings testified that Respect the Look was being harmed by the asset freeze, and Respect the Look believed that the TRO was improper; the Court eventually agreed in its sanctions order. *See Xped*, 2023 WL 5748350, at *13 (finding that the arguments Expeditee made in support of the TRO were frivolous). Further, Respect the Look won partial relief through its opposition. The Court did not continue the January 18, 2022 hearing, and it ruled on the preliminary injunction and dissolved the TRO against Respect the Look five days sooner than if Respect the Look had not opposed the continuance. Given that the TRO was harming Respect the Look's business, *see Xped*, 2023 WL 5748350, at *13, it reasonably chose to oppose the request for a continuation, and the $405 fee for 0.9 hours of work is not excessive. [Dkt. 127-2 at 3.]

Expeditee also points out that it has no way to know whether Beck's estimate that he spent no more than 4 hours working on the counterclaim is true. [Dkt. 131 at 4.] This is a fair point, but the Court finds that Beck's billing entry was reasonable under the circumstances. He was under time pressure because he had been retained mere days before the preliminary injunction hearing scheduled for the Tuesday after a Monday holiday, and there was substantial overlap between issues implicated in the counterclaim and the TRO and preliminary injunction opposition. [*See, e.g.*, Dkt. 31 ¶¶ 30–34, 37–42.] The extent of the time pressure was not Respect the Look's fault; it would have had the opportunity to retain Beck earlier if Expeditee had properly

---

[7]      Expeditee's motion did not make an express request to extend the TRO, but neither in its motion nor at the first preliminary injunction hearing did Expeditee suggest the TRO be dissolved as to Respect the Look, and the Court extended the TRO by two days. [Dkt. 48.]

served Respect the Look by email on January 10, as the Court directed it to do and Jones represented had been done. *See Xped*, 2023 WL 5748350, at *15.

Nor was the overall amount of time Beck billed on these matters excessive. He billed a total of 13.5 hours for legal research, drafting, and communication with his client and Expeditee's counsel, plus 1.4 hours for communication with his client and factual research. [Dkt. 127-2 at 3.] In that time, he produced a 26-page memorandum that included exhibits and an 18-page counterclaim. [Dkt. 31, 35.] This is by no means an unreasonable amount of time to spend on these tasks. *Cf. JCW Invs.*, 509 F.3d at 342–43 (finding that it would have been reasonable for an experienced litigator to spend over 16 hours preparing a fee petition "consist[ing] only of a six-page argument, a three-page affidavit, and several computer-generated billing records").

Finally, although Expeditee does not expressly request it, the Court will review the counterclaim and the motion opposing the TRO and preliminary injunction to determine if Beck's estimate that he spent at most 4 hours (just under 30% of 13.5 hours) drafting it is reasonable. As the Court noted above, the counterclaim is 18 pages long (41% of the total pages drafted), and the memorandum (excluding exhibits) runs to 26 pages (59%), but the factual and legal issues overlap to an extent. [*Compare, e.g.*, Dkt. 35 at 4–7 (discussing Expeditee's misrepresentations about its name and place of business, and that Respect the Look sells flags similar to Expeditee's but does not infringe its trademark), *with* Dkt. 31 ¶¶ 27–30, 32–33 (similar allegations in support of the counterclaim).] This overlap tends to support Beck's estimate that "no more than 4 hours total were spent on drafting the

counterclaim." [Dkt. 127-1 ¶ 3.] The time entries for the 13.5 hours billed for work including the counterclaim also contain work corresponding with his client and with Expeditee's counsel, which decreases the proportion of hours that would have gone into drafting the counterclaim. [Dkt. 127-2 at 3.][8] In sum, the Court finds that the 4-hour reduction to account for Beck's work on the counterclaim is reasonable.

Neither party mentions the fact that the time entry for the paralegal who billed 3.4 hours at $148 per hour on January 14, 2022 also covers work performed on the counterclaim. [*Id.*] The Court finds that this time entry should also be reduced, and in the absence of guidance otherwise from the parties, the Court reduces the 3.4 hours to 2.4 hours, very close to the roughly 30% reduction of Beck's 13.5 hours. The Court awards $532.80 for 3.6 hours billed by the paralegal instead of $680.80 for 4.6 hours.

Expeditee has not challenged the $420.26 in costs, so the Court awards Respect the Look that amount in costs; $8,550 in Beck's attorney's fees ($10,350 − $1,800); and $532.80 in paralegal fees ($680.80 − $148), for a total of $9,082.80 in fees and $420.26 in costs at the TRO and preliminary injunction stages. This award applies both to the Court's award of attorney's fees and costs as a sanction and pursuant to § 1117(a), although Respect the Look will not recover the same fees twice.

## B. Moving for Sanctions

Next, Expeditee argues that the Court should not award Respect the Look fees it incurred while moving for sanctions. [Dkt. 131 at 5–6.] There are two possible bases for awarding these fees: the Court's inherent power and § 1117(a). Respect the Look's

---

[8]     For example, if Beck spent 1.5 hours on correspondence, the 4 hours he estimates he spent drafting the counterclaim would represent 33.3% of the remaining 12 hours.

fee application focuses on the former [Dkt. 127 at 4–6], but it also argues that it should be "awarded its full attorney's fees and costs incurred in defending against Plaintiff's claims" under § 1117(a). [*Id.* at 1; *see also* Dkt. 79 at 13 n.1.] The Court addresses each basis to award fees in turn.

The Court can award attorney's fees incurred in moving for sanctions as part of a Rule 11 sanction, *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 649–51 (7th Cir. 1992), as well as pursuant to its inherent power because almost by definition these fees will be incurred because of the sanctionable conduct, *see Goodyear*, 581 U.S. at 109. Respect the Look argues that the Court should award the fees it incurred in moving for sanctions under the same reasons the Court's sanctions order granted the request for attorney's fees. [Dkt. 127 at 4–5 (noting that both *Brandt* and this Court discussed the interest in deterring misconduct).] Respect the Look notes that other courts in this district have awarded "fees-on-fees." [*Id.* at 5–6 (citing cases).]

Expeditee argues that the Court should not award fees incurred while moving for sanctions because Respect the Look did not expressly request them in its sanctions motion, and the Court's sanctions order did not award those fees. [Dkt. 131 at 5–6.] In fact, Respect the Look did ask to be awarded the fees it incurred in moving for sanctions. [Dkt. 78 at 2–3 (including fees incurred "in filing this motion for sanctions" as part of the request if the Court does not dismiss Expeditee's claims with prejudice, and if the Court does grant dismissal with prejudice, the award "should include all

17

fees incurred in defense against the Complaint").][9] Respect the Look did not brief why these fees were properly within the scope of a sanctions award [*see* Dkt. 79], but it was not required to do so. Courts often defer consideration of the categories and amounts of fees to award until after deciding to award sanctions, and it saves parties resources to address these issues after they arise. *See Brandt v. Schal Assocs., Inc.*, 121 F.R.D. 368, 389 (N.D. Ill. 1988) (noting that the prevailing parties "have not indicated the amount they seek as sanctions"); *see also Brandt*, 960 F.2d at 652 (affirming sanctions order in full).[10]

The Court's finding that Respect the Look was entitled to fees incurred in defending the TRO and preliminary injunction does not imply that it is entitled only to those fees. *See Xped*, 2023 WL 5748350, at *17–18. When the Court stated that it would "not opine as to the scope of the fee award" in its sanctions order and that it required further briefing on the Lanham Act issue, *id.* at *18, it did not mean that

---

[9]    Because Respect the Look requested these fees, Expeditee's reliance on *Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169 (5th Cir. 2007), is misplaced. [*See* Dkt. 131 at 5.] In any event, *Cambridge Toxicology* held that where a party did not request the fees it incurred while moving for sanctions and the district court's referral to the magistrate judge was silent on this topic, the magistrate judge did not abuse its discretion in denying these fees. 495 F.3d at 181. The Fifth Circuit discussed *Brandt* only to note that it did not stand for the proposition that defendants are "not required to refer to these costs in their sanctions motion" because *Brandt* did not "address[ ] whether such a request for fees must be brought in the sanctions motion itself." *Id.* If anything, *Cambridge Toxicology* supports finding that the Court may award these fees here. *See id.* ("[T]his decision is best left to the trial court's discretion and should be left undisturbed [on appeal].").

[10]    For a more recent example, in *Matlin v. Spin Master Corp.*, 17-cv-7706, the prevailing defendants moved for sanctions without expressly requesting fees incurred in preparing that motion. [Dkt. 48 (noting that petition for specific fees requested would be forthcoming if the motion was granted); Dkt. 48-1 (memorandum with no mention of fees incurred in moving for sanctions).] The court granted the motion and directed the defendants to submit an accounting for the fees incurred in defending the motion to dismiss and moving for sanctions. 2019 WL 2422872, at *4 (June 10, 2019). The Seventh Circuit affirmed the award, including the fees incurred in moving for sanctions. 979 F.3d 1177, 1182–83 (7th Cir. 2020).

Expeditee was foreclosed from seeking these fees. Any ambiguity in the Court's phrasing is not, of course, any party's fault, and Respect the Look properly preserved its request for fees incurred while moving for sanctions. [Dkt. 78.] Neither Expeditee nor Jones contests Respect the Look's argument that the deterrence rationale and the need to reimburse Respect the Look for the costs of the sanctionable conduct warrant awarding these fees. [*See* Dkt. 131 at 5–6; Dkt. 135 at 1.] And *Goodyear* holds that the Court can award these fees if, as here, they were incurred because of misconduct. 581 U.S. at 109. The Court therefore finds that the monetary sanction it awarded pursuant to its inherent power should include the reasonable attorney's fees Respect the Look incurred in moving for sanctions.

Turning to § 1117(a), the Court finds that reasonable fees Respect the Look incurred in moving for sanctions are properly part of its entitlement as the prevailing party in an exceptional case. As noted above, the Court may award Respect the Look "full costs and reasonable attorneys' fees" incurred during the litigation, *JCW Invs.*, 509 F.3d at 341, and because the motion for sanctions targeted Expeditee's claims against Respect the Look, rather than its counterclaim, the attendant fees fall within the scope of the § 1117(a) award. Further, if fees-on-fees are not available when a party successfully moves for terminating sanctions, it might incentivize prolonging the litigation until a party can win on the merits, perhaps at summary judgment. The Seventh Circuit takes a dim view of a party running up its legal bill with unnecessary fees and then shifting them to an opponent when the case could have been resolved more economically. *See Leffler v. Meer*, 936 F.2d 981, 987 (7th Cir. 1991) ("Implicit in

the reasonableness requirement" of 28 U.S.C. § 1988, a statutory fee-shifting provision, "is the duty to mitigate legal fees by promptly, where possible, disposing of baseless claims through summary procedures."). The Court finds that where a party prevails through a motion for dismissal as a sanction and § 1117(a)'s requirements are satisfied, reasonable fees incurred in moving for sanctions should be awarded.

Neither party challenges the reasonableness of the fees and costs Respect the Look requests in connection with its motion for sanctions. [*See* Dkt. 131 at 5–6; Dkt. 135 at 1–2.] Those fees and costs come to $15,989.20 in fees and $2,408.74 in costs related to briefing the motion [Dkt. 127-1 at 3; *see* Dkt. 131 at 5–6; Dkt. 135 at 1–2]; $1,364 for 2.2 hours of work reviewing and addressing the Court's sanctions order [Dkt. 128 at 13–14; Dkt. 128-2]; and $3,782 for 6.1 hours of work preparing the fee application [Dkt. 128 at 13–14; Dkt. 128-1 ¶ 4].[11] The Court finds that these requests are reasonable. Beck billed 20.8 hours ($9,360) researching and drafting the motion for sanctions, which includes a 20-page brief, and communicating with his client about it. [Dkt. 127-2 at 3–4, 6, 9; *see* Dkt. 79.] He billed an additional 14.4 hours ($6,480) in connection with the 20-page reply brief, plus a paralegal billed 0.4 hours ($59.20). [Dkt. 127-2 at 10, 12.] The $2,408.74 in costs were entirely for legal research. [*Id.* at 4, 6, 16.] Likewise, 2.2 hours to review and discuss a 44-page order and 6.1 hours to produce a 12-page fee petition plus exhibits are not excessive given the work

---

[11]      Expeditee's November 7, 2023 response to Respect the Look's fee application states that the fees incurred in preparing the fee statement are "undisclosed." [Dkt. 131 at 5.] But Respect the Look's fee application stated that it would include its request for these fees in its response to Jones's motion for reconsideration. [Dkt. 127 at 10.] It filed its response to Jones's motion on October 25, 2023 and included its fee request. [Dkt. 128 at 13–14.] Expeditee was therefore on notice of the fees Respect the Look was seeking at the time it filed its response.

required. These amounts are reasonable; the Seventh Circuit has blessed spending similar amounts of time for less output. *See JCW Invs.*, 509 F.3d at 342–43.

The Court finds that under both its inherent power and § 1117(a), Respect the Look is entitled to $21,135.20 in reasonable attorney's fees and $2,408.74 in costs incurred in moving for sanctions and preparing the fee application.

### C. Defending Against Expeditee's Complaint

Next, Respect the Look argues that it should be awarded fees and costs in connection with defending against Expeditee's complaint. [Dkt. 127 at 7.] These fees fall into four categories: (1) moving to dismiss and for summary judgment ($14,428.40 in fees and $812.55 in costs); (2) opposing Expeditee's motion for leave to amend ($5,902.20 in fees and $2,249.62 in costs); (3) conducting discovery-related work ($2,115 in fees); and (4) preparing status reports and attending hearings ($4,152.40 in fees). [*Id.* at 9.] Expeditee challenges all of these fees, although its challenge to the third category does not appear in the section of its brief addressing § 1117(a). [Dkt. 131 at 8–9.][12] The Court finds that all four categories of fees are reasonable.

### 1. Moving for Summary Judgment

Expeditee first argues that Respect the Look's demand for fees related to its summary judgment motion is unreasonable because "[n]o discovery had been taken and there were issues of disputed fact that precluded the motion" and "the Court held

---

[12] Respect the Look does not ask the Court to award these fees pursuant to its inherent power, so the Court does not address whether such an award would be proper.

the motion to dismiss, for summary judgment and attorneys' fees is moot." [*Id.* at 8.][13]
The second point is irrelevant; whether it was reasonable to file the motion can only
be judged from Respect the Look's perspective at the time of filing. *Cf. Brandt v. Schal
Assocs., Inc.*, 131 F.R.D. 485, 493 & n.14 (N.D. Ill. 1990) (rejecting "hindsight
evaluations" of litigation strategy by the opponent of sanctions), *aff'd*, 960 F.2d 640.

On the first point, without suggesting whether the motion for summary
judgment would have succeeded, the Court finds that it was reasonable to file it.
Respect the Look's brief acknowledged that discovery had not been completed but
argued that it was entitled to summary judgment on the preliminary injunction
record. [Dkt. 71 at 16–18.] It also argued that Expeditee should not be permitted to
conduct discovery because, among other reasons, Expeditee needed evidence of
trademark infringement to seek preliminary injunctive relief and any such evidence
was publicly available. [*Id.* at 18–21.] And although Expeditee argues that disputes
of fact precluded the motion, it did not contest Respect the Look's evidence as required
by Local Rule 56.1 or substantively respond to the motion. *Xped*, 2023 WL 5748350,
at *5 ("Expeditee … purported to respond to both of Respect the Look's motions, but

---

[13]     Respect the Look's motion sought three forms of relief: dismissal under Rule 12(b)(6),
dismissal pursuant to a grant of summary judgment, and sanctions. [Dkt. 71 at 1.] Expeditee
only discusses the impropriety of moving for summary judgment, which the Court construes
to mean that Expeditee does not contest the reasonableness of moving for the other relief.
       Further, as a technical matter, perhaps the Court should consider whether to award
some portion of fees incurred in bringing this combined motion under the heading of fees
incurred while moving for sanctions, but Expeditee has not objected to these fees on this
basis, and even if it had, the Court would simply shift those fees to those awarded in
connection with Respect the Look's motion for sanctions because they are reasonable for the
reasons stated above. Accordingly, the Court refers to this motion simply as a motion for
summary judgment or a motion to dismiss and for summary judgment, based on context.

its memorandum only argued that sanctions were not warranted." (citing [Dkt. 98])).
Respect the Look understandably wanted to terminate the case against it quickly and
avoid the costs of discovery, and it made sensible arguments in favor of that position.
That is a reasonable litigation strategy.

### 2.    Opposing Amendment

Expeditee next objects to Respect the Look's request for fees incurred while
opposing the motion for leave to file an amended complaint. [Dkt. 131 at 8–9.] It
contends that this "demand is improper because … Expeditee has evidence
supporting the claims in the [amended complaint]," which it "had a good faith basis
to file … mak[ing] awarding of further sanctions … improper." [Id. at 8.][14] Expeditee
cites no authority for these propositions, and the Court disagrees that the proper
question is whether Expeditee had a good faith basis for its claims. The Court is not
sanctioning Expeditee or Jones for seeking to file the amended complaint and will not
award Respect the Look its fees for opposing that motion pursuant to its inherent
power. Instead, the Court is considering whether to award these fees and costs under
§ 1117(a), which for a prevailing party in an exceptional case requires only that the
fees be reasonable. See, e.g., JCW Invs., 509 F.3d at 342–43 (analyzing reasonableness
of fees). Unreasonable, even sanctionable, litigation conduct makes this an
exceptional case within the meaning of § 1117(a), so Respect the Look is entitled to

---

[14]    Expeditee also argues that Respect the Look's "blatant infringement of Expeditee's IP
… necessitated Expeditee's motion to amend." [Dkt. 131 at 9.] As noted above, Expeditee's
inability to pursue alternate claims is a consequence of the dismissal sanction. Accusations
of alleged misconduct by Respect the Look do not impact the Court's present analysis.

recover reasonable fees. *See LHO II*, 988 F.3d at 965–67. It need not link every category of fees it seeks to recover to independently sanctionable conduct.

It was reasonable for Respect the Look to oppose the motion for leave to amend; if anything, not opposing the motion might have been unreasonable. As with the motion for summary judgment, Respect the Look sought to end the litigation against it as quickly as possible. Further, Respect the Look had moved for dismissal as a sanction; while that motion was pending, if Respect the Look had agreed to allow Expeditee to amend its complaint, it might have been construed as withdrawing the request for dismissal. At the very least, by opposing Expeditee's request, Respect the Look avoided having to litigate the claims against it for the nearly 18 months between when Expeditee filed that motion and the Court ruled on the motion for sanctions. If Respect the Look had acquiesced to the amendment and the Court later dismissed the amended complaint as a sanction, the Court doubts that Expeditee would consider it reasonable for the Court to award Respect the Look fees it incurred litigating the claims in the amended complaint during those 18 months. *Cf. Leffler*, 936 F.2d at 987. Opposing leave to amend was a sensible choice under these circumstances. Therefore, Respect the Look is entitled to recover reasonable fees incurred while doing so.

### 3. Discovery-Related Fees

Expeditee suggests that it would be improper to award Respect the Look discovery-related fees, but it situates this argument in the section of its brief that addresses fees awarded in the sanctions order. [Dkt. 131 at 5 n.2.] The Court agrees that it would not be proper to award these fees as a sanction because there is no evidence of discovery misconduct, but Expeditee makes no argument as to why, if

Respect the Look is a prevailing party, it should not recover these fees under § 1117(a). [*See id.* at 6–9.] Opposing discovery is consistent with the strategy Respect the Look employed, as described in the previous two sections, so the Court finds that this category of fees is reasonable.

### 4.    Status-Related Fees

Finally, Expeditee argues that it is improper for Respect the Look to ask to be awarded fees for preparing status reports and attending status hearings. [*Id.* at 9.] It submits that "[t]he complexity and multitude of filings that contributed to the delay in the Court's ruling were the result of [Respect the Look's] filing of multiple and overlapping motions" and that its "argument that it could not have avoided any of these fees it completely false." [*Id.*] Expeditee does not go into further detail about how Respect the Look unjustifiably caused these status hearing, and they surely were not all Respect the Look's fault. It had no control, for example, over Judge Wood's timeline to rule on the pending motions or the status reports and hearings this Court requested after the case was reassigned. If Expeditee means that Respect the Look's filings and discovery positions were flatly unreasonable, the Court disagrees. It has explained why those actions were reasonable above, and its previous order touched on this type of argument as well. *See Xped*, 2023 WL 5748350, at *8 & n.6. The Court finds this category of fees reasonable.

### 5.    Amount of Fees

Although Expeditee does not object to the Respect the Look's counsel's hourly rate or the numbers of hours billed, the Court reviews Respect the Look's requests for reasonableness. *See JCW Invs.*, 509 F.3d at 342–43. Moving in reverse order, the

Court first finds that the status-related entries are reasonable: a total of 9.6 hours of Beck's time for seven status hearings and two status reports, plus 0.8 hours of paralegal time. [Dkt. 127-2 at 6, 9, 12, 14, 17.] The Court observes that the 0.6-hour entry from February 23, 2022 might be mislabeled; it appears to relate to Expeditee's proposed amended complaint, not a status hearing. [*Id.* at 6.][15] But in either category, the Court would find this fee reasonable, and no one specifically objects to it, so the Court will award it in the status-related category. Additionally, the Court's review of the billing records reveals a discrepancy with Respect the Look's figures. It states that Beck's fees sum to $4152.40. [Dkt. 127 at 9; 127-1 at 3.] The Court's arithmetic, relying on the billing records [Dkt. 127-2], yields $4,914.40, and no adjustment the Court has tried has produced Beck's number.[16] Because the Court cannot discern the correct number and Respect the Look's sum is lower than the Court's, the Court awards Respect the Look's figure.

The fees for discovery-related matter are also reasonable. Beck billed 4.7 hours ($2,115) between March 25 and 29, 2022 corresponding with his client and opposing counsel and working to draft and file a 22-page joint status report. [Dkt. 127-2 at 9; *see* Dkt. 90.] That is a reasonable amount of time to spend on those tasks, given the output, and the Court awards Respect the Look $2,115 in this category of fees.

Respect the Look uses the same color code for the fees it incurred in moving to dismiss, for summary judgment, and for sanctions and in opposing Expeditee's motion

---

[15]     But perhaps it is correct; the label is not definitive.

[16]     The Court checked if a combination of subtracting the 0.6-hour possible discrepancy, removing the 0.8 paralegal hours, and reverting Beck's increased hourly rate ($620 beginning with March 2023 entries) to $450 would bridge the gap between the numbers, but to no avail.

to file an amended complaint. [Dkt. 127-1 ¶ 2.] The dates of the billing entries make it easy to determine which entries go with which work, however, so the Court addresses each category separately. Fees and costs for the motion to dismiss and for summary judgment were incurred between January 27 and February 15, 2022; they total $14,428.40 in fees ($14,310 for 31.8 hours of work by Beck, plus $118.40 for 0.8 hours by a paralegal) and $812.66 in legal research costs. [Dkt. 127-2 at 4, 6–7.][17] The resulting filings—a 4-page motion, 33-page memorandum, and 12-page Local Rule 56.1 statement (excluding exhibits)—make that a reasonable figure for the number of hours billed. *Cf. JCW Invs.*, 509 F.3d at 342–43 (over 16 hours reasonable for under 10 pages of briefing, plus printed billing records). The Court awards Respect the Look $14,428.40 in fees and $812.66 in costs for this work.

Respect the Look seeks $5,902.20 in fees and $2,249.62 in legal research costs in connection with opposing Expeditee's motion for leave to amend. [Dkt. 127-1 ¶ 7.] The fees break down as follows: 12.3 hours ($5,535) by Beck between March 23 and May 19, 2022; 0.2 hours ($29.60) by a paralegal; and 0.4 hours ($337.60) by a partner. [Dkt. 127-2 at 9–10.] These fees—approximately 13 hours to produce and file a 21-page memorandum—are reasonable, *cf. JCW Invs.*, 509 F.3d at 342–43, and the Court will award them.

---

[17]     The billing records suggest that Respect the Look may actually have incurred $184 more in fees for this work. A time entry for that amount by a paralegal billing 0.8 hours at $230 per hour relates to the motion, and the Court's calculation of the fees reflected in the bill is $184 higher than Respect the Look's. Again, the Court will award the amount Respect the Look requests, which is the lower number.

### 6. Apportioning Fees

Another question is whether to reduce these awards to account for work not done defending claims for which Respect the Look can recover attorney's fees and costs. One claim (of three) in Expeditee's original complaint was a state law claim, and Expeditee sought to add a Copyright Act claim in its amended complaint. [*See* Dkt. 1, 88-2.] "The prevailing party in a multi-claim case which includes both Lanham Act and non-Lanham Act counts should be entitled to attorney's fees only for work expended in prosecuting or defending the Lanham Act counts." McCarthy, *supra*, § 30:103. Here, however, the Court determines that it is unnecessary to reduce the award to account for the non-Lanham Act claims.

Neither Expeditee nor Jones asks the Court to apportion the fees, so they have waived any counterargument they might have made, *see Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010), and the Court's review does not convince it that it must reduce the fees it awards. In *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, the Seventh Circuit affirmed a non-apportioned fee award where "the work that [the defendant's] lawyers had performed in defending against the Lanham Act claim could not be separated from their work in defending against the other claims." 626 F.3d 958, 966 (7th Cir. 2010), *overruled on other grounds by LHO I*, 942 F.3d 384. It would at least be reasonable to make the same finding here. Respect the Look's memorandum in support of its motion to dismiss and for summary judgment argued that the state law claim failed for the same reasons the trademark infringement claim did [Dkt. 71 at 14–15], and it argued that Expeditee should not be permitted to amend its complaint because of its misconduct related to its Lanham

28

Act claim [Dkt. 96 at 6–8]. While Respect the Look also argued that the other claims failed on the merits [*id.* at 8–13], the Court does not understand Seventh Circuit precedent to compel the Court to apportion the fees under these circumstances, so in the absence of argument by Expeditee or Jones, the Court will not take that step on its own.[18]

*    *    *

In sum, the Court awards fees and costs in the amounts Respect the Look requests for defending against Expeditee's complaint. The categories discussed above total $26,598 in fees and $3,062.28 in costs. [Dkt. 127 at 11.]

### D.    Opposing Jones's Motion for Reconsideration

Respect the Look's fee petition also asks the Court to attorney's fees incurred in responding to Jones's motion for reconsideration, which the Court largely denied except insofar as it made several minor clarifications to its sanctions order. [*Id.* at 5–6; *see* Dkt. 125 (motion for reconsideration); Dkt. 132, 133 (denial order).] Respect the Look's opposition to the motion for reconsideration states that Beck performed 12.7 hours of work at $620 per hour opposing the motion and seeks $7,874. [Dkt. 128 at 13–14; *see* Dkt. 128-1 ¶ 4.] Expeditee argues that it would be improper to order it to pay these fees because Jones no longer represented it when he filed the motion, and Expeditee did not join the motion. [Dkt. 131 at 6.] The Court agrees, and it will not order Expeditee to pay these fees as a consequence of the Court's sanctions order or

---

[18]    The lack of opposing arguments also means Respect the Look was not on notice that the Court might consider reducing the fees it would award, so it has not had the opportunity to present argument against apportionment or in favor of awarding fees pursuant to other authority, such as the Copyright Act.

under § 1117(a). Whether to order Jones to pay these fees is another matter. Respect the Look argues that the motion for reconsideration was frivolous. [Dkt. 127 at 5–6; Dkt. 128 at 1–2.] Jones declined to file a reply brief in support of his motion for reconsideration, and his response to Respect the Look's fee request does not discuss fees related to the motion for reconsideration. [Dkt. 135.] The Court agrees that Respect the Look should recover the fees it incurred in opposing this motion.

*Goodyear* establishes that the Court need not find a motion for reconsideration frivolous to shift fees incurred while opposing it. The key question under *Goodyear* is whether a party would not have incurred a given expense but for the sanctionable conduct. 581 U.S. at 109. Sanctionable conduct necessarily is a but-for cause of fees incurred while opposing a motion for reconsideration of a sanctions order. Without the underlying conduct, there could be no sanctions order and therefore no motion for the Court to reconsider it. *See id.* at 109–10.

There remains the question of how much of Respect the Look's request of $7,874 for 12.7 hours to award. Jones does not raise this point, but it could be argued that the fee award should be reduced to account for the small amount of relief the Court awarded Jones by clarifying minor points about its order. However, the Court denied the substance of Jones's motion, and the Court did not clarify its ruling on any of the four points Respect the Look's brief addressed. [*Compare* Dkt. 128 at 3–5, 5–9, 9–11, 11–12, *with, respectively*, Dkt. 133 at 6–8, 8–9, 4–6, 9–11.] In other words, all fees Respect the Look incurred while opposing the motion for reconsideration concerned arguments on which the Court agreed with Respect the Look in full, so this

is not a reason to reduce the fee award. Jones offers no other basis for reducing the award, so the Court awards Respect the Look the full $7,874 it requests.

## V. Allocation of Fees

The Court must consider one more issue: how to allocate the fees and costs it has awarded to Respect the Look. Two categories are easy to address. First, fees and costs incurred while defending against Expeditee's lawsuit (section IV.C) will be awarded only against Expeditee because a party, not the party's attorney, must pay fees and costs in an exceptional Lanham Act case. *See Buckhannon*, 532 U.S. at 602–03 (explaining the default American rule that "parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser"—and noting that fee-shifting provisions alter this arrangement); *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 602 (9th Cir. 2010) (rejecting an argument that a party can avoid paying fees and costs if it relied on the advice of counsel); *cf.* Fed. R. Civ. P. 11(c)(1) (expressly permitting sanctions against a lawyer). Second, the fees incurred in opposing the motion for reconsideration (section IV.D) will be awarded only against Jones because Expeditee had nothing to do with that motion.

Responsibility for the other categories of fees—those incurred while opposing the TRO and preliminary injunction (section IV.A) and moving for sanctions (section IV.B)—might lie with Expeditee, Jones, or both. The Court has found that it would award these fees under the Lanham Act, an award that can run only against Expeditee, but it also sanctioned Jones for his misconduct, *Xped*, 2023 WL 5748350, at *17, so he too is responsible for these fees, which were incurred as a result of the sanctionable conduct, *see Goodyear*, 581 U.S. at 109. Respect the Look asks for these

categories of fees and costs to be awarded jointly and severally [Dkt. 127 at 10], and the Court agrees that this is proper.

Expeditee argues that imposing joint and several liability for at least some of these fees would be inappropriate because Rule 11(c)(5)(A) bars imposing monetary sanctions against represented parties for frivolous legal arguments made by their attorneys. [Dkt. 131 at 3.] That is true, as the Court recognized, but it also noted that Expeditee can be monetarily sanctioned for other misconduct, which it either committed directly or is imputed to it through Jones's actions. *Xped*, 2023 WL 5748350, at *17; *see Hinterberger*, 966 F.3d at 529 ("[I]t is well established that attorneys' actions are imputed to their clients, even when those actions cause substantial harm. A litigant bears the risk of errors made by his chosen agent." (cleaned up)). Moreover, Expeditee is responsible for the § 1117(a) fee award, which the Court found encompasses these categories of fees. As to Respect the Look, both Expeditee and Jones are responsible for these fees and costs, so the award will be joint and several.

That said, this finding does not settle the question of who must bear the ultimate cost of the fees awarded to Respect the Look, as between Expeditee and Jones. Expeditee's argument that Jones, not it, should bear the cost of frivolous arguments he made is a legitimate one, which may warrant Expeditee recovering any of those fees it covers from Jones. On the other hand, Jones argues that Expeditee provided him with false information and reviewed the pleadings he filed on its behalf but did not alert him to any inaccuracies. [Dkt. 135 at 1–2.] He also asserts that

Expeditee has outstanding bills for his legal services. [*Id.* at 2.] Expeditee and Jones might pursue these arguments, *cf., e.g., Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 503 (7th Cir. 1980) ("If Stenograph is found liable here, it may wish to assert a claim for contribution or indemnity against Croxford."), but they do not impact the initial determination that they are liable to Respect the Look.

## VI.    Conclusion

For the foregoing reasons, Respect the Look's application for fees and costs [Dkt. 127, 128] is largely granted but denied in small part. The Court awards $30,218 in fees and $2,835 in costs, jointly and severally; $26,598 in fees and $3,062.28 in costs against Expeditee alone; and $7,874 in fees against Jones alone. Those figures are distributed as described above and summarized in the following table:

| Category | Amount | Against? | Authority |
|---|---|---|---|
| TRO and preliminary injunction | $9,082.80 fees; $426.26 costs | Both, jointly and severally | Inherent power (Expeditee and Jones); § 1117(a) (Expeditee) |
| Motion for sanctions/ fee application | $21,135.20 fees; $2,408.74 costs | Both, jointly and severally | Inherent power (Expeditee and Jones); § 1117(a) (Expeditee) |
| Defending Expeditee's complaint | $26,598 fees; $3,062.28 costs | Expeditee | § 1117(a) |
| Motion for reconsideration | $7,874 fees | Jones | Inherent power |

Enter: 21-cv-6237
Date:  February 22, 2024

_____
Lindsay C. Jenkins
United States District Judge